UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ellen S. Ewald, <br><br>             Plaintiff, <br><br> vs. <br><br> Royal Norwegian Embassy and <br> Gary Gandrud, Esq., <br><br>             Defendants. | Civil No. 11-CV-02116 (SRN/SER) <br><br> **DEFENDANT GARY GANDRUD, ESQ.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS** |

## INTRODUCTION

Plaintiff Ellen S. Ewald was employed by the Royal Norwegian Embassy, Honorary Consulate in Minneapolis until her employment contract ended on September 30, 2011. Ms. Ewald asserts claims relating to her employment against the Royal Norwegian Embassy and Gary Gandrud, Esq., the Consulate's Honorary Consul General.[1] As Honorary Consul General for the Kingdom of Norway, Mr. Gandrud is immune from jurisdiction for "official acts performed in the exercise of [consular] functions" under Article 71 of the Vienna Convention on Consular Relations.

All of Ms. Ewald's claims against Mr. Gandrud fall within his consular immunity. Because Mr. Gandrud is immune from jurisdiction for the acts alleged in the Complaint, all claims against him must be dismissed.

---

[1] As of the date of this memorandum, only Defendant Gandrud has been properly served in this matter. After receiving notice through its attorney of Ms. Ewald's apparent claims against it in the Complaint, the Royal Norwegian Embassy removed this action to this Court on July 27, 2011. Docket No. 1. Defendant Gandrud consented to removal. Id. at Ex. B. By removing this action from state to federal court, the Royal Norwegian Embassy did not waive its right to proper service, or any other defenses available to it. E.g., 28 U.S.C. § 1448 (providing for service of process after removal); WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1395 (3d ed. 2010).

# FACTUAL BACKGROUND

**I.   The Complaint.**[2]

    **A.   Ms. Ewald's Legal Claims Against Mr. Gandrud.**

Ms. Ewald's Complaint asserts four counts against Mr. Gandrud arising out of her employment with the Royal Norwegian Embassy, Honorary Consulate (the "Consulate")[3]:

1. Mr. Gandrud made knowingly false representations to Ms. Ewald regarding her compensation and position in violation of Minn. Stat. § 181.64.  Compl. ¶¶ 66-69.

2. Mr. Gandrud engaged in reprisal against Ms. Ewald for complaints of unfair treatment relating to her employment with the Consulate in violation of Minn. Stat. § 363A.15.  Id. at ¶¶ 79-87.

3. Mr. Gandrud aided and abetted the Royal Norwegian Embassy's discriminatory employment practices in violation of Minn. Stat. § 363A.14.  Id. at ¶¶ 88-93.

4. Mr. Gandrud engaged in retaliatory harassment of Ms. Ewald because of her opposition to discriminatory employment practices.  Id. at ¶¶ 94-102.

---

[2]   For purposes of this motion, the facts alleged in Ms. Ewald's Complaint are treated as true. Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).

[3]   Ms. Ewald executed an Employment Agreement with the Royal Norwegian Embassy.  See Compl. ¶ 13.  Under that agreement, Ms. Ewald was employed by the Government of Norway through its Foreign Service.

**B.      Ms. Ewald's Factual Allegations Against Mr. Gandrud.**

In her Complaint, Ms. Ewald makes factual allegations against Mr. Gandrud in support of her legal claims against him. Specifically, Ms. Ewald alleges that:

- Mr. Gandrud participated in interviewing her, hiring her, and supervising her employment with the Consulate. Compl. ¶¶ 3, 10.

- Mr. Gandrud made representations to Ms. Ewald to entice her to work for the Consulate, among them "a promise of equal treatment." Id. at ¶ 4.

- During the hiring process and after she commenced employment, Mr. Gandrud "confirmed" the Embassy's "message" that Ms. Ewald and her male peer "should work as a team." Id. at ¶ 19.

- After Ms. Ewald raised complaints of unfair treatment relating to her employment Mr. Gandrud invited her to a lunch where he told her that he was aware of her complaints, that he had nothing to do with setting Ms. Ewald and her male peer's salaries, and that because Ms. Ewald's position was "in education" she should not expect to receive the same salary as someone "in business." Id. at ¶ 34. To illustrate his point, Mr. Gandrud used an example comparing the salaries of a president of a college to an executive at Target. Id.

- Mr. Gandrud advised Ms. Ewald to send an email to the Ambassador to inform him that she worked well with her male peer. Id. at ¶ 35.

- Mr. Gandrud told Ms. Ewald to "nip [her complaints] in the bud" or otherwise there would be "consequences."  Id. at ¶ 36.

- Mr. Gandrud said his comments were not a threat, but told Ms. Ewald that if she continued to raise issues that someone would "likely have to go."  Id. at ¶ 37.

- When Ms. Ewald pressed the issue, Mr. Gandrud "responded angrily" and "pounded his fist on the table to stop Ms. Ewald from continuing the discussion."  Id. at ¶ 38.

- Mr. Gandrud instructed another employee of the Consulate not to tell Ms. Ewald about an assistant that had been hired for her male peer.  Id. at ¶ 41.

- Mr. Gandrud told Ms. Ewald that her allegations that her male peer was involved in a separate company in violation of Embassy policy "would be addressed" but that Ms. Ewald's allegations were never sufficiently addressed.  Id. at ¶ 56.

- The Embassy, through Mr. Gandrud, "kept Ms. Ewald out of the loop" by visiting colleges and meeting with university leadership and students without Ms. Ewald's knowledge.  Id. at ¶ 45.  Mr. Gandrud "bristled" when Ms. Ewald complained about being excluded from these meetings.  Id.

- Mr. Gandrud did not invite Ms. Ewald to an annual luncheon for Norwegian students that he had invited her to in previous years.  Id. at ¶ 57. Instead, Mr. Gandrud invited another Consulate employee who "had no

function or relationship to the academic programs of the students." Id. Mr. Gandrud commented at the luncheon that it was appropriate for the other employee to attend "because she was pregnant with a male child." Id.

## II.    Mr. Gandrud's Consular Position.

Ms. Ewald's Complaint incorrectly states that Mr. Gandrud is the "Honorary Consul for Norway." Compl. ¶ 3. Mr. Gandrud was appointed Honorary Consul for the Kingdom of Norway on August 1, 2008 by the Norwegian Minister of Foreign Affairs. Affidavit of Gary Gandrud ¶ 2, Ex.1. Mr. Gandrud served as Honorary Consul until January 15, 2010 when he replaced Walter Mondale as Honorary Consul General. Id. at ¶ 5, Ex. 3.

Mr. Gandrud's participation in Ms. Ewald's hiring process took place as part of his official duties as Honorary Consul. Compl. ¶¶ 3, 10; Gandrud Aff. ¶ 8. Both as Honorary Consul and Honorary Consul General, Mr. Gandrud supervised Ms. Ewald's employment as part of his official duties. See Compl. ¶¶ 3, 11, 14; Gandrud Aff. ¶ 8. Mr. Gandrud continued to supervise Ms. Ewald's employment with the Consulate until her employment contract ended on September 30, 2011.[4] See Compl. ¶ 3; Gandrud Aff. ¶ 9, Ex. 5.

Mr. Gandrud was and continues to be covered by Article 71 of the Vienna Convention on Consular Relations under both consular positions. Vienna Convention on Consular Relations, art. 71, April 24, 1963, 21 U.S.T. 78 (hereinafter "Vienna Conv.");

---

[4]    Like Ms. Ewald, her male peer's employment with the Consulate ended on September 30, 2011 pursuant to the term of his contract.

5

RESTATEMENT (THIRD) OF THE LAW OF FOREIGN RELATIONS OF THE UNITED STATES § 465 n.5 (1987).

**III.    The Vienna Convention on Consular Relations.**

    **A.    Article 71.**

As a United States citizen serving as an honorary consular officer for the Kingdom of Norway, Mr. Gandrud's immunity is governed by Article 71 of the Vienna Convention. Article 71 applies to consular officers who are nationals or permanent residents of the

country in which the consulate is located. It provides:

> [C]onsular officers who are nationals of or permanently resident in the receiving State shall enjoy only immunity from jurisdiction and personal inviolability in respect of official acts performed in the exercise of their functions . . . .

Vienna Conv., art. 71(1). "Consular officer" is defined as "any person, including the head of a consular post, entrusted in that capacity with the exercise of consular functions." Vienna Conv., art. 1(d). Because Mr. Gandrud is a United States citizen, jurisdiction over him is subject to the limitations of Article 71 of the Vienna Convention. See Compl. ¶ 3; Gandrud Aff. ¶¶ 2-7, Exs. 1-4.

Article 71 of the Vienna Convention uses the term "*official* acts performed in the exercise of consular functions." Vienna Conv., art. 71 (emphasis added). The consular immunity provision of the Vienna Convention, Article 43, omits the term "official" and provides immunity for "acts performed in the exercise of consular functions." Vienna Conv., art. 43. However, both phrases are understood to mean "official acts" immunity— i.e. immunity for acts performed in the exercise of consular functions. See U.S. STATE

DEPARTMENT, DIPLOMATIC AND CONSULAR IMMUNITY : GUIDANCE FOR LAW ENFORCEMENT AND JUDICIAL AUTHORITIES 5-6 (2010) (hereinafter "State Dept. Guide" ) ("official acts" immunity applies to both Consular Officers covered by Article 43 and Honorary Consuls who are U.S. citizens or permanent resident aliens covered by Article 71); see also UNITED NATIONS, YEARBOOK OF THE INTERNATIONAL LAW COMMISSION 10-11 (Vol. 2 1960) (distinguishing between "official acts" and "acts other than those performed in the exercise of consular functions" and noting "consuls and members of the consular staff are outside the jurisdiction of the judicial and administrative authorities of the receiving State in respect of acts performed in the exercise of their functions (official acts)").[5]

### B.     U.S. State Department Recognition.

Mr. Gandrud has a consular immunity card from the U.S. State Department confirming his position as Honorary Consul General for the Kingdom of Norway. Gandrud Aff. Ex. 2.  Mr. Gandrud had a similar immunity card during his tenure as Honorary Consul.  Id. at Ex. 4.  Both cards include the same immunity language on the reverse side:

> This person has been duly recognized by the Department of State and under international law *shall not be amendable to jurisdiction with respect to official acts performed in the exercise of consular functions*.  This form of immunity must be asserted before, and proven to, the appropriate judicial authorities . . . .

Id. at Exs. 2, 4. (emphasis added); accord Vienna Conv., art. 71:

---

[5]    Other provisions of the Vienna Convention use the term "official" to denote relation to consular functions.  E.g., art. 35(2) ("official correspondence means all correspondence relating to the mission and its functions"); art. 50 (providing exemption from customs and duties for "articles for the official use of the consular post"); art. 35(1) ("The receiving State shall permit and protect freedom of communication on the part of the consular post for all official purposes.").

7

> [C]onsular officers who are nationals of or permanently resident in the receiving State shall enjoy only *immunity from jurisdiction and personal inviolability in respect of official acts performed in the exercise of their functions* . . . .

(emphasis added).  See also, STATE DEPT. GUIDE at 17.

## ARGUMENT

### PLAINTIFF'S CLAIMS AGAINST DEFENDANT GANDRUD MUST BE DISMISSED FOR LACK OF SUBJECT-MATTER JURISDICTION.

Federal Rule of Civil Procedure 12(b) provides that a party may move to dismiss claims for lack of subject-matter jurisdiction.  See Fed. R. Civ. P. 12(b)(1).  A court must dismiss an action over which it lacks subject-matter jurisdiction.  Fed. R. Civ. P. 12(h).  Immunity goes to whether a court has subject-matter jurisdiction.  E.g., Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 1043 (8th Cir. 2000) (sovereign immunity is a jurisdictional issue under Federal Rule of Civil Procedure 12(b)(1)).  Where a plaintiff's action is based upon acts for which a consular officer is immune under the Vienna Convention, courts are without subject-matter jurisdiction.  Gerritsen v. Consulado Gen. de Mexico, 989 F.2d 340, 345-46 (9th Cir. 1993).  Courts have cautioned against a narrow reading of Vienna Convention immunity.  Ford v. Clement, 834 F. Supp. 72, 75 (S.D.N.Y. 1993) (Sotomayor, J.).

The presence of subject-matter jurisdiction determines whether a court has the power to hear a case and district courts have wide latitude in considering matters outside the pleadings in deciding a motion under Rule 12(b)(1).  See Deuser v. Vecera, 139 F.3d 1190, n.3 (8th Cir. 1998) (district court's election to consider matters outside the pleadings does not convert a Rule 12(b)(1) motion to dismiss into a motion for summary

8

judgment); see also Valentin v. Hosp. Bella Vista, 254 F.3d 358, 364 (1st Cir. 2001) ("when a factbound jurisdictional question looms, a court must be allowed considerable leeway in weighing the proof, drawing reasonable inferences, and satisfying itself that subject matter jurisdiction has attached").

## I. As a Consular Officer, Defendant Gandrud is Immune from Jurisdiction for Acts Performed in the Exercise of Consular Functions.

Because Mr. Gandrud is a U.S. citizen serving as an honorary consular officer for the Kingdom of Norway, his immunity is governed by Article 71 of the Vienna Convention. Vienna Conv., art. 71; Foxgord v. Hischemoeller, 820 F.2d 1030, 1033 (9th Cir. 1987). Article 71 provides:

> [C]onsular officers who are nationals of or permanently resident in the receiving State shall enjoy only immunity from jurisdiction and personal inviolability in respect of official acts performed in the exercise of their functions . . . .

Vienna Conv., art. 71. Mr. Gandrud is within the Vienna Convention's definition of a "consular officer" because he is entrusted by the Kingdom of Norway with the exercise of consular functions. Vienna Conv., art. 1(d). ("Consular officer" is "any person, including the head of a consular post, entrusted in that capacity with the exercise of consular functions"); Gandrud Aff. Exs. 1, 3. Jurisdiction over Mr. Gandrud is subject to the limitations of the Vienna Convention.

Mr. Gandrud's participation in interviewing, hiring, supervising and directing Ms. Ewald's employment was part of his official duties as Honorary Consul and Honorary Consul General. Compl. ¶¶ 3, 10-11, 14; Gandrud Aff. ¶ 8. Because the claims set forth

in Ms. Ewald's Complaint all involve Mr. Gandrud's official acts performed in the exercise of consular functions, this Court lacks subject-matter jurisdiction.

### A. Participating in the Hiring of Ms. Ewald and Supervising her Employment Are Acts Within Mr. Gandrud's Consular Immunity.

Determining whether particular acts fall within the Vienna Convention's grant of consular immunity involves two steps: (1) was a consular function involved; and (2) were the actions performed with respect to the legitimate consular function. E.g., Park v. Shin, 313 F.3d 1138, 1141-42 (9th Cir. 2002); Ford, 834 F. Supp. at 75.

#### 1. "Consular Functions"

Article 5 of the Vienna Convention lists twelve consular functions. Article 5(m) is a catch-all provision which defines consular functions to include:

> [P]erforming any other functions entrusted to a consular post by the sending State which are not prohibited by the laws and regulations of the receiving State or to which no objection is taken by the receiving State or which are referred to in the international agreements in force between the sending State and the receiving State.

Vienna Conv., art. 5(m).

"Consular functions" under the Article 5(m) catch-all provision include a broad array of activities related to the day-to-day operations of a consulate. See Gerritsen, 989 F.2d at 346 (protecting the dignity and premises of the consulate is a consular function); Berdakin v. Consulado de la Republica de El Salvador, 912 F. Supp. 458, 465 (C.D. Cal. 1995) (obtaining office space for a consulate is a consular function); Ford, 834 F. Supp. at 75 (management and supervision of consular staff are consular functions).

### 2. "Performed in the Exercise of"

The Vienna Convention does not define what actions are considered "performed in the exercise of" consular functions. Courts look to past judicial decisions for guidance. Ford, 834 F. Supp. at 76; STATE DEPT. GUIDE at 12. Whether an act is unlawful does not determine whether it is performed in the exercise of a consular function. Berdakin, 912 F. Supp. at 465. Rather, "it is the fact that an act is not a legitimate consular function—whether or not the act is illegal—that renders its performance outside the exercise of consular functions." Id.; see also Gerritsen, 989 F.2d at 346 (verbal threats and warnings were performed in the exercise of legitimate consular function of protecting consular premises); Berdakin, 912 F. Supp. at 465 (entering into a lease to procure space to operate a consulate is a reasonable means of fulfilling a consular function, regardless of whether consul's actions in vacating the premises breached the lease).

### 3. Managing and Supervising Consular Personnel are Consular Functions.

Management and supervision of consular personnel are consular functions because they are "fundamental to the efficient execution of all of the other consulate functions enumerated by the Vienna Convention." Ford, 834 F. Supp. at 75. Management and supervision of consular personnel are "necessarily entrusted to the Consul General and indeed lie at the core of any efforts by the Consul General to perform its designated function." Id. at 75-76. Management and supervision of consular personnel are consular functions where hiring and supervision are done for the benefit of the consulate. Cf. Park, 313 F.3d at 1142 (9th Cir. 2002) (consular officer's "hiring and supervision" of the

11

plaintiff—who took care of his children, cooked, and cleaned for the officer at his personal residence—were not consular functions because "a direct, not an indirect, benefit to consular functions is required.").

Ms. Ewald was hired as a consular employee. Compl. ¶ 12. She remained employed by the Consulate for the entire term of her employment contract and the supervision of her employment by Mr. Gandrud was within his consular functions. Compl. ¶¶ 3, 11, 14; Gandrud Aff. ¶ 8; Ford, 834 F. Supp. at 75. As noted in her Complaint, Ms. Ewald was hired "with the objective to strengthen relations between the Midwest and Norway within a respective focus area." Compl. ¶ 8. Ms. Ewald's focus area was higher education and research. Id. at ¶ 12. Her job description outlined tasks relating to furthering ties between Norway and the United States within higher education. Id. at ¶ 14. It also stated that she was to work under the direction of Mr. Gandrud. Id.

Ms. Ewald entered into an employment contract setting the terms and conditions of her employment—including her salary. Id. at ¶ 13; Gandrud Aff. Ex. 5. According to her Complaint, Ms. Ewald's hiring and continued employment was for the benefit of the Consulate. The Complaint sets out a detailed list of at least twelve of "Ms. Ewald's accomplishments/accolades during her tenure as the Officer of Higher Education and Research", demonstrating that the hiring and employment of Ms. Ewald—and any actions relating to her employment—were consular functions within the meaning of the Vienna Convention. Id. at ¶ 58 Indeed, Mr. Gandrud would have had no involvement with Ms. Ewald's employment had it not been for his status as a consular officer for the Kingdom of Norway.

### 4. The Acts Alleged in Ms. Ewald's Complaint Were Performed by Mr. Gandrud in the Exercise of Consular Functions.

All of the acts that Ms. Ewald claims were committed by Mr. Gandrud were acts performed in the exercise of his consular functions. Any involvement by Mr. Gandrud in the hiring, management and supervision of Ms. Ewald involve his consular functions within the meaning of the Vienna Convention. Ford, 834 F. Supp. at 75.

The Complaint asserts four counts against Mr. Gandrud that all fall within the performance of his consular functions of managing and supervising Ms. Ewald's employment: (1) he made knowingly false representations to Ms. Ewald regarding her position and compensation; Compl. ¶¶ 66-69; (2) he engaged in reprisal against Ms. Ewald for her opposition to certain employment practices; Id. at ¶¶ 79-87; (3) he aided and abetted discriminatory employment practices; Id. at ¶¶ 88-93; and (4) he retaliated against Ms. Ewald for her opposition to discriminatory employment practices; Id. at ¶¶ 94-102.

In Ford v. Clement, the plaintiff, a former Vice Consul of the Republic of Panama, brought claims arising out of her employment with the Panamanian Consulate. Ford, 834 F. Supp. at 72. The plaintiff in Ford alleged that the defendant, a Panamanian Consul General, targeted her for harassment in an effort to force her to resign. Id. at 73-74, n.2.

Now-Justice Sotomayor found that the alleged unlawful acts of the defendant in Ford were "performed in the exercise of" the consular functions of managing and supervising consular staff. Id. at 77. Many of the plaintiff's claims in Ford are the same as Ms. Ewald's claims against Mr. Gandrud. Specifically, Mrs. Ford claimed:

13

- That the Consul General "began isolating Mrs. Ford . . . [and] began working against her accreditation." Ford, 834 F. Supp. at 73-74. Cf.:

    - "Defendant Embassy, through Defendant Gandrud, kept Ms. Ewald out of the loop by visiting Concordia and Luther Colleges . . . . [Ms. Ewald] was quite embarrassed to learn . . . about these visits . . . ." Compl. ¶ 45.

    - Mr. Gandrud allegedly "bristled" at Ms. Ewald when she inquired about Mr. Gandrud's college visits. Id.

    - "Defendant Gandrud told Ms. Carleton at the Consulate not to tell Ms. Ewald about Mr. Davidson's administrative assistant." Id. at ¶ 41.

    - Mr. Gandrud did not invite Ms. Ewald to a luncheon for Norwegian students that he had invited her to in the past. Id. at ¶ 57.

- That the Consul General in Ford engaged in "a campaign of harassment designed to force Mrs. Ford out of the Consulate . . . ." Ford, 834 F. Supp. at 74. Cf.:

    - "[Ms. Ewald] was threatened and has been intimidated and retaliated against." Compl. ¶ 37.

    - Mr. Gandrud allegedly told Ms. Ewald that she should "nip [her complaints] in the bud" or there would be "consequences." Id. at ¶ 36.

    - Mr. Gandrud allegedly told Ms. Ewald that if she continued to raise issues that someone would "likely have to go" and "pounded his fist on the table" to "stop Ms. Ewald from continuing the discussion." Id. at ¶ 38.

This is nearly all of the allegations Ms. Ewald makes against Mr. Gandrud.[6]

The plaintiff's allegations in Ford went further than Ms. Ewald's. In addition to the allegations above, Mrs. Ford claimed:

- That the Consul General had Mrs. Ford surveilled and spread "false allegations against both her and Mr. Ford." Ford, 834 F. Supp. at 74.

---

[6] Ms. Ewald's remaining allegations against Mr. Gandrud include that Mr. Gandrud "confirmed" the Embassy's "message" that Ms. Ewald and her male colleague were "intended to work as a team"; Compl. ¶ 19; that Mr. Gandrud "attempted to explain the disparity in pay" between Ms. Ewald and her male colleague; Id. at ¶ 34; and that Mr. Gandrud "advised Ms. Ewald to send an email to the Ambassador" telling him that she and her male colleague worked well together; Id. at ¶ 35. These allegations also fall within Mr. Gandrud's consular immunity.

- That the Consul General stopped paying Mrs. Ford's salary.  Id.

- That the Consul General's actions caused Mrs. Ford to "become ill and also injure herself."  Id.

- That the Consul General's actions "ultimately caused [Mrs. Ford's] discharge."  Id.

The court in Ford found that all of the plaintiff's allegations against the Consul General were acts "performed in the exercise of" his function of managing and supervising consular staff.  Thus, the Consul General was immune from jurisdiction under the Vienna Convention.  Id. at 77.

In contrast to Mrs. Ford, Ms. Ewald was not discharged and remained gainfully employed by the Consulate through the end of her contract term.  See Compl. ¶ 3; Gandrud Aff. ¶ 9.  Unlike Mrs. Ford, Ms. Ewald has been paid the salary and benefits set forth in the written employment contract that she signed and agreed to.  Compl. ¶ 13; Gandrud Aff. Ex. 5.  All of the allegations in Ms. Ewald's Complaint invoke Mr. Gandrud's consular functions of managing and supervising consular staff.  All of the actions alleged to have been committed by Mr. Gandrud in Ms. Ewald's Complaint fall within Mr. Gandrud's exercise of consular functions.  Accordingly, Mr. Gandrud is immune from this Court's jurisdiction under the Vienna Convention.

**B.     Consular Immunity Applies to Mr. Gandrud's Alleged Conduct Even Though Ms. Ewald Claims it was Unlawful.**

Ms. Ewald cannot thwart the immunity provided to Mr. Gandrud by the Vienna Convention by arguing that the purported unlawfulness of Mr. Gandrud's actions brings them outside the scope of Vienna Convention immunity.  "[I]f this were the rule . . . there

15

would be no immunity, . . . since every lawsuit asserted against a consular official accuses him or her of some violation of legal rights." Koeppel & Koeppel v. The Federal Republic of Nigeria, 704 F. Supp. 521, 523-24 (S.D.N.Y. 1989).

As the court recognized in Ford, "no matter how troubling [a consular officer's] alleged actions may be, the Court cannot address them if he is immune from the jurisdiction of this Court." Ford, 834 F. Supp. at 74. See also, Berdakin, 912 F. Supp. at 465 (once a consular function is identified, "it is irrelevant that the manner in which the Consul performed this function is alleged to have violated the law. Article 5(m) requires that the *function* be legal, but Article 43 does not require that the conduct in the exercise of that function also be legal") (emphasis in original).

The Vienna Convention requires that Mr. Gandrud receive consular immunity for official acts in performance of consular functions. Management and supervision of Ms. Ewald's employment were consular functions. Ms. Ewald's claims that such acts were unlawful does not bring them outside Mr. Gandrud's Vienna Convention immunity. Indeed, Ms. Ewald's claims of unlawful conduct have no bearing on this Court's determination of Mr. Gandrud's consular immunity. Berdakin, 912 F. Supp. at 465.

### C. The Kingdom of Norway Has Not Waived Mr. Gandrud's Consular Immunity.

Article 45 of the Vienna Convention governs waiver of consular immunity. Under Article 45, only the sending state may waive a consular officer's immunity from jurisdiction and then only by express waiver sent to the receiving state in writing. Vienna Conv., art. 45; Flynn v. Schultz, 748 F.2d 1186, 1118 (7th Cir. 1984); People v. Corona,

211 Cal. App. 3d 529, 538-40 (Cal. Ct. App. 1989) (consular official could not testify in proceeding—even where sending state did not object to testimony—because there was no express written waiver of consular privilege against testifying pursuant to Article 45).

Here, Ms. Ewald does not claim that Mr. Gandrud's consular immunity has been waived, nor could she. Ms. Ewald's claim that the Royal Norwegian Embassy consented to jurisdiction in Minnesota is not enough to waive Mr. Gandrud's consular immunity. Compl. ¶ 2. Even if the alleged consent to jurisdiction amounted to a waiver, it could only serve as a waiver to *sovereign* immunity. See 28 U.S.C. § 1605(a)(1). Waiver of *consular* immunity is wholly separate and requires express written waiver from the sending state to the receiving state. Vienna Conv., art. 45. This type of waiver never occurred.

## CONCLUSION

All of Ms. Ewald's claims against Mr. Gandrud fall within Mr. Gandrud's immunity as a consular officer of the Kingdom of Norway. Ms. Ewald's claims arise from Mr. Gandrud's management and supervision of her employment. These functions—and the acts performed in the exercise thereof—fall within the immunity afforded Mr. Gandrud by Article 71 of the Vienna Convention. Because the acts alleged in Ms. Ewald's Complaint are entirely within Mr. Gandrud's consular immunity, this Court lacks subject-matter jurisdiction and all claims against Mr. Gandrud must be dismissed.

Dated:  November 3, 2011 FAEGRE & BENSON LLP

s/ Sean R. Somermeyer
Daniel G. Wilczek, MN Atty #131660
  dwilczek@faegre.com
Sean R. Somermeyer, MN Atty #391544
  ssomermeyer@faegre.com

2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
Phone:  (612) 766-7000

Attorneys for Defendants

fb.us.7044962.04