# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ellen S. Ewald,                              Civil No. 11-CV-2116 (SRN/SER)


        Plaintiff,                              ORDER

v.

Royal Norwegian Embassy,

        Defendant.

---

Thomas E. Marshall, Sheila A. Engelmeier, and Susanne J. Fischer, Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, Minnesota 55402, for Plaintiff

Daniel G. Wilczek, Joel P. Schroeder, and Sean Somermeyer, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant

---

SUSAN RICHARD NELSON, United States District Court Judge

      This matter is before the Court on Defendant's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment [Doc. No. 43]. For the reasons set forth herein, and as stated at the hearing, Defendant's Motion is denied.

## I.    BACKGROUND

      The facts of this employment discrimination are thoroughly set forth in this Court's Order of January 26, 2012 [Doc. No. 18], which this Court incorporates by reference. Briefly, Plaintiff Ellen Ewald alleges that in July 2008, she applied for the position of

1

Higher Education and Research Officer with Defendant, the Royal Norwegian Embassy ("the Embassy"), at the Honorary Norwegian Consulate General in Minneapolis. (Compl. ¶ 7 [Doc. No. 1].) At the time, the Embassy also posted an Innovation and Business Development Officer position in Minneapolis. (Id.) Ewald alleges that the Embassy informed her that the two Officer positions offered the same salary and benefits, were considered "parallel positions" with similar responsibilities, and the Officers would work as a team under the direction of the Honorary Consul General and the Honorary Consul. (Id. ¶¶ 10-11.) Based on the Embassy's representations, Ewald alleges that she accepted the offer of employment as Higher Education and Research Officer on October 1, 2008, and relocated from Norway in order to work for the Embassy in Minneapolis. (Id. ¶¶ 12-13.) The Embassy subsequently hired Anders Davidson as the Innovation and Business Development Officer. (Id. ¶ 15.)

Ewald contends that Defendant discriminated against her based on gender, alleging the following differences in Defendant's treatment of her and that of Mr. Davidson: Ewald's domestic partner and their two children were denied health insurance coverage, while Mr. Davidson's wife and children received coverage (id. ¶ 18); Davidson received a significantly higher salary (id. ¶ 25); Davidson received an assistant, while Ewald did not (id. ¶ 41); and Davidson received travel funding, while Ewald did not. (Id.) Ewald further contends that she was not permitted to attend certain professional events – specifically, a "Science Week" event – that were considered part of her job duties. (Id. ¶¶

43-51.)   Davidson was provided travel expenses to attend such events, Ewald contends, although his attendance was not an essential function of his duties.  (Id.)  When Ewald expressed her frustration about the alleged unequal treatment, she contends that Defendant retaliated against by not providing sufficient administrative assistance and by further ostracizing her.  (Id. ¶ 41.)   Defendant informed Plaintiff that it would not extend her employment contract beyond its October 2011 expiration date.  (Id. ¶ 59.)

In her Complaint, Plaintiff asserts seven claims against Defendant: promissory estoppel (Count I); false representation in violation of Minn. Stat. § 181.64 (Count II); gender discrimination in violation of the Minnesota Human Rights Act ("MHRA"), Minn. Stat. § 363A.08, Subd. 2 (Count III); reprisal in violation of the MHRA, Minn. Stat. § 363A.15 (Count IV); retaliatory harassment in violation of the MHRA, Minn. Stat. §§ 363A.08, 363A.14, and 363A.15 (Count VI); violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d)(1) (Count VII); and violation of the Minnesota Whistleblower Act, Minn. Stat. § 181.932 (Count VIII).[1]

Defendant moves to dismiss, arguing that, pursuant to Fed. R. Civ. P. 12(b)(6), Plaintiff's claims fail as a matter of law.  Alternatively, if the Court relies on evidence

---

[1] Plaintiff originally asserted a claim against former Defendant Gary Gandrud for aiding and abetting unfair discriminatory employment practices (Count V).  The Court previously dismissed Gandrud from the suit based on consular immunity (Order of 1/26/12 [Doc. No. 18].)   Because Count V refers to Gandrud by name, and no other employee of the Embassy, the claim for aiding and abetting is therefore no longer in the lawsuit.

outside the pleadings, Defendant moves for summary judgment.

## II.    DISCUSSION

### A.    Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the

facts in the Complaint to be true and construes all reasonable inferences from those facts

in the light most favorable to Plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir.

1986).  However, the Court need not accept as true wholly conclusory allegations, Hanten

v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal

conclusions Plaintiffs draw from the facts pled.  Westcott v. City of Omaha, 901 F.2d

1486, 1488 (8th Cir. 1990).

To survive a motion to dismiss, a complaint must contain "enough facts to state a

claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544,

545 (2007).  Although a complaint need not contain "detailed factual allegations," it must

contain facts with enough specificity "to raise a right to relief above the speculative

level."  Id. at 555.  As the United States Supreme Court recently stated, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements,"

will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (citing

Twombly, 550 U.S. at 555).  In sum, this standard "calls for enough fact[s] to raise a

reasonable expectation that discovery will reveal evidence of [the claim]."  Twombly, 550

U.S. at 556.  Here, the Court will not consider evidence outside of the pleadings, and

4

therefore confines its analysis to Plaintiff's Complaint.

**B.     Plaintiff's Claims**

**1.     Promissory Estoppel**

Defendant argues that Plaintiff's promissory estoppel claim must be dismissed because she had a valid employment contract with the Embassy.  (Def.'s Mem. Supp. Mot. Dismiss at 10 [Doc. No. 20].)   Plaintiff responds, however, that she relied to her detriment on the information that Defendant provided in the interview process, outside of the employment contract – information regarding the same salary range for the two open positions and the same benefits – in accepting her position with the Embassy.

"Promissory estoppel is an equitable doctrine that implies a contract in law where none exists in fact." Martens v. Minnesota Mining & Mfg. Co., 616 N.W.2d 732, 746 (Minn. 2000) (quotation and citations omitted).  A claim for promissory estoppel requires proof of the following three elements: (1) a clear and definite promise; (2) the promisor intended to induce reliance and such reliance occurred to the promisee's detriment; and (3) the promise must be enforced to prevent injustice.  Id. (citation omitted).  As this Court has held, "[b]ecause promissory estoppel implies a contract where none exists in fact, such a claim may not proceed where a legally enforceable contract was formed." InCompass IT, Inc. v. XO Commc'ns Servs., No. 10-CV-3864 (SRN/JJG), 2012 WL 28267, *5 (D. Minn. Jan. 5, 2012) (citing Gorham v. Benson Optical, 539 N.W.2d 798, 801–802 (Minn. Ct. App. 1995)).

In <u>Jackson v. Navitaire, Inc.</u>, No. 04-CV-1557 (RHK/AJB), 2005 WL 61490, *3 (D. Minn. Jan. 11, 2005), this Court considered a similar motion to dismiss a promissory estoppel claim under Rule 12.  The plaintiffs in that case argued that the promises alleged in the complaint, combined with the plaintiffs' move to Minnesota in reliance on those promises, formed an employment agreement prior to, and independent of, the signed agreements.  <u>Id.</u>  The plaintiffs argued that it was the prior agreements – not the signed agreements – that formed the basis of their breach of contract and promissory estoppel claims.  <u>Id.</u>  This Court held that the allegations in the complaint sufficiently alleged those claims and therefore denied the motion to dismiss them.  <u>Id.</u> at *4.

At this early stage of the litigation, viewing the facts in the light most favorable to Plaintiff, the Court finds that she has stated a promissory estoppel claim that is plausible on its face.  Plaintiff alleges clear and definite statements indicating that the two posted positions offered the same salary range, with a maximum starting salary of $70,000.  (Compl. ¶ 11.)  Moreover, she alleges that Defendant's representatives also informed her that the two positions offered the same benefits.  (<u>Id.</u>)  She further alleges that, in reliance on those statements, she accepted the Higher Education and Research Officer position and moved her family to Minnesota.  (<u>Id.</u> ¶¶ 12; 62.)   Ewald contends that Defendant breached its promise and, in fact, did not provide a salary and benefits identical to those offered her male counterpart, Mr. Davidson.  (<u>Id.</u> ¶ 63.)   Finally, she alleges that it would be unjust not to enforce Defendant's promise.  (<u>Id.</u> ¶ 64.)  Plaintiff has sufficiently alleged

a plausible claim for promissory estoppel.  See Martens, 616 N.W.2d at 746.

Accordingly, Defendant's motion to dismiss this claim is denied.

### 2.      False Representation under Minn. Stat. § 181.64

Plaintiff asserts a false representation claim under Minn. Stat. § 181.64, which

provides:

> It shall be unlawful for any person, partnership, company, corporation,
> association, or organization of any kind, doing business in this state,
> directly or through any agent or attorney, to induce, influence, persuade, or
> engage any person to change from one place to another in this state, or to
> change from any place in any state, territory, or country to any place in this
> state, to work in any branch of labor through or by means of knowingly
> false representations, whether spoken, written, or advertised in printed
> form, concerning the kind or character of such work, the compensation
> therefor, the sanitary conditions relating to or surrounding it, or failure to
> state in any advertisement, proposal, or contract for the employment that
> there is a strike or lockout at the place of the proposed employment, when
> in fact such strike or lockout then actually exists in such employment at
> such place. Any such unlawful acts shall be deemed a false advertisement or
> misrepresentation for the purposes of this section and section 181.65.

Minn. Stat. § 181.64.

Defendant argues that the plain language of the statute requires a plaintiff to

demonstrate that the statements at issue were "knowingly false," and that Plaintiff has

failed to do so.   (Def.'s Mem. Supp. Mot. for Summ. J. at 12 [Doc. No. 20]) (citing

Minn. Stat. § 181.64).  Defendant contends that Plaintiff cannot establish that the

Embassy made a knowingly false representation concerning her compensation or the

"kind or character" of her position.  Id.  Defendant asserts that Plaintiff has alleged that

Defendant informed her that the two positions "would" be paid the same salary.  Thus,

7

Defendant contends that, at best, any alleged representation that the two positions would be paid the same was a statement of future events and is not actionable.  (Id.)  In addition, Defendant argues that Plaintiff's allegations fail to meet the heightened pleading standard for claims of fraud under Fed. R. Civ. P. 9(b).   Ewald responds that Defendant made specific statements that she would be paid the maximum salary allowed in the salary range provided, i.e., $70,000, and would receive the same salary and benefits as her colleague in the Innovation and Business Development position, knowing that such statements were false.  (Compl. ¶ 11.)

In Vaidyanathan v. Seagate U.S. LLC, No. 09-CV-1212 (DWF/JSM), 2010 WL 2925067, * 3 (D. Minn. July 21, 2010), this Court denied summary judgment on a claim brought under Minn. Stat. § 181.64, finding genuine factual disputes as to whether the employer "made false representations regarding the position and, if so, whether the representations were known to be false."  (Id.)

Here, given the stage of litigation, which is far more preliminary than summary judgment, the Court finds that Plaintiff has alleged a plausible claim for relief under Minn. Stat. § 181.64.   As to whether the alleged false representations related to the "kind or character" of Plaintiff's position, or to "compensation," the Court finds that the Complaint sets forth the elements of a plausible claim.  Ewald alleges that during the interview process,  Defendant explicitly represented that the two Officer positions were considered parallel, and they would work closely as a team, had similar responsibilities

and objectives, shared the same stakeholders, and that the experiences and qualifications for the two positions were similar.  (Compl. ¶ 32.)   She alleges that Defendant encouraged her to move to the United States from Norway to take the Higher Education and Research Officer Position.  (Id. ¶ 4.)   However, after commencing employment with Defendant, Ewald contends that she learned that the two positions were not at all parallel. While Ewald's salary was $70,000, Davidson's salary was $110,000; her family was not covered under the Embassy's benefits plan, whereas Mr. Davidson's family was covered; she was not given administrative support, whereas Davidson was; she was denied travel expenses to attend out-of-town professional events, for which Davidson was reimbursed. (Id. ¶¶ 18-21; 15;48;50-51.)  While Defendant cites a number of cases involving false representations, the Court finds them factually and procedurally distinguishable.[2]

---

[2] Defendant cites the following authority: Kanner v. Fairmont Foods of Minn., Inc., No. C1-99-568, 2000 WL 31790, *2 (Minn. Ct. App. Jan. 18, 2000) (affirming a post-trial order and judgment denying plaintiff's false representation claims following jury verdict for plaintiff; the court affirmed the trial court's ruling that the alleged false representation, concerning whether the defendant had an office in Minneapolis, did not concern the "kind or character" of the plaintiff's position.); Lincoln v. Sears, Roebuck and Co., No. 02-CV-840 (DWF/SRN), 2002 WL 31108204, *5 (D. Minn. Sept. 17, 2002) (dismissing claim on a Rule 12 motion, finding that representation made as to FMLA leave was not related to the "kind or character" of employment, or compensation for the employment); Anderson v. Alorica, No. 03-CV-3248 (RHK/JSM), 2004 WL 1118635, *3-4 (D. Minn. May 18, 2004) (dismissing a claim for false representation on summary judgment where the plaintiff's evidence failed to support a claim of false representations); Coxall v. First Bank System, Inc., No. C8-93-599, 1993 WL 339062, *2 (Minn. Ct. App. Sept. 7, 1993) (affirming entry of summary judgment on false representation claim where plaintiff had alleged that he expected permanent employment prior to downsizing and the elimination of his position).  (Def.'s Mem. Supp. Mot. for Summ. J. at 13-15 [Doc. No. 20].)

Plaintiff's allegations describe representations related to her compensation, benefits and job duties – representations which, at this stage of the litigation, appear to concern the "kind or character" of Ewald's employment or compensation for employment.

Ewald also has plausibly alleged the circumstances constituting the allegedly false representation sufficient for purposes of Rule 9(b). See Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982) (requiring a plaintiff pleading a fraud claim to sufficiently set forth the circumstances of the alleged fraud, including the "time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby."); Stark v. Monson, No. 07-CV-4374 (MJD/AJB), 2008 WL 189959, at *8 (D. Minn. Jan. 22, 2008) (same). As noted above, Ewald's allegations sufficiently set forth the circumstances regarding the time, place and contents of the representations, as well as the identity of the person making the statements.

### 3.   Retaliatory Harassment, Reprisal and Minnesota Whistleblower Act

Plaintiff asserts claims for reprisal in violation of the MHRA, retaliatory harassment, and violation of the Minnesota Whistleblower Law, Minn. Stat. § 181.932. Defendant notes that it is unable to identify a cause of action entitled "retaliatory harassment," and therefore considers the claim to be a restatement of Ewald's reprisal claim. (Def.'s Mem. Supp. Mot. for Summ. J. at 16, n.3 [Doc. No. 20].)  Defendant argues that Ewald's reprisal and whistleblower claims fail as a matter of law because she

has not shown that she suffered a cognizable adverse employment action.  (Id. at 17.)

Ewald contends that other federal courts have recognized a claim for retaliatory harassment under Title VII.[3]  (Pl's Opp'n Mem. at 23 [Doc. No. 24]) (citing Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006)).  The Eighth Circuit has acknowledged such a claim, albeit in passing, in a suit involving discrimination on the basis of religion and retaliatory harassment.  Abramson v. Council Bluffs Cmty. Sch. Dist., 808 F.2d 1307, 1308 (8th Cir. 1987).  Other courts have addressed claims for retaliatory harassment under the general framework for Title VII retaliation claims, see, e.g., Alvarado v. Donahue, 687 F.2d 453, 458 (1st Cir. 2012) (reviewing claim for disability and retaliatory harassment under retaliation claim analysis); Rose v. Mabus, No. 11-55125, 2012 WL 2833942, *1 (9th Cir. July 11, 2012) (granting summary judgment to the defendant on plaintiff's retaliatory harassment claim where he failed to raise a genuine dispute of material fact as to whether the alleged conduct was because of his protected activity, or was sufficiently severe or pervasive to alter the conditions of his employment), or under the framework of a retaliatory hostile work environment claim, see Cleveland v. S. Disposal Waste Connections, No. 11-5228, 2012 WL 3241561, *8 (6th Cir. Aug. 9, 2012) (addressing whether plaintiff established severe or pervasive retaliatory harassment as part of her claim of hostile work environment based on retaliation).  In general, for such

---

[3] Minnesota courts have relied on federal law developed under Title VII in analyzing claims under the MHRA.  See Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101 (Minn. 1999).

11

retaliatory harassment claims, the plaintiff must show that (1) she engaged in statutorily-protected activity; (2) she suffered an adverse employment action/severe or pervasive retaliatory harassment; and (3) there was a causal connection between the protected activity and the harassment.  See id.  These elements are identical to the required elements for a claim of reprisal under Minnesota law.   Hoover v. Norwest Private Mortgage Banking, 632 N.W.2d 534, 548 (Minn. 2001).

It is an unfair discriminatory practice to engage in reprisal against any person because that person opposed a practice prohibited by the MHRA.  Minn. Stat. § 363A.15. Under the MHRA, a reprisal is defined as "any form of intimidation, retaliation, or harassment."  Minn. Stat. § 363A.15.  Under the statute, an employer engages in reprisal when it does the following in response to an employee engaging in protected activity:

> refuse to hire the individual; depart from any customary employment
> practice; transfer or assign the individual to a lesser position in terms of
> wages, hours, job classification, job security, or other employment status; or
> inform another employer that the individual has engaged in [protected]
> activities.

Id.  Minnesota courts analyze reprisal claims under the familiar McDonnell-Douglas burden-shifting test.  Fletcher v. St. Paul Pioneer Press, 589 N.W.2d 96, 101 (Minn. 1999) (citing McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973)).

Defendant argues that Plaintiff's allegations regarding the Embassy's conduct do not rise to the level of adverse employment actions sufficient to form the basis of an actionable retaliation claim.  To establish the element of an adverse employment action, a

plaintiff "must show that a reasonable employee would have found the challenged actions

materially adverse." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).

The defendant's conduct must be sufficiently severe such that it "well might have

dissuaded a reasonable worker from making or supporting a charge of discrimination."

Id. (internal quotations omitted). "[N]ormally petty slights, minor annoyances, and

simple lack of good manners" will not dissuade a reasonable person from pursuing a

claim of retaliation." Id.

Defendant contends that Ewald experienced none of the adverse actions that are

typically considered actionable – she served the entire term of her employment,

experienced no reduction in salary or demotion, nor was she subject to any disciplinary

action.  Plaintiff, however, contends that she experienced adverse employment actions as

a result of her complaints.  She alleges that she "opposed Defendant['s] practices of

discrimination and retaliation against her by her multiple complaints" regarding her

treatment.  (Compl. ¶ 81.)   Ewald contends that Defendant retaliated against her by

making significant efforts to renew Mr. Davidson's contract, while making no such

efforts with regard to her contract.  (Id. ¶ 84.)  She also incorporates into her reprisal and

retaliatory harassment counts the numerous factual allegations in the Complaint relating

to her offer of employment, the alleged representations about the parallel position

ultimately offered to Mr. Davidson, the differences in health insurance benefits,

administrative support, travel expenses, and salary, and eventual lack of inclusion in

professional events.  (Id. ¶¶ 1-78.)

Accepting Plaintiff's allegations as true for purposes of a motion to dismiss, the

Court finds that she has stated plausible claims for reprisal, retaliatory harassment and

whistleblower claims.  While a plaintiff must demonstrate a material,adverse action to

state a claim for reprisal and retaliatory harassment, the Eight Circuit has observed that it

is "proper to consider the cumulative effect of an employer's alleged retaliatory conduct."

Fercello v. Cty. of Ramsey, 612 F.3d 1069, 1083-84 (8th Cir. 2010) (citing Devin v.

Schwan's Home Serv., Inc., 491 F.3d 778, 787-88 (8th Cir. 2007)).  Courts have also held

that a plaintiff need not necessarily be demoted, terminated, reassigned, suspended, or

lose compensation in order to demonstrate an adverse employment action.  Kim v. Nash

Finch Co., 123 F.3d 1046, 1060 (8th Cir. 1997).  As set forth in the factual allegations of

the Complaint, Ewald alleges that after complaining of discrimination, she was thereafter

subjected to various actions that interfered with the conditions of her position.  For

example, after complaining of unequal pay and benefits, Defendant canceled health

insurance for her domestic partner (Compl. ¶ 24.)   After expressing her complaints to

Honorary Consul Gandrud, Ewald alleges that he told her to "nip [her complaints] in the

bud," or to be prepared for the "consequences."  (Id. ¶ 36.)  If she continued to complain,

Gandrud allegedly warned her that "someone would 'likely have to go.'" (Id. ¶ 37.)

Ewald alleges that she was denied travel expenses and opportunities to attend

professional events, whereas Mr. Davidson was provided travel expenses and

opportunities to attend the very same events and meetings.  (Id. ¶ 46-51.)   Again, after complaining of the alleged unfair treatment, Ewald contends that she was "frozen out of virtually all communication lines" relating to work events and heard reports from third parties about discussions within the Embassy about an "Ellen problem" in Minneapolis. (Id. ¶¶ 42; 47.)   Ewald alleges that while she was told that her contract would not be extended beyond the expiration of its three-year term, Mr. Davidson was offered an extension.  (Id. ¶ 59.)  As to her whistleblower claim, Plaintiff alleges that after voicing her belief to the Norwegian Ambassador that the denial of health insurance for her family members violated Defendant's "insurance policy and US law"– her alleged protected activity – Defendant retaliated against her, as set forth above.  (Compl. ¶ 111.)

Taken together, the Court finds that Plaintiff's allegations plead plausible claims for reprisal, retaliatory harassment and whistleblower actions.   Discovery has not been completed in this case, and the Court must construe Plaintiff's allegations as true. Accordingly, Defendant's motion to dismiss Plaintiff's claims for reprisal, retaliatory harassment and violation of the Minnesota whistleblower statute Minn. Stat. § 181.932, are denied.[4]

---

[4]  Although the parties do not appear to have raised this issue, the MHRA's exclusive remedy provision, Minn. Stat. § 363A.04, prohibits an employee from seeking recovery for the same allegedly discriminatory conduct on the same facts under both the MHRA and the whistleblower statute.  Williams v. St. Paul Ramsey Med. Ctr., 551 N.W.2d 483, 485-86 (Minn. 1996).   For the present, and in light of motion to dismiss standard that favors the non-moving party, the Court will permit the MHRA and whistleblower claims to remain, with the understanding that the whistleblower claim may

### 4.     Equal Pay and Gender Discrimination

Defendant argues that Plaintiff's claims of gender discrimination in violation of the MHRA and the Equal Pay Act ("EPA") fail as a matter of law.  Defendant contends that Plaintiff cannot show that her position and Davidson's position were substantially equivalent positions.  (Def's Mem. Supp. Mot. for Summ. J. at 21 [Doc. No. 20].) Defendant argues that the job descriptions on their face show that the positions were different, requiring different skills and experience.  In support of its argument, Defendant notes that Ewald did not apply for both positions.

To establish a claim under the EPA, Ewald must show that she was paid less than similarly situated male employees for equal work in jobs that required equal skill, effort, and responsibility, and that were performed under similar working conditions.  29 U.S.C. § 206(d)(1); Taylor v. White, 321 F.3d 710, 715 (8th Cir. 2003).  The Embassy must then show that any pay differential was based on a factor other than gender.  Id.

Again, this Court's review is confined to the Complaint.  Ewald alleges sufficient facts to state plausible claims of gender discrimination under the MHRA, Minn. Stat. § 363A.08, Subd. 2, and the EPA, 29 U.S.C. § 206(d)(1).  In support of her claims, Plaintiff has identified a male comparator, Mr. Davidson.   Her Complaint details many of the job responsibilities considered parallel between her education position and Mr. Davidson's

---

be considered an alternative theory of liability.

business position.  (Compl. ¶¶ 8-9.)  The Complaint also alleges a $40,000 salary disparity, against the backdrop of various representations from Defendant that the two positions were considered parallel and part of a team.  (Id. ¶¶ 11; 16; 32.)   While Defendant argues that the two positions were, in fact, different, this Court has held that ". . . job titles and classifications are not dispositive; it is the actual requirements of the jobs that control."  Grover v. Smarte Carte, Inc., 836 F. Supp.2d 860, 866 (D. Minn. 2011) (citing Tenkku v. Normandy Bank, 348 F.3d 737, 741 (8th Cir. 2003)).   Again, discovery is crucial to the ultimate resolution of Plaintiff's claims and the dismissal of Plaintiff's claims at this time would be premature.  For purposes of the sufficiency of the pleading, Plaintiff has stated plausible claims for relief under the MHRA for gender discrimination and under the EPA.  Accordingly, Defendant's motion to dismiss these claims is denied.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

Defendant's Motion to Dismiss, or, in the alternative, Motion for Summary Judgment [Doc. No. 19] is **DENIED.**

Dated:    October 9, 2012

s/Susan Richard Nelson
SUSAN RICHARD NELSON
United States District Court Judge