# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Case No.: 11-CV-2116 (SRN/SER)

Ellen S. Ewald,

                Plaintiff,

v.

**ORDER**

Royal Norwegian Embassy,

                Defendant.

---

Sheila A. Engelmeier, Susanne J. Fisher, Thomas E. Marshall, Esqs., Engelmeier & Umanah, P.A., 12 South 6th Street, Suite 1230, Minneapolis, Minnesota 55402, for Plaintiff.

Daniel G. Wilczek, Joel P. Schroeder, Sean R. Somermeyer, Esqs., Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402 for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge.

The primary issue in this dispute relates to an alleged disparity in salary and other benefits between Plaintiff Ellen S. Ewald ("Ewald") and a male co-worker employed by the Royal Norwegian Embassy (the "Embassy"). This matter is before the Court on the Embassy's Motion to Compel Mental Health Information, [Doc. No. 87], and has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Motion is denied.

## I.   BACKGROUND[1]

Ewald brought an action in state court asserting seven causes of action against the Embassy: promissory estoppel; violation of Minn. Stat. § 181.64; gender discrimination under

---

[1] The page references cited herein are found in the Transcript of the Motions Hearing, *Ellen Ewald v. Royal Norwegian Embassy*, (11CV2116), February 27, 2013 [Doc. No. 99] ("Tr.").

1

the Minnesota Human Rights Act, Minn. Stat. § 363A.08; reprisal under Minn. Stat. § 363A.15; retaliatory harassment under Minn. Stat. §§ 363A.08, 363A.14, 363A.15; violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1); and violation of the Minnesota Whistleblower Act, Minn. Stat. §181.932.[2] (Summons and Compl., Ex. A, Attached to Not. of Removal, "Compl.") [Doc. No. 1]. The Embassy removed the case. (Notice of Removal) [Doc. No. 1]. All of Ewald's claims contain a past and future lost wages damages component, (Compl. ¶¶ 63–65, 68–69, 76, 85, 100, 107, 112), but she also seeks damages for "mental anguish" and "past and future emotional distress" related to her gender discrimination, reprisal, retaliatory harassment, and Minnesota Whistleblower Act claims. (*Id.* ¶¶ 76, 85, 100, 112). In her Complaint, Ewald mentions "mental anguish" five times and emotional distress twice. (*Id.* ¶¶ 76, 85, 91, 100, 112). Ewald equates mental anguish with emotional distress in her prayer for relief and, in the body of her Complaint, describes her emotions as embarrassment, intimidation, being ostracized, feeling threatened, being bullied, and feeling excluded. (*Id.* ¶¶ 5, 37, 41, 42, 45, 53, 54). Nowhere does Ewald describe any physical conditions related to her emotional distress; she does, however, request "[d]amages in excess of $50,000 for mental anguish and/or emotional distress." (*Id.* at 23).

In the course of discovery, the Embassy obtained documents it claims "indicate that Ms. Ewald was treated for mental-health issues unrelated to her employment during the time she was employed by the Embassy." (Def.'s Mem. of Law in Support of its Mot. to Compel Health Information, "Def.'s Mem.") [Doc. No. 89 at 1].[3] Among those documents were Ewald's

---

[2] The Complaint contains eight counts, however, Ewald pled Count V (Aiding and Abetting) against only former defendant Gary Gandrud. (Compl. ¶ 90); (Mem. Op. and Order dated Jan. 26, 2012) [Doc. No. 18].

[3] The Parties initially filed their respective memorandum under seal. The Embassy cited "an abundance of caution and respect for Ms. Ewald's privacy." (Tr. at 5). Ewald referenced a document that the Embassy labeled as confidential, an assertion she challenges. (Pl.'s Resp. Mem. to Def.'s Mot. to Compel Mental Health Information) [Doc. No. 94 at 7 n.3]. Both relied

2

answers to the Embassy's interrogatories and the Rule 26(f) Report. (Def.'s Mem. at 2). In both instances, Ewald listed "mental anguish" in the itemization of damages sought. (Pl.'s Answers to Def.'s First Set of Interrogs., Ex. A at 8, Attached to Index of Exhibits in Support of Def.'s Mot. to Compel Mental Health Information, "Index of Exhibits") [Doc. No. 90]; (Rule 26(f) Report) [Doc. No. 32 at 4]. The Embassy also collected emails from Ewald's Ministry of Foreign Affairs account.[4] (Def.'s Mem. at 5). According to the Embassy, in at least five emails Ewald "described issues far more serious than 'garden variety' emotional distress." (*Id.*).

Ewald objected to two of the Embassy's discovery requests seeking information regarding her medical condition and requesting medical authorizations. (Pl.'s Answers to Def.'s First Set of Interrogs., Ex. A at 12, Attached to Index of Exhibits); (Pl.'s Responses to Def.'s Frist Set of Requests for Production of Documents, Ex. B at 7, Attached to Index of Exhibits). She argued this information is privileged and irrelevant. (Pl.'s Answers to Def.'s First Set of

---

on the Protective Order issued by this Court on December 4, 2012, (Protective Order) [Doc. No. 77], in filing their memorandum. Sealing requires more than an agreement among the parties. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597–99 (1978); *Schedin v. Ortho-McNeil-Janssen Pharm., Inc.*, No. 08-cv-5743 (JRT), 2011 WL 1831597, at *1–2 (D. Minn. May 12, 2011). Decisions about sealing are committed to the sound discretion of the court. *Nixon*, 435 U.S. at 598–99; *IDT Corp. v. eBay*, --- F.3d ----, 2013 WL 490751, at *3 (Feb. 11, 2013); *Healey v. I-Flow, LLC*, 282 F.R.D. 211, 214 (D. Minn. 2012) (JRT/JJK). Neither party cited the statute, rule, or court order directing the sealing of the documents. Sufficient authority warranting sealing in this matter is not present and, under its discretion, the Court finds no reason for the sealing. Accordingly, the memoranda filed in support and opposition of this Motion will be ordered unsealed.

[4] At various times, each of the parties to this matter have claimed Norwegian law applies. Ewald even brought an untimely motion to amend and add Norwegian law claims. (Pl.'s Mot. to Amend Compl.) [Doc. No. 43]; (Order dated Nov. 21, 2012) [Doc. No. 69]. In the end, the applicability of Norwegian law is a matter of convenience and opportunity for the parties. Perhaps ironic—perhaps not—under Norwegian law, according to Ewald, employee emails are considered confidential, unlike how such emails are frequently treated under United States law. (Tr. at 42–43). *See generally O'Connor v. Ortega*, 480 U.S. 709 (1987) (setting forth the standard for evaluating employee's expectation of privacy on a case-by-case basis).

Interrogs., Ex. A at 12, Attached to Index of Exhibits); (Pl.'s Responses to Def.'s First Set of Requests for Production of Documents, Ex. B at 7, Attached to Index of Exhibits).

In an effort to resolve this matter short of motion practice, the Embassy asked Ewald to confirm that she:

(1) is not alleging and will not allege a specific mental disorder;

(2) is not alleging and will not allege a claim of severe emotional distress;

(3) will not offer expert testimony to support a claim of emotional distress;

(4) concedes that her mental or physical condition is not in controversy;

(5) will not seek to offer her medical records into evidence in this litigation;

(6) has not sought or received any treatment or counseling from a professional regarding any emotional distress; and

(7) had not been prescribed any medication for any alleged emotional distress.

*See* (Letter dated Oct. 17, 2012, Ex. C, Attached to Index of Exhibits) [Doc. No. 90]; (Def.'s Mem. at 4). Ewald's counsel responded, stating she claimed garden variety emotional distress and was not going to offer expert or medical testimony. (Letter dated Nov. 14, 2012, Ex. C, Attached to Attached to Index of Exhibits); (Def.'s Mem. at 4). He also represented that any evidence relating to emotional distress or mental anguish would be through Ewald's own testimony or lay witnesses' observations of her behavior. (Letter dated Nov. 14, 2012, Ex. C, Attached to Attached to Index of Exhibits); (Def.'s Mem. at 4). The Embassy filed this Motion following the parties' unsuccessful attempts at resolution.[5] (Letters dated Sep. 28, 2012; Oct. 10,

---

[5] In an effort prevent the avoidable loss of costs, fees, and time, the Court also attempted to assist the parties in reaching resolution on this issue during the hearing. In doing so, the Court made a proposal to the parties: permit a limited deposition of Ewald regarding the emails, without disclosure of the medical records. (Tr. 35–37). This proposal did not concede the discoverability of the records, a waiver of the privilege, or even the relevance of the records.

2012; Oct. 17, 2012; Nov. 14, 2012; Dec. 21, 2012; Jan. 11, 2013; and Jan. 28, 2013, Ex. C, Attached to Index of Exhibits).

## II. DISCUSSION

The Embassy contends it is entitled to answers to discovery requests about Ewald's mental state and the related medical authorizations because the information is relevant to Ewald's claims that the Embassy caused her emotional distress. The Embassy asserts Ewald

---

Rather, it was an attempt to facilitate resolution of this issue without causing the parties to incur additional losses. Indeed, the Court acknowledged the benefits and costs of this proposal in terms of the potential advantages and disadvantages to either party. (Tr. 37). The parties were afforded two days to consider the option. (Tr. 37); (Minute Entry dated Feb. 27, 2013) [Doc. No. 96]. Both declined. The informal proposal was in no way intended to act as a judicial finding or conclusion as to relevance, privilege, or waiver.

In addition, at the start of the hearing, the Court provided the parties with copies of an opinion by then-Magistrate Judge Susan Richard Nelson that it finds influential to a decision on this issue, (*Doe v. Mulchay, Inc.*, No. 08-cv-178 (MJD/SRN), Order dated Jul. 7, 2008 [Doc. No. 73]). (Tr. at 5–6). The Embassy noted correctly that the relevant determination in Judge Nelson's opinion was later reversed by Judge Donovan W. Frank, (*Doe v. Mulchay, Inc.*, No. 08-cv-178 (MJD/SRN), Order dated Oct. 14, 2008 [Doc. No. 99]). (*Id.* at 13). Judge Frank concluded the motion was "premature," and the record lacked an adequate basis on which to grant or deny the motion because the parties had not conducted any discovery, (*Doe v. Mulchay, Inc.*, No. 08-cv-178 (MJD/SRN), Order dated Oct. 14, 2008 [Doc. No. 99 at 5, 6, 12]). (*Id.* at 13). He found that an "all-or-nothing approach" advocated by the parties was inappropriate, and outlined some "best practices" from a review of relevant case law to strike "a balanced approach." (*Doe v. Mulchay, Inc.*, No. 08-cv-178 (MJD/SRN), Order dated Oct. 14 2008 at 8). In doing so, Judge Frank noted the use of staged discovery and stipulations to assist a court in evaluating the need for the discovery sought. (*Id.* at 11–13). Judge Frank never concluded that the considerations contained in Judge Nelson's opinion were clearly erroneous or irrelevant to a decision on the issue. Rather, he found the record in that case lacked sufficient information in that case, and crafted a framework for analysis which added to the considerations identified by Judge Nelson.

In this Court's view, Judge Frank's decision does not detract from the import of the considerations identified in Judge Nelson's decision (*i.e.*, the type of emotional distress claimed; the symptoms alleged; whether the mental condition required medical treatment; whether medical evidence, expert testimony, or documents will be offered to support the claim; and whether a separate cause of action based on the distress has been alleged). It supplemented them and provided a structure for analysis. Keeping in mind the practices and principles outlined by Judge Frank, the factors identified in Judge Nelson's opinion remain relevant to a decision on this issue.

waived any privilege applicable to the mental health records by putting her mental health "at issue" by seeking money damages for the alleged emotional distress and disclosing the privileged communications to a third party. Ewald disputes the relevance of the records in this matter and further claims the pertinent privilege was not waived because she asserts only "garden variety" emotional distress that does not put her mental state at issue. For the following reasons, the Court finds the applicable privilege was not waived; the Embassy has no right to the withheld information. Therefore, the Motion is denied.

### A.   The Psychotherapist-Patient Privilege and Applicable Standard

Federal common law recognizes a psychotherapist-patient privilege that protects confidential communications between psychotherapists and patients, as well as records from psychotherapist sessions. *See Jaffee v. Redmond*, 518 U.S. 1, 4, 9–10, 15 (1996). This privilege extends to psychiatrists, psychologists, clinical social workers, and others engaged in mental health treatment. *See id.* at 15–16. In *Jaffee*, the Supreme Court found that a psychotherapist-patient privilege exists in federal common law because of the "imperative need for confidence and trust" in the psychotherapist-patient relationship. *Id.* at 10 (citation omitted). The *Jaffee* court, however, did not outline when a party could overcome the privilege; it stated only "we do not doubt that there are situations in which the privilege must give way, for example, if a serious threat of harm to the patient or to others can be averted only by means of a disclosure by the therapist." *Id.* at 18 n.19. Despite the nearly two decades since the *Jaffee* decision, the limits of the psychotherapist-patient privilege remain unclear.

A split exists in this district's courts regarding whether, when a party seeks the disclosure of psychotherapist-patient communications through discovery, the relevance standard of Federal Rule of Civil Procedure 26 or the heightened standard in Federal Rule of Civil Procedure 35

applies.[6] Rule 26 permits discovery that is "broad in its scope," requiring that "the information sought is relevant to the subject matter involved in the pending action." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc. of Minn.*, 187 F.R.D. 578, 589 (D. Minn. 1999) (JRT/RLE) (internal quotation marks and citation omitted). "Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The discovery allowed under Rule 35, which addresses when a court may order a party to undergo an independent physical or mental examination, is more limited in scope. Rule 35 allows a court to order an independent examination when a party's mental or physical condition is "in controversy" and if there is "good cause" to do so. *Schlagenhauf v. Holder*, 379 U.S. 104, 118–19 (1964). Some courts have held that psychotherapist-patient communications are discoverable if they are "relevant" under Rule 26, while others have held that the communications are not discoverable if they are "in controversy" under Rule 35. *See, e.g.*, *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 267 F.R.D. 257, 268–69 (D. Minn. 2007) (RHK/JSM) (outlining cases).

Regardless, the scope of all discovery at issue here is limited by Rule 26(b)'s important caveat—that discovery of relevant information is permitted only if it is **nonprivileged**. Fed. R. Civ. P. 26(b) (emphasis added); *see Schlagenhauf*, 379 U.S. at 117 (noting that the physical and mental examinations permitted under Rule 35 are limited by Rule 26(b)'s nonprivileged provision). The ultimate inquiry is whether Ewald waived the privilege in asserting claims for emotional distress or disclosing confidential information to a third party. This Court will apply the same approach Judge Tunheim utilized in *Heilman v. Waldron*, 287 F.R.D. 467, 476 (D.

---

[6]   For further detail about this split, *see, e.g.*, *John Doe I v. Mulcahy, Inc.*, Civ. No. 08-306, 2008 WL 4572515, at *4 (D. Minn. Oct. 14, 2008) (DWF/SRN) (noting that "some of these cases conflate privilege/waiver with relevancy, medical records with medical examinations, and generic medical records with mental-health-related medical records").

Minn. 2012) (JRT/SER), turning immediately to waiver of the psychotherapist-patient privilege. Because the information sought is privileged and no waiver occurred, the Court may not order these communications produced merely because they are relevant under Rule 26.

### B.    Waiver of the Psychotherapist-Patient Privilege

As mentioned earlier, the Federal Rules of Civil Procedure do not delineate the contours of the psychotherapist-patient privilege. Instead, the Court draws from federal common law discussing other types of privilege. *Heilman*, 287 F.R.D. at 475–76 (citing *Schoffstall v. Henderson*, 223 F.3d 818, 823 (8th Cir. 2000) (looking to the federal common law of attorney-client privilege to determine if a plaintiff waived the psychotherapist-patient privilege)). Under federal common law, a party can waive a privilege in a variety of ways, including (1) putting otherwise privileged communications "at issue" in the litigation or (2) disclosing those communications.[7] *See, e.g.*, *Schoffstall*, 223 F.3d at 823; *United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009). Accordingly, the controlling questions here are whether Ewald waived the privilege by putting mental state "at issue" or by disclosing those communications in her emails.

#### 1.    Whether the Records Are "at Issue"

Regarding the first type of waiver, Ewald's mental state is not "at issue" in this matter. Whether a party's mental health records are "at issue" is a fact-intensive, case-by-case inquiry. As the Embassy noted, Ewald claims emotional distress damages in excess of $50,000, which the Court believes is not nominal. (Tr. at 23); (Compl. at 23). Although not nominal, Ewald's emotional distress claims were not the primary component of her claimed damages—quantitatively or qualitatively. Regardless, the Court finds the discoverability of Ewald's mental

---

[7]    The parties' briefing and arguments limit the Court's consideration to these two potential forms of waiver. (Def.'s Mem. at 11–12); (Tr. at 31).

health records does not turn solely on the amount of damages claimed in this matter.[8] A number of considerations weigh in to the determination of whether Ewald waived the privilege by putting her mental health at issue. The facts, pleadings, and proceedings in this case, including several stipulations from Ewald, militate against finding "at issue" waiver.

First, at the hearing and at the Court's request, Ewald's counsel responded to the seven inquiries from the Embassy, seemingly articulated as conditions for avoiding a dispute over the discoverability and relevance of the records. Ewald's counsel represented that Ewald made:

(1) no allegation of a specific mental disorder arising out of the claims she makes against the Embassy, other than the feelings mentioned in the Complaint and no evidence of multiple conditions exacerbated by treatment or the situation, (Tr. at 38, 40);

(2) no emotional distress claim sounding in tort, (*Id.* at 38, 40);

(3) and (5) no plan to offer expert testimony, medical records, or records of any paraprofessional, social professional, or anything else with respect to the mental anguish Ewald claims she suffered as a result of the Embassy to support a claim for emotional distress, (*Id.* at 39–40);

---

[8] This Court acknowledges *Sandoval v. Am. Bldg. Maint. Induss., Inc.*, 267 F.R.D. 257, 266 (D. Minn. 2007) (RHK/JSM), and *Doverspike v. Chang O'Hara's Bistro, Inc.*, Nos. 03-cv-5601 (ADM/AJB), 03-cv-6549 (RHK/AJB), 2004 WL 5852443, at *2 (D. Minn. Jul. 13, 2004), where the courts granted motions to compel because the plaintiffs sought more than nominal damages. A key distinction exists, however, because the plaintiffs in those cases sought emotional distress damages as their sole or primary form of relief. *Sandoval*, 267 F.R.D. at 266 (finding that, despite plaintiffs' assertions that they sought only garden variety damages, they "were seeking more than nominal damages" because "the only source of their damages w[as] their claims of emotional distress"); *Doverspike*, 2004 WL 5852443, at *2 (holding that plaintiffs "primary damages are based on their claims of emotional distress. Therefore, their mental conditions are at the crux of the cases").

(6) no claim that she sought or received any medical treatment or counseling from a professional regarding any alleged emotional distress related to the allegations in the Complaint[9], (*Id.* at 41); and

(7) no claim regarding whether she was prescribed any medication for the emotional distress due to the allegations in the Complaint. (*Id.*).

The Court noted that the fourth request from the Embassy—whether Ewald's mental or physical condition is in controversy—was a legal conclusion that Ewald could not be expected to concede. (*Id.* at 40). These concessions distinguish this case from any of those cited by the Embassy. They also eliminate important factors those courts relied on to find at issue waiver.

Second, the distress Ewald alleges consists of emotional responses like embarrassment, feelings of being threatened and bullied, and perceived ostracism, rejection, humiliation, and reputational harm. (Compl. ¶¶ 5, 37, 41, 42, 45, 53, 54). The Complaint describes feelings that would be normal reactions to the alleged conduct. It makes no assertions of specific symptoms or mental conditions Ewald sustained as a consequence of the Embassy's alleged conduct, or the severity or impact of any of these emotional responses. The description of the nature of her emotional distress in the Complaint distinguish it from a severe mental condition requiring medical treatment, which may otherwise put a party's mental health "at issue."

---

[9]  The representation offered is, admittedly, narrower than that sought by the Embassy. The Court's request and Ewald's subsequent concession was limited to whether Ewald sought or received medical treatment or counseling from a professional regarding any alleged "emotional distress related to the allegations in the complaint," (Tr. at 41), whereas the Embassy's request was broader, inquiring whether Ewald "sought or received any treatment or counseling from a professional regarding any alleged emotional distress," (Letter dated Oct. 17, 2012, Ex. C, Attached to Index of Exhibits); (Def.'s Mem. at 4).

Third, Ewald represented she will not offer medical testimony, medical experts, or records in support of her claim. Nothing requires her to do so to establish emotional distress damages. Rather, a plaintiff's own testimony can suffice to sustain the plaintiff's burden in this regard. *Gillson v. State Dep't of Natural Ress.*, 492 N.W.2d 835, 842 (Minn. Ct. App. 1992) (analyzing emotional distress damages under Minn. Stat. § 363.071 (1990), a predecessor to the Minnesota Human Rights Act, Minn. Stat. § 363A *et seq.*); *see Bradley v. Hubbard Broad., Inc.*, 471 N.W.2d 670, 677 (Minn. Ct. App. 1991) (finding plaintiff's testimony about diminished self-worth and deterioration of relationship with her children supported an award of $10,000 for embarrassment and emotional distress suffered as a result of former employer's reprisal discrimination under Minn. Stat. § 363.071). Ewald must convince a trier of fact she suffered distress because of the alleged conduct; how she chooses to do so is up to her. In this case, however, the Court finds her choice to exclude expert testimony and medical records impacts the burden the Embassy faces to defend against those claims. Given Ewald's strategic decisions and the evidentiary consequences of those decisions, the Court is not persuaded that denying the Embassy's Motion materially affects its ability to defend.

Fourth, even if Ewald wished to offer any medical evidence in the form of expert testimony or documents to support her claim for emotional distress damages, the deadline for identification of such experts passed two weeks before the filing of this Motion. (Order Extending Pretrial Scheduling Order Deadlines) [Doc. No. 82 at 1]. In order to disclose such expert testimony now, she must petition this court for a modification to the scheduling order and establish good cause. (Pretrial Scheduling Order) [Doc. No. 39 at 1]. Her representation that she intends to make no offering of expert testimony, and the passing of the applicable deadline without identification of an expert, acts against a finding in favor of the Embassy. *Compare*

*Walker v. Nw. Airlines Corp.*, No. 00-cv-2604 (MJD/JGL), 2002 WL 32539635, at *4 (D. Minn. Oct. 28, 2002) (granting a motion to compel medical records where plaintiff identified at least three experts, one doctor and two psychologists, to testify at trial "to prove up emotional distress damages"), *with Dochniak v. Dominium Mgmt. Servs., Inc.*, 240 F.R.D. 451, 452 (D. Minn. 2006) (denying a motion to compel medical records where plaintiff made only "garden variety emotional distress" allegations and had not identified experts to testify at trial).

The Embassy relies primarily on two cases to support its assertion of "at issue" waiver: *Schoffstall*, 223 F.3d 818, and *Doverspike v. Chang O'Hara's Bistro, Inc.*, 2004 WL 5852443. The Court finds these cases to be factually distinguishable from the matter at hand. In *Schoffstall*, the plaintiff alleged "extreme emotional distress." 223 F.3d at 822. In *Doverspike*, the court found an "at issue" waiver occurred—despite the fact that plaintiffs did not intend to present medical records or testimony at trial—because the plaintiffs' "primary damages [we]re based on their claims of emotional distress." 2004 WL 5852443, at *2. "Therefore," the court reasoned, the plaintiffs' "mental conditions are at the crux of the cases." *Id.*

Ewald has not made a claim of "extreme emotional distress" like the *Schoffstall*.[10] *Id.* at 822. Nor has she asserted a separate cause of action based on the distress, such as intentional or

---

[10] At the hearing, counsel for the Embassy urged reliance on four cases cited in *Schoffstall*: *Sarko v. Penn-Del Directory Co.*, 170 F.R.D. 127 (E.D. Pa. 1997); *Vann v. Lone Star Steakhouse & Saloon, Inc.*, 967 F. Supp. 346, 349–50 (C.D. Ill. 1997); *EEOC v. Danka Indus., Inc.*, 990 F. Supp. 1138, 1142 (E.D. Mo. 1997); *Jackson v. Chubb Corp.*, 193 F.R.D. 216, 225 (D. N.J. 2000). (Tr. at 14–16). As noted by counsel at the hearing, none of these cases is controlling over this Court. Furthermore, each is distinguishable. In *Sarko*, the court found "at issue" waiver because the plaintiff had to establish clinical depression as an element of her claim under the Americans with Disabilities Act. 170 F.R.D. at 130. In *Vann*, the plaintiff disclosed an expert whom she intended to testify about her psychological responses to the alleged conduct and, at defendant's request, signed a release authorizing her psychotherapist-expert to release her records to the defendants. 967 F. Supp. at 348. In *Danka*, employees claimed their supervisor committed verbal and physical acts of sexual harassment and sought damages for emotional distress resulting from that harassment. 990 F. Supp. at 1140, 1142. As noted at the hearing, the

negligent infliction of emotional distress, which could naturally place her mental condition "at issue," the center of the dispute. Rather, her damages for emotional distress are based on asserted statutory rights to those damages founded in her primary claims for gender discrimination, reprisal, retaliatory harassment claims, and violation of the Minnesota Whistleblower Act claims. (Compl. ¶¶ 76, 85, 100, 112). Ewald's asserted damages flow directly from the negative emotional impact she allegedly sustained in response to the Embassy's purported misconduct. Furthermore, the *Doverspike* plaintiffs' claims stemmed from sex harassment in the workplace, which more naturally connotes psychic trauma and, frequently, treatment and/or counseling. Ewald's "primary damages" are not based on claims of emotional distress and her mental condition is not "the crux of the case." Based on the facts here, the type of emotional distress claimed by Ewald is insufficient to put her mental state "at issue" and the privilege remains intact.

### 2. Whether Confidential Communications Were Disclosed

Regarding the second type of waiver—waiver by disclosing communications—the Court finds that Ewald has not disclosed information that vitiates the privilege. The common law rule of attorney-client privilege extends only to confidential communications from a client to his or her attorney to obtain legal advice. *In re Grand Jury Proceedings (85 Misc. 140)*, 791 F.2d 663, 665 (8th Cir. 1986). "The attorney-client privilege is waved by voluntary disclosure of privileged communications." *PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 992 (8th Cir. 1999) (citation omitted). Applying attorney-client privilege by analogy, the psychotherapist-patient privilege protects only communications made in confidence between a

---

Court finds claims of sexual harassment inherently different and distinct from the claims alleged in this case. (Tr. at 16). Finally, in *Jackson*, the plaintiff alleged far more severe symptoms as a result of her distress. 193 F.R.D. at 226. She also included claims for intentional and negligent infliction of emotional distress, neither of which are present in this case. 193 F.R.D. at 226–27.

13

patient and his or her psychotherapist to obtain mental health advice. Ewald did not expose the content of any psychotherapist-patient communications, reference a particular conversation, or so much as name a treating doctor. At most, her emails suggest that she may have consulted a professional, but they do not describe the substance of that consultation. Therefore, she has not waived the psychotherapist-patient privilege in the emails uncovered by the Embassy. *See Burke v. Messerli & Kramer, P.A.*, 09-cv-160, 2010 WL 2520615, at *3 (D. Minn. Jun. 15, 2010) (finding that communications that do not contain confidential information and only reveal the relationship between the parties, the purpose for which the professional has been engaged, and the steps the professional intends to take in discharging its obligation are not protected by the privilege); *see also Kirschner v. Klemons*, No. 99-cv-4828, 2001 WL 1346008, at *3 n.1 (S.D.N.Y. 2001) (holding that a defendant's "vague references to [privileged] discussions . . . do not sufficiently reveal the substance of his communications . . . so as to effectuate a waiver on that ground"), *superseded on other grounds by Kirschner v. Klemons*, No. 99-cv-4828, 2001 WL 36140906 (S.D.N.Y. 2001) (citation omitted).

### C. Policy Considerations Weigh Against Compelling Discovery of the Mental Health Records

In determining whether a privilege has been waived in this context, many courts also cite "considerations of fairness" or policy in their analysis. *See, e.g.*, *Womack v. Wells Fargo Bank, N.A.*, 275 F.R.D. 571, 573 (D. Minn. 2011) (SRN/AJB). This Court finds no policy justification for opening the door to discovery regarding this personal information about Ewald.

Ewald elected to pursue emotional damages against the Embassy pursuant to her statutory claims. She could have opted to pursue other legal remedies that may have waived any applicable privilege. As the master of the Complaint, however, Ewald assumedly weighed the strategic costs and benefits of bringing specific causes of action. *See BP Chemicals Ltd. v.*

*Jiangsu Sopo Corp.*, 285 F.3d 677, 683–84 (8th Cir. 2002). The method by which a plaintiff defines her causes of action is balanced against a defendant's interest in adequately defending itself. *Womack*, 274 F.R.D. at 573 (citing *Costello, Porter, Hill, Heisterkamp & Bushnell v. Providers Fidelity Life Ins. Co.*, 958 F.2d 836, 838–39 (8th Cir. 1992)). Ewald may have considered the hardships inherent in opening the door to her mental health information and determined the scope of her claims based on that calculation. To the extent the documents may arguably be relevant, this Court is not persuaded that denying the Embassy's Motion to Compel will materially affect its ability to defend itself. As noted above, the date for expert disclosures passed; any emotional damages will be based exclusively on lay testimony, including Ewald's own statements. Moreover, even if records or expert testimony are admitted, the Embassy possesses emails that could be used for impeachment purposes. Thus, for purposes of this Motion, Ewald's privilege and confidentiality interests outweigh the usefulness of the medical records to the Embassy to defend against the emotional damages claims in this case.

### III. CONCLUSION

Accordingly, based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendants' Motion is **DENIED**.
2. The memorandum filed in support and opposition to this Motion [Doc. Nos. 89, 94] be **unsealed**.

Dated: March 12, 2013

*s/ Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge