# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Ellen S. Ewald,                                  Civil No. 11-CV-2116 (SRN/SER)

      Plaintiff,                                        ORDER

v.

Royal Norwegian Embassy,

      Defendant.

---

Thomas E. Marshall, Sheila A. Engelmeier, and Susanne J. Fischer, Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, Minnesota 55402, for Plaintiff

Daniel G. Wilczek, Joel P. Schroeder, and Sean Somermeyer, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant

---

SUSAN RICHARD NELSON, United States District Court Judge

This matter is before the Court on Plaintiff's Objection to the Magistrate Judge's Order of November 21, 2012 Denying the Motion to Amend the Complaint [Doc. No. 79] (the "Order").

The Court's review of decisions of the Magistrate Judge on nondispositive matters is limited to determining whether the Order is clearly erroneous or contrary to law. D. Minn. L. R. 72.2(a). This Court pays great deference to a magistrate judge's determinations. See Reko v. Creative Promotions, Inc., 70 F. Supp.2d 1005, 1007 (D. Minn. 1999) ("The standard of review applicable to an appeal of a magistrate judge's

1

order on a nondispositive issue is extremely deferential."). Plaintiff has established that the basis for Magistrate Judge Rau's ruling on procedural grounds was contrary to law and the Order is therefore reversed on that basis. For the reasons set forth herein, Plaintiff's Objection is sustained and her Motion to Amend is granted in part, and denied in part.

## I.   BACKGROUND

Plaintiff Ellen Ewald filed this employment discrimination lawsuit in July 2011 against her former employer, the Royal Norwegian Embassy. Plaintiff was employed by Defendant from 2008-2011 as a Higher Education and Research Officer at the Honorary Norwegian Consulate General in Minneapolis. (Compl. ¶ 7 [Doc. No. 1].) The claims asserted in Plaintiff's Complaint arise under Minnesota and federal law. (Compl. ¶¶ 60-112 [Doc. No. 1-1].) In September 2012, Plaintiff moved to amend her complaint to add additional claims based on alleged violations of Norwegian law and to conform her Complaint to the evidence. (Pl.'s Mot. to Amend [Doc. No. 43]; Objection at 10 [Doc. No. 79].)

The employment agreement between the parties contains two provisions relevant to the instant dispute. First, a "Choice of Law" clause provides that "[t]he employment relationship shall be governed by the laws of the country in which the Employee is employed." (Contract ¶ 3, Ex. A to Affidavit of Sean R. Somermeyer [Doc. No. 49-1]). Second, in a clause entitled "Other Relevant Rules," the contract states that "[t]he Employee is subject to the Foreign Service Act, the Instructions for the Foreign Service,

and such administrative rules as may apply in the Ministry of Foreign Affairs at any given time."  (Id. ¶ 20.)

Sometime in early summer 2012, Ms. Ewald obtained a letter from the Norwegian Foreign Ministry to the Norwegian Labor Ministry (the "Letter").  (Letter of 12/20/07, Ex. A to Affidavit of Ellen Ewald [Doc. No. 59-1].)  Plaintiff maintains that after receiving the Letter, she became aware of the possibility of pursuing claims under the Norwegian Working Environment Act and the Norwegian Gender Equality Act in this suit.  (See Objection at 8-9 [Doc. No. 79].)  Specifically, the Letter provides as follows:

> In the preliminary work for a new law pertaining to the working environment it has however been stated that the law should also be in effect for Norwegian Service missions. As the law for the working environment has been put to work outside of the Norwegian territory, and as the parties cannot enter into their own agreements that deviate from the law of the working environment's public guidelines, this creates an opportunity for a collision (conflict) between Norwegian and local public legislation.  This type of conflict cannot be resolved through an agreement pertaining to choice of law.

(Letter, Def.'s Translation, § 2.1, Ex. I to Sommermeyer Aff. [Doc. No. 49-9].)[1]

In July and August 2012, the parties participated in a settlement conference and a show-cause hearing related to that conference.  On August 24, 2012, the day of the show-cause hearing, the Court also issued the Scheduling Order.  (Pretrial Scheduling Order at

---

[1]  Both parties have provided translated copies of the Letter.  (Letter, Def.'s Translation [Doc. No. 49-9], Ex. I to Sommermeyer Aff.; Letter, Pl.'s Translation [Doc. No. 59-1], Ex. A to Ewald Aff.).  While the translations are generally similar in overall meaning, they vary in terms of individual word choice.  As Defendant is the nonmoving party in the underlying Motion to Amend, the Court will refer to Defendant's translation of the Letter.

1 [Doc. No. 39].)  Pursuant to the Scheduling Order, the deadline for amending the

pleadings was set for approximately three weeks later, on Saturday, September 15, 2012.

(Id.)

On Wednesday, September 12, 2012, counsel for Ms. Ewald provided a copy of

the Letter to defense counsel and indicated Plaintiff's intention to move to amend the

Complaint, absent Defendant's stipulation to the proposed amendments:

> In the last 2-3 months, we have learned about the [Letter. . .], which states
> that it is the Norwegian Foreign Ministry's legal position that consulate
> employees (such as Ms. Ewald) should be able to pursue all of their rights
> under Norwegian law, in the foreign jurisdiction in which they work.  Prior
> to this time, we had no idea this was the legal position of the Norwegian
> Foreign Ministry.  Accordingly, we believe we have to amend the
> Complaint to attempt to preserve Ms. Ewald's claims under Norwegian law.

(Email of 9/12/12, Ex. B to Somermeyer Aff. [Doc. No. 49-2].)  Plaintiff's counsel noted

the time-sensitivity of the stipulation request, stating, "THIS REQUEST IS TIME

SENSITIVE.  IF WE DO NOT HEAR FROM YOU BY NOON ON FRIDAY,

AGREEING TO STIPULATE TO ALLOW US TO AMEND, WE WILL MOVE THE

COURT ON MONDAY TO ALLOW US TO FILE THE AMENDED COMPLAINT."

(Id.) (emphasis in original).

Defendant's counsel responded on Thursday, September 13, refusing to stipulate to

the proposed Amended Complaint by Plaintiff's next-day deadline.  (Email of 9/13/12,

Ex. F to Somermeyer Aff. [Doc. No. 49-6].)  Defense counsel noted that the Letter was

not fully translated.  Defense counsel further identified other reasons for his

unwillingness to stipulate to the proposed amendments, including the choice of law

provision in Ms. Ewald's employment contract.  (Id.)  Based on that provision,

Defendant believed that any amendment to add claims under foreign laws would be futile.

(Id.)  Defense counsel also noted his "lack of familiarity with the Norwegian statutes on

which the new claims would be based."  (Id.)  If, however, Plaintiff required an extension

of time in which to file her motion to amend, Defendant stated that it would not oppose a

reasonable extension.  (Id.)

On Monday, September 17, 2012, Plaintiff brought the underlying Motion to

Amend the Complaint [Doc. No. 43].  Plaintiff sought to add the Norwegian law claims

under the Working Environment Act and the Gender Equality Act as well as allegations

regarding additional events that occurred after the commencement of the litigation.  (Pl.'s

Mem. Supp. Mot. to Amend at 5 [Doc. No. 44]; Proposed Am. Compl. ¶¶ 59; 83; 113-

123; 124-132, Ex. B to Affidavit of Sheila Engelmeier [Doc. No. 45-1].)  Defendant

opposed Plaintiff's motion on the merits.  (Def's Opp'n Mem. [Doc. No. 48].)  Regarding

the timing of the filing of Plaintiff's Motion to Amend, Defendant merely observed,

"Because September 15, 2012 fell on a Saturday, the deadline to amend became Monday,

September 17, 2012." (Id. at 3, n.2) (citing Fed. R. Civ. P. 6(a)(1)(C)).

In the Order, Magistrate Judge Rau declined to consider Plaintiff's Motion to

Amend on the merits, finding that under Federal Rule of Civil Procedure 6(a), her filing

was untimely.  (Order at 5-6 [Doc. No. 69].)  In addition, Magistrate Judge Rau found

that Plaintiff had failed to establish good cause under Rule 16(b) for any request to

modify the September 15 deadline in the Scheduling Order.   Magistrate Judge Rau

therefore denied Plaintiff's Motion to Amend.

## II.     DISCUSSION

### A.     Timeliness of Motion

Rule 6(a)(1) provides for the method of computing time when a period is stated in days or a longer unit.  Fed. R. Civ. P. 6(a)(1).  When a time period is stated in days or a longer unit, "if the last day falls on a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or a legal holiday."  Fed. R. Civ. P. 6(a)(1)(C).  The Advisory Committee Notes to the 2009 Amendments to Rule 6 provide that the time-computation provisions of subdivision (a) are not applicable "when a fixed time to act is set."  Advisory Comm. Notes 2009, Fed. R. Civ. P. 6(a).  "If, for example, the date for filing is 'no later than November 1, 2007,' subdivision (a) does not govern."  Id.

Although the Magistrate Judge acknowledged that both Plaintiff and Defendant assumed that the provisions of Rule 6(a) applied here, which would result in an extension until Monday, September 17, 2012, he nonetheless strictly interpreted the requirements of Rule 6 and considered Plaintiff's motion untimely.  (Order at 6 [Doc. No. 69].)  The facts here, however, do not support such a strict interpretation and draconian result.  The plain language of Rule 6 does not speak to "fixed dates" or "dates certain."  Rather, the Rule refers to two methods of computing time: (1) in days, under Rule 6(a)(1); or (2) in hours, under Rule 6(a)(2).  The fact that counsel for both parties believed that a Saturday, September 15 deadline triggered Rule 6(a)(1)(C), such that the deadline would continue

to run until the next business day, is entirely understandable.  Only the Advisory

Committee Notes to the 2009 Amendments to Rule 6 contain the details about the Rule's

non-application to situations in which the court has established a specific calendar day as

a deadline.  Adhering to a strict reading of the Rule based on the Advisory Committee

Notes seems particularly inequitable and, in this case, prejudicial, as the Court itself set

the Saturday deadline.  Moreover, the magistrate judge based his ruling on this procedural

issue, without providing an opportunity for additional briefing or argument.

Although the 2009 Advisory Committee Notes and cases cited therein adopt a

strict interpretation of Rule 6, legal commentators and some courts have permitted

application of Rule 6 to a specified deadline date as an exercise in courts' broad

discretionary powers to manage their own affairs:

> Rule 6(a) also can be used for the computation of time in the context of a
> specified date. Therefore, if the district court orders certain requests and
> motions to be filed by a specified date and the date is actually a Saturday,
> Sunday, or legal holiday, the court can extend the deadline to the next day
> that is not a weekend day or a legal holiday. This is consistent with the
> recognition that district courts should possess broad discretion in managing
> their calendars.

4B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1162 (3d

ed. 2012).  Acknowledging that in the past, courts reached different conclusions about

whether the "last day" rule applied when the court fixed a specific due date, another

commentator has observed that the Advisory Committee's Notes to the 2009

Amendments resolve the question: "the 'last day' rule only applies to time periods that

are 'computed' under Rule 6(a); it does not apply to fixed-date deadlines."  Steven S.

7

Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 6(a) Practice Commentary (2013 ed.) (citations omitted).  Nevertheless, "[w]hat this means is that the fixed-day deadline is not <u>automatically</u> extended to the next 'countable' day.  But that does not preclude the court from extending the deadline in its discretion."  (<u>Id.</u>) (citing <u>Scanlon v. Greenberg Traurig, LLP</u>, 778 F. Supp.2d 56, 58-59 (D. D.C. 2011)).

Quoting the passage from Wright & Miller above, the court in <u>Scanlon</u> exercised its discretion and considered a motion filed on a Monday, following a Sunday deadline, as timely.  778 F. Supp.2d at 58-59.  Likewise, in <u>Stone v. Midfirst Bank</u>, No. CV-09-01218 PHX-ROS, 2010 WL 1740830, at *1 (D. Ariz. Apr. 29, 2010), the court considered an amended complaint as timely-filed when the date-specific deadline fell on a legal holiday and the amended complaint was filed the following day.  The court reasoned, "Here, nothing would be gained by requiring [the plaintiff] to file a formal request that its second amended complaint be accepted.  Instead, in an exercise of its discretion, the Court will deem [the plaintiff's] filing timely and proceed to the merits."  <u>Id.</u>  While legal commentators recognize "some disagreement regarding this practice," Wright & Miller, <u>supra §</u> 1162, these cases and legal commentary provide support for the conclusion that judicial discretion may be invoked in determining the application of Rule 6.  To the extent that the Order did not consider the possible exercise of such discretion, it is contrary to law.  Given that both parties assumed the filing deadline fell on Monday, September 17, and because Plaintiff filed the Motion to Amend on that date – the first business day after the September 15 deadline –  the Court, in its discretion, will deem Plaintiff's motion

8

timely and address the merits.   When considering a motion to amend that is timely filed,

Rule 15 provides that "[t]he court should freely give leave [to amend] when justice so

requires." Fed. R. Civ. P. 15(a)(2).

Moreover, even if the Court lacked discretion to consider Plaintiff's motion as

timely, Plaintiff has demonstrated good cause under Rule 16(b) to permit a modification

to the scheduling order.   "[T]he moving party's diligence in attempting to meet the case

management order's requirements" is "[t]he primary measure of Rule 16's 'good cause'

standard." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001) (citation omitted)

(quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992)).   A

finding of prejudice to the opposing party and other factors may also affect a court's

decision on the issue of good cause.  Id.

Because the parties assumed that Plaintiff's filing was timely, they did not present

any legal argument regarding Rule 6 or Rule 16 at the hearing on Plaintiff's Motion to

Amend.  (Tr. of 10/12/12 Hearing [Doc. No. 71].)   Plaintiff's counsel did respond to the

magistrate judge's questions concerning the timeliness of Plaintiff's motion.  (Id. at 4-5.)

In the Order, Magistrate Judge Rau identified two possible bases for a good cause

argument under Rule 16: (1) that Plaintiff's counsel needed two to three months to

research and evaluate the Norwegian law claims; and (2) that Plaintiff's counsel

inadvertently misinterpreted Rule 6.  (Order at 8 [Doc. No. 69].)

While the magistrate judge rejected these bases for showing good cause, this Court

finds Plaintiff has established good cause.  The need for time in which to analyze whether

Plaintiff could establish claims under Norwegian law cannot be underestimated, as it involves translation time, the intersection of foreign law and United States law, and consultation with a number of documents in this case, among other things.  In addition, between early summer 2012, when Plaintiff first learned of the possible application of Norwegian law,  and the September 17, 2012 filing of the Motion to Amend, the parties were preparing for and engaged in settlement negotiations.  Following the settlement conference, the parties prepared for and participated in a show-cause hearing ordered by Magistrate Judge Rau.

As to the other identified reason for the delay in moving to amend, the magistrate judge found that any "inadvertent misapplication or misreading of Rule 6 by Ewald's counsel" did not "constitute good cause to permit modification of the scheduling order." (Order at 9 [Doc. No. 69].)  Magistrate Judge Rau, citing OPS Am., Inc. v. Safariland, LLC, No. 11-CV-567 (JNE/TNL), 2012 WL 567029, at *1-2 (D. Minn. Feb. 21, 2012), noted that in that case, this Court denied a motion to amend a pretrial scheduling order for failure to establish good cause where the moving party inadvertently and mistakenly failed to comply with the scheduling order and the Rules.  (Id.)  In OPS, while the failure to comply with the scheduling order for dispositive motions was the result of inadvertent calendaring, the time period in question was one of 42 days, and opposing counsel had timely filed its dispositive motion.  2012 WL 567029, at *1-2.  Here, however, defense counsel – just like Plaintiff's counsel – believed that the Court's Saturday deadline meant that any motions to amend were to be filed by the following Monday.  Operating under

that assumption, Plaintiff diligently communicated with Defendant in an effort to obtain a

stipulation to the proposed amendments.   (Email of 9/12/12, Ex. B to Sommermeyer Aff.

[Doc. No. 49-2].)  Defendant identified several bases for its refusal to stipulate, but also

indicated that it would not oppose Plaintiff's request for an extension of time if Plaintiff

were to seek an extension.  (Email of 9/13/12, Ex. F to Sommermeyer Aff. [Doc. No. 49-

6].)  While Plaintiff did not seek such an extension, there is no showing here that

Plaintiff's "delay" was occasioned by any improper or intentional purpose.  Rather,

everything in the record is to the contrary – Plaintiff's counsel diligently attempted to

meet the Scheduling Order's requirements.  See Bradford, 249 F.3d at 809.

The Court also considers other factors in a Rule 16 analysis, including prejudice to

the opposing party.  Defendant argues that permitting Plaintiff's motion to amend to add

Norwegian law claims will result in undue prejudice in the form of delay and additional

expense.  (Def.'s Opp'n Mem. at 13-14 [Doc. No. 48].)   As a threshold matter, "it is not

uncommon for U.S. courts to apply foreign law. . . ."  American Pan Co. v. Lockwood

Mfg., Inc., No. C-3-06-197, 2006 WL 2792175, at *8 (S.D. Ohio Sept. 26, 2006) (ruling

that a breach of contract claim would be adjudicated pursuant to the applicable laws of

Ontario or Canada).  The Eighth Circuit has observed that "[f]ederal courts are quite

capable of applying foreign law when required to do so," Lehman v. Humphrey Cayman,

Ltd., 713 F.2d 339, 345 (8th Cir. 1983), and that courts "'must guard against an excessive

reluctance to undertake the task of deciding foreign law, a chore federal courts must often

perform.'" Id. (citations omitted).  Many United States courts, in a variety of legal

contexts, have applied foreign law, including Norwegian law.  See Furnes v. Reeves, 362

F.3d 702, 712-16,  (11th Cir. 2004) (applying Norwegian law in an international child

custody dispute).[2]  Moreover, our Federal Rules contemplate that United States federal

courts may sometimes be required to determine questions of foreign law.  See Fed. R.

Civ. P. 44.1.

Defendant contends that determining the meaning of foreign law will be both

expensive and time-consuming, and therefore prejudicial.  (Def.'s Opp'n Mem. at 13-14

[Doc. No. 48].)   As Defendant observes, paid expert testimony is the most common

method of establishing foreign law in United States court proceedings.  (Id. at 13) (citing

Matthew J. Wilson, Demystifying the Determination of Foreign Law in U.S. Courts:

Opening the Door to Greater Global Understanding, 46 Wake Forest L. Rev. 887, 904-

909 (2011)).  However, the expense of obtaining experts in Norwegian law will not be an

expense unique to Defendant – both sides will require such expertise.  As with many

claims in different legal contexts, parties are frequently required to obtain expert

opinions.  There is nothing inherently prejudicial about asserting claims for which expert

---

[2]  See also, e.g., Sunstar, Inc. v. Alberto-Culver Co., 586 F.3d 487 (7th Cir. 2009)
(applying Japanese law to trademark dispute); Lesley v. Spike TV, 241 Fed. App'x 357,
358 (9th Cir. 2007) (applying Japanese law to breach of contract claim and United States
law to copyright claim); Servo Kinetics, Inc. v. Tokyo Precision Instruments Co. Ltd.,
475 F.3d 783, 790-98 (6th Cir. 2007) (applying Japanese law to breach of contract claim
and Michigan law to other claims); Medline Indus. Inc. v. Maersk Med. Ltd., 230 F.
Supp.2d 857, 861-63 (N.D. Ill. 2002) (applying English law to contract and fraud claims
and Illinois law to tortious interference claim); Curtis v. Harry Winston, Inc., 653 F.
Supp. 1504, 1508-1510 (S.D.N.Y. 1987) (applying Venezuelan law to labor law claim
and New York law to contract claim).

testimony is required.   As to whether permitting these claims will unduly delay the

proceedings, any delay will likely be minimal.  At the hearing on the Motion to Amend,

Plaintiff's counsel did not believe that the proposed amendments would necessitate a

change in the Scheduling Order.[3]  (Tr. of 10/12/12 at 9 [Doc. No.  71].)   While some

additional expert discovery may be necessary, it seems unlikely that these amendments

will require significant, additional fact discovery.  Under these circumstances, the Court

finds that Plaintiff has established good cause under Rule 16 and on this alternative basis,

the Court also considers Plaintiff's Motion to Amend on the merits.

### B.      Futility of Amendment

Defendant argues that Plaintiff's Motion to Amend should be denied on grounds of

futility.   In reviewing proposed amendments to which a party objects based on futility,

the Court considers whether the "'claims created by the amendment would not withstand

a Motion to Dismiss for failure to state a claim upon which relief can be granted.'"

Birchwood Labs., Inc. v. Battenfeld Technologies, Inc., 762 F. Supp.2d 1152, 1156 (D.

Minn. 2011) (quoting DeRoche v. All Am. Bottling Corp., 38 F. Supp.2d 1102, 1106 (D.

Minn. 1998)).   In order to survive dismissal under Rule 12(b)(6), "a complaint must

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[3]  Since the hearing on the Motion to Amend, the parties stipulated to an extension
of deadlines in the Scheduling Order, which Magistrate Judge Rau considered.
(Stipulation [Doc. No. 101].)  Although the magistrate judge did not adopt the parties'
requested extensions, he did extend the applicable deadlines.  (Order of 5/23/13 [Doc. No.
102].)

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Although a complaint is not required to

contain detailed factual allegations, "[a] pleading that offers 'labels and conclusions' or 'a

formulaic recitation of the elements of a cause of action will not do.'" Iqbal, 556 U.S. at

678 (quoting Twombly, 550 U.S. at 555).  The plausibility standard requires a plaintiff to

show at the pleading stage that success on the merits is more than a "sheer possibility."

Braden v. Wal–Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009) (citation omitted).  It

is not, however, a "probability requirement."  Id. (citation omitted).  Thus, "a

well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of

the facts is improbable, and 'that a recovery is very remote and unlikely.'" Twombly,

550 U.S. at 556 (citation omitted).

　　　"A claim has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).  The

court must take the plaintiff's factual allegations as true and grant all reasonable

inferences in favor of the plaintiff.   Crooks v. Lynch, 557 F.3d 846, 848 (8th Cir. 2009).

This tenet does not apply, however, to legal conclusions or "formulaic recitation of the

elements of a cause of action;" such allegations may properly be set aside. Iqbal, 556

U.S. at 678 (quoting Twombly, 550 U.S. at 555).

　　　Evaluation of a complaint upon a motion to dismiss is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." Iqbal,

556 U.S. at 679 (citation omitted).  A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6).  <u>Porous Media Corp. v. Pall Corp.</u>, 186 F.3d 1077, 1079 (8th Cir. 1999).  Here, the Court considers the Proposed Amended Complaint, as well as the following documents, which may be considered materials embraced by the complaint, as they are referenced in the Proposed Amended Complaint:  the two Norwegian statutes in question, as translated in English; the employment agreement; and the Letter, as translated in English.[4]

Defendant raises several arguments in support of its position that Plaintiff's proposed amendments are futile.  First, Defendant argues that any amendments to add claims under Norwegian law are futile because foreign-law claims are precluded by the choice-of-law provision in the employment contract.  (Def.'s Opp'n Mem. at 1 [Doc. No. 48].)  Moreover, Defendant argues that because Plaintiff relied on this provision in order to invoke this Court's jurisdiction over Defendant, "she cannot rely on the choice-of-law provision when it is to her advantage, and ignore it when it isn't."  (<u>Id.</u> at 2.)  Second, Defendant argues that by their own terms, the Norwegian statutes on which Plaintiff seeks to assert claims – the Working Environment Act and the Gender Equality Act – do not provide her with causes of action.   Third, Defendant argues that Plaintiff cannot base her

---

[4] As with the Letter, the Court relies on the English translations of the Norwegian statutes provided by Defendant.  (Gender Equality Act, Ex. G to Sommermeyer Aff. [Doc. No. 49-7]; Working Environment Act, Ex. H to Sommermeyer Aff. [Doc. No. 49-8].)

Norwegian law claims upon the Letter, as it lacks any force of law.  (Id. at 11-13.)

Arguing that any amendments under Norwegian law would therefore be futile, Defendant

opposes Plaintiff's Motion to Amend the Complaint and seeks its denial.

As to the first point, the Eighth Circuit has held that, combined with other factors,

a choice-of-law provision is an important factor in determining whether the defendant

purposely availed itself in the forum state.  Wessels, Arnold & Henderson v. Nat'l Med.

Waste, Inc., 65 F.3d 1427, 1434 (8th Cir. 1995).   However, the fact that Plaintiff relied

on the choice of law provision in asserting jurisdiction over Defendant is an entirely

separate legal matter from whether that same provision precludes Plaintiff from asserting

certain claims.   Plaintiff's earlier reliance on the choice-of-law provision does not bar her

from seeking to amend her Complaint to add the claims at issue.

Defendant is correct that the employment agreement provides that the parties'

relationship is governed by United States' law, i.e., "the laws of the country in which the

Employee is employed."  (Contract § 3, Ex. A to Somermeyer Aff. [Doc. No. 49-1].)

Minnesota courts generally recognize choice-of-law provisions absent evidence of bad

faith or the intention to evade the law.  Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.,

111 F.3d 1386, 1392 (8th Cir. 1997).  However, the contract also states that the employee

"is subject to the Foreign Service Act, the Instructions for the Foreign Service, and such

administrative rules as may apply in the Ministry of Foreign Affairs."  (Contract § 20, Ex.

A to Somermeyer Aff. [Doc. No. 49-1].)   The employment contract therefore

contemplates the application of certain Norwegian laws and rules, as well the laws of the

16

country of employment.

The Instructions for the Foreign Service, in a translation provided by Plaintiff, state that the Working Environment Act "shall be applied to locally employed personnel provided that the provisions are not in conflict with local acts or regulations." (Translated Instructions at 1, § 1, Ex. A to Affidavit of Thomas E. Marshall [Doc. No. 79-2].) In her proposed amendments, Plaintiff alleges that the Working Environment law does not conflict with either Minnesota law or the federal law of the United States. (Proposed Am. Compl. ¶ 121, Ex. B to Engelmeier Aff. [Doc. No. 45-1].) Defendant has not identified any Minnesota or United States federal legal authority with which the Working Environment Act conflicts. Rather, Defendant responds that the Instructions for the Foreign Service, in addition to the Letter, do not carry the force of law. (Letter of 10/18/12 at 1 [Doc. No. 66]; Def.'s Opp'n Mem. at 11-12 [Doc. No. 48].) The Court agrees with Defendant that the Letter does not confer legal authority upon which a claim may be based. The Court therefore considers whether Plaintiff has alleged plausible claims under the terms of the Working Environment Act and the General Equality Act.

### 1.      Working Environment Act Claim

The Norwegian Working Environment Act states that "[t]his Act may not be departed from by agreement to the detriment of the employee unless this is expressly provided." (Working Environment Act, § 1-9 at 12, Ex. I to Sommermeyer Aff.) The undersigned finds the term "expressly" to mean "explicitly," "particularly," or "specifically." Merriam-Webster Online Dictionary (visited June 10, 2013),

17

http://www.merriam-webster.com/dictionary/expressly. Based on the record before the Court, there is no evidence that Ms. Ewald "expressly" contracted away her rights under the Working Environment Act. Defendant's inferences based on the choice-of-law provision are not enough, at this stage, to prevent an amendment to assert a Working Environment Act claim. Again, the Court's focus is on the allegations in the Complaint and whether they are sufficiently detailed to support entitlement to the requested relief. The Working Environment Act confers certain rights and also provides that those rights cannot be waived or overridden unless expressly provided. (Working Environment Act, § 1-9 at 12, Ex. I to Somermeyer Aff.) Such provisions can be found in certain laws in this country, including, for example, the Minnesota Franchise Act, which contains a non-waiver provision that overrides contractual choice-of-law provisions with respect to Minnesota residents or corporations operating franchises in Minnesota. Minn. Stat. § 80C.21. Plaintiff's proposed amended claim adequately states a claim for relief under the Working Environment Act.

Defendant also argues that the Working Environment Act requires actions based on gender discrimination to be brought under the Gender Equality Act, citing Section 13-1 of the Working Environment Act. (Def.'s Opp'n Mem. at 11, n.9 [Doc. No. 48].) While Defendant correctly reads Section 13-1 of the Working Environment Act, Plaintiff's proposed claim focuses on provisions of the Working Environment Act that address a healthy working situation and the prohibition of harassing behavior in general. (Proposed Am. Compl. ¶¶ 117-123, Ex. Ex. B to Engelmeier Aff. [Doc. No. 45-1].)

Plaintiff's allegations in her proposed Working Environment Claim do not appear to be based on gender discrimination.  For example, Plaintiff alleges, "Section 1-1(a) of the Working Environment Act includes, as its purpose, ensuring a healthy and meaningful working situation for employees, that affords full safety from harmful physical and mental influences."  (Id. ¶ 117.)   Plaintiff further cites Section 4-3 of the Act which "contains an anti-bullying provision, stating that employees shall not be subjected to harassment or other improper conduct and that employees shall be protected against violence, threats and undesirable strain as a result of contact with other persons."  (Id. ¶ 120.)  Plaintiff alleges that by its conduct, Defendant violated these provisions.  (Id. at ¶ 122.)

It may be that Plaintiff's Working Environment Act claim will fail to withstand summary judgment, but focusing on the pleadings, Plaintiff has asserted a plausible Working Environment claim.  Her motion to amend this claim is therefore granted.

### 2.    Gender Equality Act Claim

Plaintiff alleges that the Norwegian Gender Equality Act provides for the active promotion of gender equity in employment.   (Id. ¶ 126) (quoting § 1 of the Gender Equality Act.)  As alleged in Ewald's Proposed Amended Complaint, the Act states that women and men "will be given equal opportunities in education, employment and cultural and professional advancement" and "equal pay for the same work or work of equal value." (Id. ¶¶ 125; 129.)   The Gender Equality Act also prohibits "direct or indirect differential treatment of women and men."  (Id.)

19

Although not addressed in the Proposed Amended Complaint, the geographic

scope of the Gender Equality Act is proscribed as follows:

> This Act shall apply in Norway, on Svalbard and on board Norwegian
> vessels and aircraft in areas that are not subject to the sovereign right of any
> state.  The Act shall also apply to activities on installations and devices on
> the Norwegian part of the Continental Shelf.
>
> The King may make exceptions to the provisions of the first paragraph and
> make supplementary provisions regarding the extent of the Act.  Before
> such a decision is made, the opinion of the Board of Appeals shall be
> obtained.

(Gender Equality Act, § 20, Ex. G to Somermeyer Aff. [Doc. No. 49-7].)  Because Ewald

worked in the United States, and not "in Norway," the Gender Equality Act does not

apply to her.[5]  In addition, although the Letter is not legal authority for a claim, the Letter

discusses only whether the Working Environment Act applies to employees at Norwegian

Foreign Service Stations – it does not address the Gender Equality Act.  (Letter at 1-2,

Ex. I to Somermeyer Aff. [Doc. No. 49-9].)  Similarly, as represented by Plaintiff, and in

translation, the Instructions for the Foreign Service appear to only address whether the

Working Environment Act, and not the Gender Equality Act, applies to local employees.

(Translated Instructions at 1, § 1, Ex. A to Marshall Aff. [Doc. No. 79-2].)   While the

Court's determination is based on the language of the Gender Equality Act itself, the

Court finds additional support for its ruling in the Letter and the Instructions for the

---

[5] Defendant correctly notes that it is not uncommon for statutes to contain
territorial limits.  (Def.'s Opp'n Mem. at 9, n.6 [Doc. No. 48]) (citing the Minnesota
Human Rights Act, Minn. Stat. § 363A.03, subd. 15, which protects employees residing
or working in Minnesota).

Foreign Service – both of which make no reference to the Gender Equality Act.

Accordingly, the Court finds that any such claim under this Act would be futile.

Plaintiff's Motion to Amend to assert a claim under the Norwegian Gender Equality Act

is therefore denied.

### 3.    Miscellaneous Amendments

Finally, Plaintiff seeks permission to amend the Complaint to conform the factual

allegations to the current state of discovery.  This request is granted.  The Court notes that

Plaintiff should also take this opportunity to revise the Proposed Amended Complaint,

including the caption, to reflect the dismissal of Mr. Gandrud from this action.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.    Plaintiff's Objection to the Magistrate Judge's Order of November 21, 2012

Denying the Motion to Amend the Complaint [Doc. No. 79] (the "Order")

is **SUSTAINED**;

2.    The Order of November 21, 2012 [Doc. No. 69] is **REVERSED**; and

3.    Plaintiff's Motion to Amend the Complaint [Doc. No. 43] is **GRANTED in**

**part**, and **DENIED in part**, consistent with this Order.


Dated:    June 12, 2013

                              s/Susan Richard Nelson
                              SUSAN RICHARD NELSON
                              United States District Court Judge