**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Ellen S. Ewald, | Civil No. 11-cv-02116 (SRN/SER) |
| Plaintiff, | |
| vs. | **PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL DISCOVERY** |
| Royal Norwegian Embassy, | |
| Defendants. | |

---

## INTRODUCTION

Plaintiff Ellen S. Ewald ("Ms. Ewald"), by and through her attorneys, hereby respectfully submits this Memorandum in Support of her Motion to Compel Defendant Royal Norwegian Embassy ("Defendant" or the "Embassy") to fully respond to Plaintiff's discovery requests.  This motion is based on Defendant's failure to provide meaningful and usable discovery.  In sum, Defendant produced approximately 88,994 pages of electronic documents in an unusable electronic format, failed to designate documents as responsive to specific discovery requests, failed to produce text messages, failed to make Plaintiff's laptops and phone available to her counsel for inspection, failed to produce other responsive documents and things, redacted information believed to be discoverable, claims privilege applies to non-privileged documents, failed to provide information about its methods of document preservation and related issues, and failed to provide meaningful answers to some interrogatories.

Plaintiff's counsel has conferred with defense counsel to attempt to resolve the discovery problems between the parties without Court intervention in an effort to secure the information and documents, thereby meeting her obligations under Minn. R. Civ. P. 37.01.  *See* the Meet and Confer Statement (DOC. NO. 108).  Counsel have exchanged written correspondence, met with the parties' IT/forensic personnel regarding the electronically-stored information ("ESI") issues, had several informal discussions on discovery issues including on July 26th and concluded a formal meet and confer on July 29, 2013, the first date Defendant's counsel was available to meet and confer on or after July 16.  (Engelmeier Aff. ¶ 54).

Despite these efforts, Defendant refuses to provide answers or documents responsive to the discovery requests, refuses to produce text messages, refuses to remove redactions, refuses to produce Plaintiff's work laptops and phone for inspection; refuses to produce other custodian's phone records for inspection, refuses to designate documents as responsive to specific document requests, refuses to produce documents related to wage statistics and others' complaints of unequal pay and gender discrimination, and refuses to produce studies and statistics regarding wages regarding Embassy employees in the United States and surveys regarding bullying among those -employed by the Foreign Ministry.

## BACKGROUND

Plaintiff served its First Set of Interrogatories and First Request for Productions of Documents on August 2, 2012.  (Engelmeier Aff., Exs. D, E).  On October 5, 2012, Defendant responded to the interrogatories and made objections and limited responses to

the document requests.  Defendant first produced 5,796 pages of documents on December

3, 2012, and subsequently made seven additional "rolling" productions from December 7,

2012, to February 18, 2013, and a recent production of nine pages of handwritten notes

on July 8, 2013.  Defendant produced a total of approximately 88,994 pages of

documents.  Defendant has also agreed to produce an additional load file to provide some

of the metadata that was missing from prior productions, which additional load files have

not yet been produced.  (Engelmeier Aff. ¶ 54).  Plaintiff also served Requests for

Admission, Set 1 on August 2, 2012 and Set 2 on January 3, 2013.  (Engelmeier Aff.,

Exs. F, I).

On June 3, 2013, Plaintiff served her Second Request for Production of

Documents and Second Set of Interrogatories.   (Engelmeier Aff., Ex. K).   These

additional discovery requests focused on the control and form of the ESI documents

Defendant's produced after Plaintiff recently discovered significant issues with the ESI

documents produced.  Given the issues with the production (e.g., missing metadata, the

fact that the information was not produced as it was kept in the ordinary course of

business), Plaintiff should be entitled to conduct the appropriate analysis of the phones

and Plaintiff's laptop(s), which it has requested in discovery.

Plaintiff's discovery requests sought information relevant to this lawsuit within the

Embassy's care, custody and control.   The information and documents requested from

Defendant, including communications between Embassy leadership and with others,

about Ms. Ewald, and her complaints about unequal pay, benefits, retaliation, responses

to her complaints, mistreatment of her after her complaints, and decisions regarding her

continued employment, go to the heart of her claims.  The refusal to produce such

information and documents prejudices Plaintiff in her ability to fully prosecute her action.

## ARGUMENT

### I.     Legal Standard for Relevant Discovery.

A party may "obtain discovery regarding any nonprivileged matter that is relevant

to any party's claim or defense. . . Fed.R.Civ.Pr. 26(b)(1).  "For good cause, the court

may order discovery of any matter relevant to the subject matter involved in the action."

Fed.R.Civ.Pr. 26(b)(1).  Discovery under Rule 26 is broad.  "Relevant information need

not be admissible at the trial if the discovery appears reasonably calculated to lead to the

discovery of admissible evidence."  Fed.R.Civ.Pr. 26(b)(1); s*ee also Oppenheimer Fund,*

*Inc. v. Sanders*, 437 U.S. 340-350-51 (1978).  Rule 26 contemplates a liberal scope of

discovery regarding any non-privileged matter that is relevant.  *See Edeh v. Equifax*

*Information Services, LLC,* 2013 WL 1799006 (D. Minn.) *(*citing *Donnelly v. NCO Fin.*

*Sys., Inc.,* 263 F.R.D. 500, 5005 (N.D. Ill. 2009).

### II.    Defendant Has Not Produced Responsive Answers to Interrogatories Requesting Information Related to Communications About Plaintiff.

In Plaintiff's discovery (both interrogatories and document requests), she asked

Defendant to identify and describe in detail all communications related to Ms. Ewald's

employment.  *See* Interrog. Nos.  3, 13, and Doc. Req. Nos. 8, 19.  (Engelmeier Aff., Exs.

D, E).  Defendant has not provided Answers to Interrogatories that identify and describe

such communications.[1]  *See* Defendant's Answers and Responses to these discovery

requests.  Instead, Defendant made general objections that the requests were vague,

overbroad, unduly burdensome and sought information that is not relevant or reasonably

calculated to lead to the discovery of admissible evidence.  *See* Defendant's Answers

and Responses.  (Engelmeier Aff., Exs. G, H).

Definition No. 4 of Plaintiff's First Set of Interrogatories provides as follows:

"Document" includes:

a.     All communications, letters, telegrams, cablegrams, correspondence, facsimiles, memoranda, records, reports, notes, drafts, proposals, minutes, affidavits, books, papers, magazines, newspaper articles, logs, calendars, diaries, journals, lists, brochures, pamphlets, literature, advertising, computations, tabulations, computer printouts, bills, statements, invoices, vouchers, bills of lading, schedules, purchase orders, contracts, agreements, books of original entry, accounts, checks, tape-recordings, Photostats, motion pictures, slides, photographs, sketches, drawings, charts, graphs, video recordings, transcripts, computer or other electronic or digital recordings, computer tapes or disks, e-mails, and other similar objects, or any other written, printed, recorded, or video matter or tangible thing on which or by which any words or phrases are affixed, displayed, recorded, or conveyed (e.g., post-it type notes);

b.     Copies of such documents upon which any initialing, notation, or handwriting of any kind not appearing on the original;

c.     Such documents, whether they were prepared by you, or your agents, employees, consultants, representatives, or attorneys, for their own use, your use, or for transmittal in any manner, or were received by any means by you; and

---

[1] Interrogatory Definition No. 5:  "Communication" includes all correspondence, letters, telephone or other conversations, electronic or video mailings, facsimile, e-mails and other transmissions, and all other written or oral conveyances of documents or information between or among persons.

d.        Such documents, wherever located, whether in the files of any agent, employee, consultant, representative, or attorney of yours, or in any file in your possession or direction or control.

Plaintiff's Interrogatory No. 3 asked Defendant to:

State the names, addresses, and employment of all persons with whom you have had conversations or communications regarding any of the matters or issues raised or alleged in your answer to any claim in this action as well as any counterclaims, and describe in detail the dates, places, and substance of all such conversations or communications.

Defendant provided no "answer" to this interrogatory, and objected to this Interrogatory as "overbroad and unduly burdensome," and "because it improperly inquires into the mental impressions, conclusions, and legal theories of counsel and because it seeks information protected by the attorney-client privilege or the work-product doctrine." (Engelmeier Aff, Ex. G).

Plaintiff's Interrogatory No. 13 asked Defendant to:

Identify all persons with whom Plaintiff's hiring, including but not limited to compensation and benefits, was discussed and the content of each conversation or communication.   Provide documentation, if any, for all communications.

Defendant responded with objections, and answered by referring "to its answers to Plaintiff's other interrogatories and documents produced in response to Plaintiff's document requests."  (Engelmeier Aff., Ex. G).

There are no interrogatory answers specifically describing all the relevant communications about Ms. Ewald's application process and employment.  Moreover, although a number of documents refer to conversations about Ms. Ewald, Plaintiff has not found documents that are responsive to the specific request in Document Request No.

8 that requested "documents concerning any communication relating to Plaintiff's

employment by or between any current or former employee. . ."

Similarly, Plaintiff has not found responsive documents to Request No. 19 for

"….notes of any telephone conversations Defendant or its personnel might have had with

such individuals, cell phone and/or other telephone records."  Defendant responded to

Request No. 19 as follows:

> OBJECTIONS:  The embassy objects to this request to the extent it seeks
> information protected by the attorney-client privilege or the work-product
> doctrine.  The Embassy objects to this request because it is vague, overly
> broad, and unduly burdensome.

(Engelmeier Aff., Ex. H).

Other than its objections, the Embassy did not respond to this request, and has not

identified any responsive documents if they are in its productions.  Plaintiff has not found

any notes, and this seems particularly curious since it is a common practice in the Foreign

Service to take notes on meetings and circulate them for comment to the meeting

attendees.  (Ewald Declaration ¶ 9).  Similarly, Ms. Ewald recalls that, in many of the

meetings involving Ms. Ewald and others at the Embassy, others in the meetings took

notes at the time of the meetings.  *Id*.  On May 31, 2013, Plaintiff attempted to narrow the

scope of the inquiry by requesting documents relating to specific information, including:

- seeking communications "relating to Ms. Ewald's employment, such as why
  key people concluded that she was a 'bad hire' who should be 'shown the
  door.'"
- noting RNE 11818-11826 suggest there are "potentially missing
  communications and attachments to some of the communications produced
  relating to Ms. Ewald and Mr. Larsen's communication . . . relating to the
  health insurance issue.

- seeking information believed to be missing related to communications with Trond Fevolden, Secretary General at the Ministry of Education.[2]
- requesting notes or documents related to a meeting or discussion between Aud Kolberg and Mr. Fevolden regarding Ms. Ewald's complaint and/or her employment.
- requesting communications between Ms. Johne and the Education Ministry relating to Ms. Ewald.

(Engelmeier Aff., Ex. V).

Defendant responded that the request was burdensome, that Plaintiff "waived" her ability to object, and that "the relevant information can be gleaned from documents and from testimony secured at depositions." (Engelmeier Aff., Ex. W).

On July 16, 2013, Plaintiff again attempted to provide a narrowing of her request for relevant information. Specifically, Plaintiff requested Defendant respond to inquiries for information regarding "a summary of the conversations relating to the decision that Ms. Ewald's contract should not be renewed or other decisions that effectively have an 'adverse employment action.'" (Engelmeier Aff., Ex. CC). Plaintiff also again asked for information "relevant to Ms. Ewald's nonrenewal, notes of phone calls about her alleged failure to perform, and information about why the Embassy perceived Ms. Ewald as a 'bad hire.'" *Id.* To date, Defendant has not produced responsive documents to these requests.

Indeed, witnesses' testimony and references to telephone discussions found in produced documents demonstrate that there are responsive documents; whether those

---

[2] On July 26th, Defendant represented that it is inquiring of Mr. Fevolden, but he is currently on summer vacation and such documents will not be available until about the end of August. (See, Engelmeier Aff. ¶ 55).

documents have been produced is the question. For example, Elisabeth Wemburg[3] testified that phone texts are considered documents that are routinely entered in official archives.  (Engelmeier Aff., Ex. GG; Wemburg Dep. 10:3-6; 15:2-10).  When asked if "phone texts" were also included in the archives, Ms. Wemburg stated, "According to Norwegian law it is."  (Engelmeier Aff., Ex.GG; Wemburg Dep. 14:23-15:10).  From this testimony, it appears the text messages are maintained, but Defendant continues to refuse to produce them.

Defendant is obligated under the Federal Rules of Civil Procedure to provide meaningful answers to Plaintiff's discovery requests.  Defendant may not dump thousands of pages of documents and shift the burden to Plaintiff to sift through the pages to find the information herself.

Although Defendant provided no specific response to the document requests for notes of telephone communications, Defendant produced nine pages of notes taken by Amb. Vibe[4] during an in-person meeting with Ms. Ewald, Ms. Wemburg and Lars Henie, in September 2010 (RNE 88985-88994).  If there are other documents consisting of notes, cell phone and/or or other telephone records among the approximately 88,994 pages produced, we asked Defendant to provide the Bates stamp numbers for such documents, which it has not provided.

---

[3] Ms. Wemburg previously held the position of Director for Archives and Administration for Norway, which kept "official records."  (Engelmeier Aff., Ex. GG; Wemburg Dep. 9:10-11; 10:1-6).

[4] Johan Vibe is currently the Ambassador of Norway at the Royal Norwegian Embassy in Madrid.  (Engelmeier Aff., Ex. JJ; Vibe Dep. 16-17).  From August 2009 to August 2012, in part during Ms. Ewald's employment, Mr. Vibe was the  Deputy Chief of Mission at the Royal Norwegian Embassy in Washington D.C.  (Engelmeier Aff., Ex. JJ; Vibe Dep. 16).

Defendant continues to object and refuses to identify responsive documents. Indeed, Defendant responded that "It's your job, not our job, to review the documents to help you find documents for a deposition." (Engelmeier Aff., Ex. II; Gandrud Dep. 102:1-3). In its correspondence dated July 26, 2013, Defendant's counsel responded to this issue by stating "Your team is just as capable of locating the remaining documents as we are. I do not think it is appropriate for opposing counsel to 'help [you] review relevant information,' as you request. . ." (Engelmeier Aff., Ex. DD).

Communications between and among the Defendant's employees and representatives are highly relevant to Ms. Ewald's claims. Simply making available a voluminous number of documents that might evidence communications is not responsive to Ms. Ewald's request for documents regarding communications among persons affiliated with Defendant about Ms. Ewald's employment.

**III.** **Issues with Documents Produced by Defendant.**

    **1.** **Technical Issues with Documents Produced by Defendant in Response to Requests for Production of Documents.**

Plaintiff has diligently worked at reviewing and analyzing the documents produced by Defendant. See, generally, Affidavit of Sheila Engelmeier and Declaration of Ellen Ewald. The sheer number of documents, many of which were duplicative, non-responsive or "junk" emails, made the task extremely difficult. *Id.* See, also, Chalstrom Declaration. In addition, Plaintiff experienced difficulties in searching the ESI documents produced starting in April 2013. Specifically, as noted in the Ewald Declaration:

1. Plaintiff received training on how to utilize Relativity (the database used by Shepherd Data for the documents produced in this matter) so she could help in reviewing documents and try to save some money on document review. Having spent hundreds of thousands of dollars on the case, she was anxious to try to save money.

2. Moreover, although counsel for Plaintiff did not realize this initially, many of the key documents were in Norwegian and no one on Plaintiff's legal team spoke or could read Norwegian. The idea was that Plaintiff was going to review all of the Norwegian documents produced by Defendant, as necessary, to prepare for the depositions originally set for May, which did not occur until June and July.[5] She reviewed documents in Norwegian that her legal team had designated for her to review. She also translated key parts of various documents, as requested by her legal team. She tried to review the Norwegian documents by looking at the documents that were around key dates during her employment (e.g., science week, her complaints of discrimination, acts of retaliation, etc.). Then, in late April, she started to try to search for documents among the Norwegian documents to assist in the preparation for depositions of the Norwegian-speaking witnesses.

3. Plaintiff found the Norwegian documents very difficult to search. By May, Plaintiff learned that there were large numbers of Norwegian characters missing from the imaged documents she was reviewing. By mid-June, Plaintiff learned that these characters were missing because Defendant produced documents in two different encoding formats without letting the Plaintiff's counsel know.

See, Engelmeier Aff. ¶ 49 and Ewald Declaration ¶¶ 2-4.

Due to the above-referenced problems, Plaintiff's counsel asked the President of Shepherd Data to review the document production and for Shepherd to do what it could to make the documents more searchable. Engelmeier Affidavit at ¶ 46. The results of the President's review are set forth in the Declaration of Christine Chalstrom. Ms. Chalstrom has opined that the information provided by Defendant was provided in an unusual way, which she had never seen in her 20+ years of experience in the field (See, Chalstrom

---

[5] Another deposition is set for either August 16 or August 19. See, Engelmeier Aff. ¶ 48.

Declaration, paragraph 17), and was not produced as the documents were maintained in

the ordinary course of business. *Id.* at paragraphs 30 – 33. The problems identified

include:

> Defendant's production has been challenging because it contains the following
> issues:
>     a. Mixed data encoding with the text files;
>     b. Bad character encoding within the load files;
>     c. Excessive spacing on the tiff images and in the text files;
>     d. An odd domain name printed on the tiffs and within the text and load files;
>     e. "ikke" Email Addresses; and
>     f. Inconsistent text between the metadata and the images of the data.

See, Chalstrom Declaration, paragraphs 11 – 29.

## 2.  **Defendant Should Designate the Specific Interrogatories and Document Requests to Which the Documents Produced Respond.**

Rule 34 requires a party responding to a request within the scope of Rule 26(b) to

provide responses "in *any* medium from which information can be obtained either

directly or, if necessary, after translation by the responding party into a reasonably usable

form." Fed. R. Civ. Pro. 34(a)(1)(A). The Advisory Committee Notes to Rule 34 provide

that a responding party should discuss the proper form of production with a requesting

party, in order to ensure the format is reasonably usable for the requesting party's

purpose and minimize disputes. *Id*. "A party that responds to a discovery request by

simply producing electronically stored information in a form of its choice, without

identifying that form in advance of the production in the response required by Rule 34(b),

runs a risk that the requesting party can show that the produced form is not reasonably

usable and that it is entitled to production of some or all of the information in an

additional form." *Id*. Additionally, the Advisory Committee guides parties that "the

option to produce in a reasonably usable form does not mean that a responding party is free to convert electronically stored information from the form in which it is ordinarily maintained to a different form that makes it more difficult or burdensome for the requesting party to use the information efficiently in the litigation." *Id.*   Furthermore, Rule 34(b)(2)(E)(i) and (ii) require a producing party to ensure that the documents produced are "reasonably usable" to the requesting party.  In sum, Defendant is obligated to produce image files to Plaintiff in a reasonably usable form that does not make it more difficult or burdensome for Plaintiff to efficiently use the information in litigation. Defendant has failed to meet that obligation in this case.

Fed. R. Civ. P. 33(d) requires that Defendant specify the records that must be reviewed in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could. "[T]he option afforded by Rule 33(c) is not a procedural device for avoiding the duty to give information." *In re Master Key*, 53 F.R.D. 87, 90 (D. Conn. 1971). "Merely relying on the option to produce business records without specifying the records that must be reviewed with sufficient detail is insufficient." *See Sungjin Fo–Ma, Inc. v. Chainworks,  Inc.,* 2009 WL 2022308 *4 (E.D. Mich. Jul. 8, 2009). And "[D]irecting the opposing party to an undifferentiated mass of records is not a suitable response to a legitimate request for discovery." *Id.;* quoting *T.N. Taube Corp. v. Marine Midland Mortgage Corp.,* 136 F.R.D. 449, 455 (W.D.N.C. 1991).  Here Defendant has done precisely that which is prohibited by Rule 33(d).  Defendant has objected to and refused to answer interrogatories, presumably relying on Rule 33(d).  See pp. 4-7, *infra*.  Defendant has maintained its refusal to answer even when Plaintiff has

narrowed its inquiries to accommodate Defendant's assertion that Plaintiff's initial interrogatories were too broad.  (Engelmeier Aff., Ex. V, CC).

In light of Defendant's refusal to assist in the process of making its production useable, Plaintiff asks this Court to order that Defendant designate which pages of its document production are responsive to which specific interrogatory and/or document request.  At this point, Plaintiff believes this is necessary to make Defendant's production comport with Rule 33 and Rule 34, including the requirement that the production is "reasonably usable" to Plaintiff.

Initially, on February 26, 2013, in light of the voluminous number of pages, Plaintiff requested that Defendant designate the documents as responsive to specific discovery requests.  (Engelmeier Aff., Ex. S).  On March 11, 2013, Defendant refused to designate, noting that Plaintiff had not designated and claimed that it had produced documents as they were kept in the usual course of business as required by Rule 34(b)(2)(E)(i) and (ii).  *Id.* at. T.  On April 10, 2013, Plaintiff produced a chart that designated her document production as responsive to Defendant's specific interrogatories and documents requests.  *Id*. at U.  Despite Plaintiff designating her documents to specific discovery requests, Defendant continues to refuse to do so.  (Engelmeier Aff., Ex. R).

Starting in the spring of this year, Plaintiff's counsel has requested assistance from Defendant to make its document production useable.  For example, in March, during a deposition when the witness referred to a document and counsel asked Defendant's counsel whether it had been produced, and if so to identify it, Defendant's counsel

responded  "It's your job, not our job, to review the documents to help you find

documents for a deposition."  (Engelmeier Aff., Exhibit II, Gandrud Dep. 102:1-3).

Similarly, in correspondence on May 31 and July 16, 2013, Plaintiff requested assistance

finding information in Defendant's voluminous production, as Plaintiff's counsel and her

team was unable to find information relevant to the case.  (Engelmeier Aff., Exs. V, CC.)

Defendant reiterated on July 26 (Engelmeier Aff., Ex. DD) and in the meet and confer on

July 29 its unwillingness to provide any "help" to Plaintiff in locating relevant

information within Defendant's production (noting, "Your team is just as capable of

locating the remaining documents as we are.  I do not think it is appropriate for opposing

counsel to 'help [you] review relevant information,' as you request. . .").  (Engelmeier

Aff., Ex. DD at p. 4).

Accordingly, Defendant should designate which of the produced documents are

responsive to the specific interrogatories and document requests propounded by Plaintiff.

Such designation will make Defendant's production more usable than it currently is.

Plaintiff submits that the documents produced by Defendant do not meet the requirements

of Rules 33 and Rule 34 and they are not in a "reasonably usable" form.

**3. <u>Defendant Should Answer Interrogatory Nos. 21 and 22 and Document
Request No. 30, Which Relate to the Manner in Which Documents Were
Preserved, Collected, Processed and Produced by Defendant.</u>**

As noted above, Plaintiff's counsel served discovery requests on June 3, 2013.

Plaintiff's Interrogatory No. 21 provides:

> <u>INTERROGATORY NO. 21:</u>   Identify   and   describe   the
> Defendant's e-mail systems architecture and provide:

a.      For E-mail Archive Servers used for preservation, identify the server names, geographic locations, software product and versions used.

b.      For E-mail Backup Servers, identify the server names, geographic locations, software product and versions used.

c.      For Exchange Servers, identify the server names, geographic locations, software product and versions used.

d.      For Outlook Clients Ellen Ewald, Gary Gandrud, Walter Mondale, Jan Aage Larsen, Berit Johne, Elin Rognlie, Anders Davidson, Christina Carleton, Johann Vibe, Liv Morch Finborud, Elizabeth Wemberg and Wegger Strommen, identify the client names, geographic locations, software product and versions used.

Defendant objected and refused to respond to this Interrogatory.  See, Engelmeier

Aff., Ex. L.  Defendant stood by its refusal to answer this interrogatory despite follow up

by Plaintiff's counsel on July 16, and the formal meet and confer on July 29, 2013.

Plaintiff's Interrogatory No. 22 provides:

INTERROGATORY NO. 22:      Identify and describe the tools and methods used by Defendant to preserve, collect, process and produce evidence in this case.

Defendant objected and refused to respond to this Interrogatory in detail.  See,

Engelmeier Aff., Ex. L.  Defendant stood by its refusal to answer this interrogatory

despite follow up by Plaintiff's counsel on July 16, and the formal meet and confer on

July 29, 2013.  Defendant appears to be taking the position that since it searched

Plaintiff's laptop, it has met its obligations in discovery.  Plaintiff believes that the

problems with the Defendant's document production necessitate an inquiry into how

documents were preserved, collected, processed and produced in this case, as well as

allowing Plaintiff's legal team, including its IT/forensic consultants to review Plaintiff's

laptops that were used by Plaintiff while she worked for Defendant, as noted previously

herein.  It is necessary to find relevant information.

Plaintiff's Request for Production No. 30 provides:

> REQUEST NO. 30: Provide all documents that identify the Defendant's email systems architecture and include:
> . . . .
> d.    For E-mail Archive Servers used for preservation, those documents providing server names, geographic locations, software product and versions.

Defendant objected and refused to respond to this Request.  See, Engelmeier Aff., Ex. M.  Defendant stood by its refusal to provide this information despite follow up by Plaintiff's counsel on July 16, and the meet and confer on July 29, 2013.  See, Engelmeier Aff. ¶ 55.

Plaintiff believes that the problems with the Defendant's document production necessitate an inquiry into how documents were preserved, collected, processed and produced in this case.  As a result, Plaintiff asks the Court to require Defendant to respond to Request No. 30.

## IV.    Other Information Plaintiff Asks This Court to Order Defendant to Produce.

### 1.    Defendant Should Produce Plaintiff's Laptops and Phone Used While She Worked at the Embassy for Inspection.

As noted above, Plaintiff's discovery requests asked Defendant to identify and describe in detail all communications related to Ms. Ewald's employment.  (Engelmeier Aff., Exs. D, E).  *See* Interrogatory Nos. 3, 13 and Document Request Nos. 8, 19.  Based on Plaintiff's discovery of technical issues with Defendant's production of documents and its refusal to identify responsive documents, Plaintiff requested that Defendant produce cell phones and laptop computers (forensic images and/or backup copies of the laptop computers) used by Plaintiff and key witnesses and decision makers.  *See* Requests

for Production of Documents Set 2 Nos. 27, 28, 29.  Defendant refused to produce these

items for review, inspection and analysis.  (*See* Engelmeier Aff., Exs. M, DD).

### a)  Defendant should produce Plaintiff's laptops for inspection.

Document Requests No. 27 and 28 request access to Plaintiff's work laptops that

she used while employed by Defendant, and the forensic images or backup copies of her

laptops.  (Engelmeier Aff., Ex. K).  Due to Plaintiff's issues with electronic documents

produced by Defendant, there is a legitimate basis for a forensic examination of

Plaintiff's work laptops.  Document Request No. 30 requests documents related to

Defendant's email systems.  Due to the issues with the electronic documents produced by

Defendant, this request is for relevant information.

### b)  Defendant should produce cell/smart phones.

On June 3, 2013, Plaintiff also requested to obtain access to review, examine and

analyze the "cellular/smart or other phones, memory cards and tablets" of key witnesses

in this case.  (Engelmeier Aff., Ex. K).  These documents are relevant based on

witnesses' testimony and references to telephone discussions found in emails.  For

example, Elisabeth Wemburg testified that phone texts are considered documents that are

routinely entered in official archives of the Ministry of Foreign Affairs [of which the

Embassy and Consulate are a part] (Engelmeier Aff., Ex. GG; Wemburg Dep. 9: 21-25;

10:1-6; 14: 22-25; 15:1-10).

Defendant responded that the request was burdensome, that Plaintiff "waived" her

ability to object, and that "the relevant information can be gleaned from documents and

from testimony secured at depositions."  (Engelmeier Aff., Ex. G).  Defendant is

obligated under the Federal Rules of Civil Procedure to provide meaningful answers to Plaintiff's discovery requests.  Defendant may not dump thousands of pages of documents and shift the burden to Plaintiff to sift through the pages to find the information herself.  Defendant has produced no texts or voice messages despite requests in Plaintiff's first discovery requests that were broad enough to encompass such messages.  (Engelmeier Aff., Ex. V).  Since the evidence establishes that this evidence exists, it is discoverable and needs to be produced because it is relevant and reasonably likely to lead to admissible evidence.

On July 16, 2013, Plaintiff renewed its requests that Defendant produce responses to these requests for cell phones, along with requests for appropriate responses regarding other discovery requests and the technical issues raised previously.  On July 26, 2013, Defendant responded as follows:

> With respect to Document Request No. 29, we will not be providing access to the telephones, memory cards and tablets used by certain witnesses in this matter.  As a practical matter, we do not have the ability to compel the production of the personal devices of current or former MFA employees. In addition, we have never understood Plaintiff's First Set of Requests for Production of documents to seek the production of text messages and we did not contemplate the production of text messages (and neither had you , until you raised the issue for the first time in your letter of May 31, 2013). Neither party has produced text messages or voice mail messages.

(Engelmeier Aff., Ex. DD).

In response to Defendant's assertion that Plaintiff has not produced texts, the reason is because she returned her work phone to Defendant at the time of her separation from employment on or about September 30, 2011.  Plaintiff did, however, produce

information that resided on her personal cell phone.  Plaintiff has a personal telephone that she would be willing to permit a forensic inspection based upon agreed upon search terms.  (Engelmeier Aff. ¶ 40).  Regarding cell phones of Ms. Carleton and Mr. Davidson, Plaintiff is willing to subpoena those items in the event that Defendant refuses to produce them.  In which case, Plaintiff requests an extension of time to attempt to obtain that specific discovery and supplement her discovery production as appropriate.

It appears Defendant has only produced email communications, despite the fact that all electronically-stored information should have been produced, consistent with the discovery requests served by Plaintiff in this case. At a minimum, text messages, voicemail, blog posts, notes and other similar electronic data should have been produced and need to be produced to provide Plaintiff complete information.

According to the Declaration of John Carney, a person's cell phone and mobile devices are an essential source of relevant information in today's world.  A cell phone "is a "personal diary of who you talk to and often what you talked about;" "are the source of a growing amount of evidence" and has "processing, storage, and communication technologies."  Further, Mr. Carney notes "phones contain more probative evidence per byte of data than computer hard drives do;" mobile devices include "text messages (SMS), multimedia messages (MMS, mobile messaging apps, voice messages, and web mail."  *See* Carney Declaration ¶¶ 25, 28, 29, 31 (citations omitted).  Particular to this case, a search of Defendant's production using 24 mobile evidence search terms resulted in a "significant" number of frequent references to mobile device use by Defendant's

organization and individual employees.  Carney Declaration ¶¶ 36, 37.  For example, see emails referenced by Mr. Carney.  Carney Declaration ¶¶ 43-47.

Similarly, Ms. Ewald asserts that she and Christina Carleton texted one another on a number of issues related to this case, including Ms. Ewald going to the EEOC to seek redress, and Ms. Ewald and Ms. Carleton's concerns about Mr. Gandrud and Mr. Davidson's conduct.  (Ewald Declaration ¶ 8).  Ms. Ewald also knows that texting was common among persons working in the Foreign Service at the time.  (Ewald Declaration ¶ 7).

In addition, Plaintiff believes that Mr. Gandrud used text messaging to communicate about Ms. Ewald.  For example, in RNE 00835 (a February 23, 2011 communication from Mr. Gandrud to Johan Vibe and Amb. Strommen), Mr. Gandrud is apologizing for a text clearly related to Ms. Ewald.  He states, "Sorry for my text "blast." On my way home, Christina calls, upset with Ellen, then I text while driving home. Sorry. I apologize the text in the heat of the moment! In the future, I think I will stick to e-mails."  (Carney Declaration, Ex. A).  The communication also suggests there may be other texts about Ms. Ewald as well.  It is particularly troubling that Mr. Gandrud's relevant texts about Ms. Ewald have not been produced.

Clearly, this information is relevant and needs to be produced to enable Plaintiff to review all information related to this case.  Yet, Defendant has refused to produce any texts, voice messages, or telephone records.  (Engelmeier Aff., Ex. DD).  Plaintiff also has a legitimate basis to conduct a forensic examination of various cell phones and requests the Court order Defendant to produce these requested documents and items.

**2.   Defendant Should Remove Redactions That Are Not Protected by the Attorney-Client Privilege or Work Product Doctrine.**

Numerous documents, including emails and reports by Embassy employees to other employees or persons on the Steering Committee, produced by the Embassy have parts "redacted."  The documents relate to Ms. Ewald, her duties and performance and her complaints.  Redactions within these relevant documents make it difficult to discern the full meanings of the documents.  These documents contain relevant facts and information that is discoverable.

On July 15, 2013, Plaintiff presented Defendant with a list of twenty-two documents and requested  that Defendant remove the redactions or explain the basis for such redactions.  (Engelmeier Aff., Ex. BB).  On July 26, 2013, Defendant refused to remove redactions from these documents, and supported its decision based on one of four purported reasons, respectively:

(1)   The redacted portion includes a discussion of legal advice protected by the attorney/client privilege.  (RNE 363; 370-75; 63237-38; 05666-69; 62956-57; 63100-03; 63212-23; 63226-27; 70596; 87981-82; 87990).

(2)   The redacted portion includes communications protected by the attorney/client privilege and the work product doctrine.  (RNE 63203-10; 63348-69; 63896; 86439).

(3)   The redacted portion contains legal advice protected by the attorney/client privilege.  (RNE 64272).

(4)   The redacted portion includes a request for and discussion of legal advice protected by the attorney/client privilege.  (RNE 74796, 87950-54; 87967-71).

(Engelmeier Aff., Ex. DD).

Minnesota law protects information under the attorney-client privilege "if it is part of a confidential communication between the client and the client's attorney and it was

made for the purpose of securing legal advice. *Burris v. Versa Products, Inc.*, 2013 WL

608742 (D. Minn.) (citing *Brown v. St. Paul City Rwy,* 241 Minn. 15, 33, 62 N.W.2d 688,

700 (1954)). "The privilege only protects [against] disclosure of communications; it does

not protect [against] disclosure of the underlying facts by those who communicated with

the attorney. . . ." *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981). The attorney-

client privilege does not protect every document that references communications between

a client and legal counsel. *Burris v. Versa Products, Inc.*, 2013 WL 608742 (D. Minn.).

And, generally, with respect to communications that were privileged or otherwise

protected from disclosure by the attorney-client privilege, disclosure to a third party

"expressly waives the privilege." *United States v. Workman* , 138 F.3d 1261, 1263 (8th

Cir.1998); *Lutheran Medical Center v. Contractors Health Plan*, 25 F.3d 616, 622 (8th

Cir.1994); *In re Grand Jury Proceedings Subpoena to Testify to Wine*, 841 F.2d 230, 234

(8th Cir.1988).

　　　In addition, Federal Rule of Civil Procedure 26(b)(3) generally precludes

discovery of "documents and tangible things that are prepared in anticipation of litigation

or for trial by or for another party or its representative." The Eighth Circuit Court of

Appeals has stated that the work-product doctrine "should be 'applied in a commonsense

manner in light of reason and experience as determined on a case-by-case basis.'"

*Pamida, Inc. v. E.S. Originals, Inc.,* 281 F.3d 726, 732 (8th Cir.2002) (quoting *Pittman v.*

*Frazer,* 129 F.3d 983, 988 (8th Cir.1997)). It is intended to preserve a zone of privacy in

which a lawyer can prepare and develop legal theories and strategy." *Hickman v. Taylor*,

329 U.S. 495-510-11 (1947).

In this case, Plaintiff disputes that Defendant's redactions are proper.  Defendant claims protection on the grounds that the selected portions were "a discussion of legal advice."  Plaintiff asserts this is not sufficient to be protected by the attorney-client privilege.  (Engelmeier Aff., Ex. DD).

Similarly, Defendant redacted portions of documents on the grounds that the document included "communications protected by the attorney/client privilege and the work product doctrine" (Engelmeier Aff., Ex. DD).  However, none of these documents have legal counsel as the author or recipients.  (Engelmeier Aff., Ex. BB).  All of these documents are authored and sent to and from persons other than legal counsel.[6] (Engelmeier Aff., Ex. BB).  Indeed, some of these documents have been forwarded to persons who Defendant has not identified as persons with knowledge of this case, and Defendant should not be allowed to claim privilege when the information has been sent to numerous persons.  For example, RNE 363-364; 370-371(see RNE 00371 email "To:" Larsen Torgeir; Stokke Oyvind; Gillesdal Juliette Bernard; Thorsheim Ove," and "cc: Brother Mona Elisabeth; Berg Sten Anders; Slettevold Margaret").  (Engelmeier Aff., Ex. BB).  Similarly, RNE 63100 is a string of emails sharing relevant information about Ms. Ewald that if there was an "attorney-client privilege" was waived by the subsequent disclosure to other persons.   RNE 63212 was sent to "Hatlo Tove Karin" who is not to our knowledge legal counsel or a client of Defendant, thereby waiving any privilege if it may have originally existed.

---

[6] RNE 87950 -87954 is an email string that has a redaction of a name to whom it was sent.  If this redaction was on the grounds that it was legal counsel, the privilege was waived by sending the document to a third party.

In addition, any of the documents from which Defendant made redactions, appear to be communications that were created for the purposes of conducting business.  For example, Ms. Finborud prepared a summary report of the Honorary Consulate General in Minneapolis for the Steering Committee that funded the two positions in Minneapolis.  (Engelmeier Aff., Ex. BB).  "Materials created in the ordinary course of business" are not privileged under the work product doctrine.  Fed.R.Civ.P. 26(b)(3) (1970 Committee Notes).  The portion of the document redacted does not appear to qualify as work product of counsel.

Regarding RNE 005503, counsel for the parties has attempted to resolve the issues with this document.  Defendant proposed removing the "confidential" designation but redacted two entire paragraphs on the document.  (Engelmeier Aff., Ex. KK).  Plaintiff made it clear that the document should be available in its entirety for use at trial with the designation of confidential.  (Id.)  The redactions are overbroad and Plaintiff suggests that only the names of the individuals that are identified in those paragraphs are subject to redaction.

Plaintiff submits the redactions are improper and request the Embassy produce complete and unredacted documents.  Plaintiff requests the Court to order redactions of these documents, or in the alternative, Plaintiff requests the Court review the unredacted documents first *in camera* to determine whether Defendant has a legitimate privilege to redact the information.

**3.** **Defendant Has Not Produced Documents or Things Responsive to Discovery Requests.**

    **a)** **The Embassy Should Produce Documents Related To Complaints of Gender Discrimination and Unequal Pay.**

First Set of Interrogatories, No. 18 and First Set of Document Requests No. 24 sought information related to past complaints of inequitable or discriminatory conduct against females.  (Engelmeier Aff., Exs. D, E).  Defendant objected to the requests on the basis that the request "infringes upon the inviolability of the Embassy's archives and documents, and disclosure is not permitted pursuant to international treaty" (citations omitted), and the requests sought "information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence."  (Engelmeier Aff., Ex. H).

The information is relevant because it shows that Defendant had knowledge of the applicable gender discrimination and equal pay laws and it failed to act to ensure compliance with the laws.   The information is relevant to assessing Defendant's willfulness.  *See Edeh v. Equifax Information Services, LLC,* 2013 WL 1799006 (D. Minn.) (holding defendant is compelled to produce discovery in response to interrogatories and document requests related to past complaints).  For such purpose, the benefit outweighs any burden to Defendant to produce the information.  *Id.*; *see also Donnelly v. NCO Fin. Sys., Inc.,* 263 F.R.D. 500, 504-05 (N.D. Ill. 2009).

Contrary to Defendant's objections, the information sought is relevant to show that Defendant knew its pay practices were discriminatory, that nothing was done about the unequal pay for women, and it continued to pay women less than men.

During Ms. Milbury's deposition taken on June 28, 2013, Defendant learned that Amb. Vibe kept a "red book" in which he recorded complaints and concerns from employees about workplace issues. (Engelmeier Aff., Ex. HH; Milbury Dep. 60:21). Ms. Milbury testified that she believed "female local employees are poorer paid than male local employees." (Engelmeier Aff., Ex. HH; Milbury Dep. 25:14-15; Milbury Confidential Dep. 24:19-26:8 and 36:22 -37:1).

Until Milbury's testimony, Plaintiff had no knowledge of the "red book" although her discovery had sought identification and production of documents regarding complaints. (Ewald Declaration ¶ 10). As soon as knowledge of the "red book" was discovered, Plaintiff's counsel requested that Defendant produce the "red book." (Engelmeier Aff., Ex. Y). Defendant produced nine pages of notes taken by Amb. Vibe during an in-person meeting with Ms. Ewald, Ms. Wemburg and Lars Henie, in September 2010. (RNE 88983-88994). In response to Plaintiff's request for notes of complaints in the "red book," Defendant has responded that there are "no other responsive documents are contained in Mr. Vibe's notebook." (Engelmeier Aff., Ex. DD).

During the telephone meet and confer conference on July 29th, Defendant expressed an opinion that complaints by other employees of Defendant were not relevant. (Engelmeier Aff. ¶ 54). As noted above, Plaintiff believes such evidence is relevant or likely to lead to admissible evidence to show Defendant's willfulness in disregarding the law. Plaintiff requests that this Court order portions of the red book relating to other

Defendant employees' complaints of unequal pay, or unfair treatment be produced by

Defendant.

### b) Defendant Should Produce Documents Related to Statistics and Studies of Wages for Defendant's Employees.

Plaintiff's First Set of Interrogatories, No. 19 and 20, and First Set of Document

Requests No. 25 requested information and documents related to wage statistics and

studies or analysis of compensation of Defendant's employees.  This information has

been specifically requested and has not been produced.  Two witnesses, Amb. Vibe and

Ms. Wemburg have all testified that the Defendant is in possession of wage statistics for

its United States missions.  (Engelmeier Aff., Ex. GG; Wemberg Dep. 40-41; Vibe Dep.

27:22 – 28:24) Plaintiff's claim of unequal pay and benefits based on gender is one of the

main claims in this case and a matter about which she complained throughout her tenure

working for Defendant.  This wage information is relevant to Plaintiff's claims, and

should be produced.

Similarly, Ms. Milbury testified in her deposition that a study, which concerned

wage disparity issues in the New York mission, was done by an external group called

Mercer.  (Milbury Dep. 46:23-25).  According to Ms. Milbury, the Ministry of Foreign

Affairs had the survey conducted, and the records are maintained.  (Milbury Dep. 38:25-

40:1-4; see pp. 38-42).  This information is directly relevant to the issues of unequal pay

and Defendant's knowledge of the equal pay laws and should be produced.  On June 28,

2013, following Ms. Milbury's deposition, Plaintiff requested Defendant produce the

surveys that are relevant to this case.  Defendant refuses to produce this information on

the grounds that the "study is irrelevant" supporting its position that the study "examined market issues with respect to local employees in New York and did not analyze gender." (Engelmeier Aff., Ex. DD). Plaintiff contends the study may lead to admissible evidence since Defendant's defense to the unequal pay claim includes a purported market analysis to justify compensation to Plaintiff. (Engelmeier Aff., Ex. II; Gandrud Dep. 96-97). Moreover, the evidence may show pay differentials between men and women.

Ms. Milbury also described a meeting in which a power point presentation was presented to Aud Kolberg[7] and other senior officials about wage disparity issues in the United States Norwegian missions. Engelmeier Aff., Ex. II; Gandrud Dep. 49-50). Upon learning of the existence of this meeting and presentation, Plaintiff requested Defendant produce the presentation and notes associated with the meeting. (Engelmeier Aff., Ex. Y). To date, these documents that are relevant to wage disparity have not been produced. (Engelmeier Aff., Ex. DD).

Retrieving and producing these documents is not unduly burdensome as the documents are maintained and Plaintiff is entitled to see this evidence.

### c) Defendant Should Produce Documents Related to Bullying.

On June 12, 2013, the Court granted Plaintiff's Motion to Amend the Complaint to add a claim of bullying under Norwegian law. (DOC. NO. 103). The Order was issued after discovery needed to be commenced in time to be completed by July 3, 2013. (*See* DOC. NO. 102 Pre-Trial Scheduling Order- deadline July 3, 2013).

---

[7] Ms. Kolberg is the former Deputy Chief of Mission at the Royal Norwegian Embassy in Washington, D.C. (Engelmeier Aff., Ex. G).

Ms. Milbury testified that she submitted a complaint of bullying and is aware of other employees of Defendant who have also submitted bullying complaints. (Engelmeier Aff., Ex. HH; Milbury Dep. 39:7-12).  She testified that surveys were conducted of Defendants employees internationally in 2011 and 2013 that included inquiries and identification of workplace bullying in the various missions.  (Engelmeier Aff., Ex. GG; Wemberg Dep. 5-9, 7-12,  12-25, 39, 42).  Following Ms Milbury's deposition, on June 28, 2013, Plaintiff made a request for these surveys.  In light of the Court's Order allowing Plaintiff to add a claim of bullying, this information should be produced.

## CONCLUSION

The information requested in this Motion to Compel is relevant to Ms. Ewald's claims which assert unequal pay, gender discrimination, retaliation, and bullying and she is entitled to meaningful answers to interrogatories and complete production of communications, reports and documents.  For the foregoing reasons, Plaintiff respectfully requests that the Court issue an Order compelling the Embassy to designate documents, fully respond to discovery requests, remove redactions of non-privileged information, and produce laptop computers and cell phones for analysis (or alternatively supplement is current production to include text messages), and provide information regarding its preservation, collection and production methods.

Dated:  July 29, 2013.                    **ENGELMEIER & UMANAH, PA**


By: s/Sheila Engelmeier
    Sheila Engelmeier (#175250)
    Thomas E. Marshall (#155597)
    Susanne J. Fischer (#285353)
    12 South Sixth Street, Suite 1230
    Minneapolis, MN  55402
    Telephone:  (612) 455-7720
    Facsimile:  (612) 455-7740
    E-Mail:  sheilae@e-ulaw.com;
    tomm@e-ulaw.com; suef@e-ulaw.com

    **ATTORNEYS FOR PLAINTIFF**