

EXHIBIT

tabbies

G

## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

|  |  |
|---|---|
| Ellen S. Ewald,                 ) | Civil No. 11-CV-02116 (SRN/SER) |
|                         ) |  |
|             Plaintiff,     ) | **DEFENDANT ROYAL** |
|                         ) | **NORWEGIAN EMBASSY'S** |
| vs.                        ) | **ANSWERS AND OBJECTIONS TO** |
|                         ) | **PLAINTIFF'S FIRST SET OF** |
| Royal Norwegian Embassy,     ) | **INTERROGATORIES** |
|                         ) |  |
|           Defendant.     ) |  |
|                         ) |  |
|                         ) |  |

TO:   Ellen S. Ewald and her attorneys, Sheila Engelmeier, Susanne J. Fischer, and Thomas
E. Marshall, Engelmeier & Umanah, 12 South Sixth Street, Suite 1230, Minneapolis,
MN 55402.

Defendant Royal Norwegian Embassy ("Defendant" or the "Embassy") asserts the

following objections and responses to Plaintiff's First Set of Interrogatories.

### PLAN OF RESPONSE AND GENERAL OBJECTIONS

The following paragraphs constitute Defendant's general objections to Plaintiff's

interrogatories.  These objections apply to each of Defendant's answers to individual

interrogatories that follow these objections.  The answers set forth below are subject to and

do not waive any of these general objections.

1.   **Confidential, Privileged, and Protected Information.**

To the extent Plaintiff's interrogatories seek private, confidential, privileged, and/or

protected information about Defendant or about third parties who are not party to this

action, including documents and information protected by applicable Norwegian law and

international treaties and conventions, Defendant objects to these interrogatories on the

grounds that it has a right or duty to keep such information confidential. Defendant also objects to Plaintiff's interrogatories to the extent they infringe upon the inviolability of the Embassy's archives and documents as provided pursuant to international treaty (including Articles 33 and 61 of the Vienna Convention on Consular Relations and Articles 24 and 27 of the Vienna Convention on Diplomatic Relations). No specific response of Defendant below constitutes a waiver of this objection.

**2.   Attorney-Client Privilege and Work-Product Principle.**

To the extent Plaintiff's interrogatories seek information protected by the attorney-client privilege or the work-product doctrine, Defendant objects to such interrogatories on these grounds and will not knowingly produce such documents or information. No specific response of Defendant below constitutes a waiver of this objection.

**3.   Plaintiff's Definitions and Instructions.**

Defendant objects to Plaintiff's definitions and instructions because they are overbroad and unduly burdensome. In particular:

a)   Defendant objects to Plaintiff's instructions regarding identifying documents, persons, oral communications, written communications, and other events because they are overbroad, unduly burdensome, and impose requirements beyond those in the Federal Rules of Civil Procedure.

b)   Defendant objects to Plaintiff's definitions of "you," "your," "Defendant" and "Defendants" because they are overbroad, unduly burdensome, and impose requirements beyond those in the Federal Rules of Civil Procedure. For purposes of these responses, "you," "your," "Defendant," and "Defendants" mean the Embassy.

c)     Defendant objects to Plaintiff's definitions of the term "identify" because they are overbroad, unduly burdensome, and impose requirements beyond those in the Federal Rules of Civil Procedure.

d)     Defendant objects to Plaintiff's definition of the term "describe in detail" because it is overbroad, unduly burdensome, and imposes requirements beyond those in the Federal Rules of Civil Procedure.

e)     Defendant objects to Plaintiff's instructions regarding the continuing nature of the interrogatories to the extent they impose requirements beyond those in the Federal Rules of Civil Procedure.

f)     Defendant objects to Plaintiff's instruction regarding information that must be provided when an interrogatory is objected to on the basis of overbreadth, burdensomeness, or oppressiveness because it imposes requirements beyond those in the Federal Rules of Civil Procedure.

g)     Defendant objects that the burden or expense associated with Plaintiff's definitions and instructions outweighs their likely benefit and is an undue annoyance, oppression, and burden.

**4.     Electronically Stored Information.**

Defendant objects to Plaintiff's interrogatories to the extent they require Defendant to search electronically-stored information that is not reasonably accessible data due to undue burden or cost, including but not limited to the need to collect data from individuals or sources that are not readily identifiable as containing potentially relevant or responsive material.

5.   **Right to Amend or Supplement.**

The information contained in the following answers is true and correct to the best of Defendant's knowledge and belief as of the date of the responses.  Defendant reserves the right to amend or supplement these interrogatories if it finds that inadvertent errors or omissions have been made or if additional or more accurate information becomes available later.

## ANSWERS AND OBJECTIONS TO PLAINTIFF'S INTERROGATORIES

Subject to and in addition to its aforementioned general objections, the Embassy makes the following answers and objections to individual interrogatories:

**INTERROGATORY NO. 1:**  Identify each and every person who drafted, was consulted, or otherwise took part in the preparation of answers to these interrogatories or any document or other discovery requests served on Defendant in conjunction with this matter, including which interrogatory said person provided information for.

**OBJECTION:**   The Embassy objects to this interrogatory as vague and because it improperly inquires into the mental impressions, conclusions, and legal theories of counsel and seeks information protected by the attorney-client privilege or the work-product doctrine.

**ANSWER:**   Subject to and without waiving its objections, the Embassy states that its counsel coordinated the gathering of information from Embassy representatives needed to respond to Plaintiff's discovery requests.  The Embassy also refers to its answer to Interrogatory No. 2, below.

**INTERROGATORY NO. 2:** Identify all persons whom you claim or believe have knowledge or information relating to the allegations made or matters raised in your answer to any claim in this action, and for each such person, describe in detail the nature of his or her knowledge or information.

**OBJECTION:**    The Embassy objects to this interrogatory as vague, overbroad, and unduly burdensome. The Embassy further objects to this interrogatory because it improperly inquires into the mental impressions, conclusions, and legal theories of counsel and because it seeks information protected by the attorney-client privilege or the work-product doctrine. The Embassy also objects to this interrogatory because it calls for speculation, i.e., by requesting information about what it "believe[s]."

**ANSWER:**   Subject to and without waiving its objections, the Embassy states:

- Morten Aasland, Coordinator for North America for the Ministry of Foreign Affairs likely has knowledge regarding the creation of the Higher Education and Research Officer and Innovation and Business Development Officer positions and Plaintiff's complaints.

- Sissel Bakken, Administrative Officer, likely has information about Plaintiff's involvement in Science Week 2010 and Plaintiff's request that the Embassy pay for her travel to Science Week in 2010.

- Svein Berg represented stakeholder Innovation Norway on the Steering Group for the Honorary Consulate in Minneapolis and may have knowledge or information regarding the creation, funding, and oversight of the Higher Education and Research Officer and Innovation and Business Development Officer positions.

- Reidar Bye represented stakeholder SINTEF on the Steering Group for the Honorary Consulate in Minneapolis and may have knowledge or information regarding the creation, funding, and oversight of the Higher Education and Research Officer and Innovation and Business Development Officer positions.

- Christina Carleton, Vice Consul at the Honorary Consulate in Minneapolis, likely has information about Plaintiff's employment, work, and complaints.

5

- Anders Davidson, former Innovation and Business Development Officer at the Honorary Consulate in Minneapolis likely has information regarding his background; his discussions with the Embassy regarding the terms of his employment; his employment; his salary and benefits; his involvement with MobileOn Services, Inc.; and his duties, responsibilities, and work.

- Robert P. Elde, Dean of College of Biological Sciences at the University of Minnesota, may have knowledge or information regarding Plaintiff's work.

- Terje Emblem represented stakeholder Research Council of Norway on the Steering Group for the Honorary Consulate in Minneapolis and may have knowledge or information regarding the creation, funding, and oversight of the Higher Education and Research Officer and Innovation and Business Development Officer positions.

- Ellen S. Ewald (Plaintiff) likely has information about her background; her employment history; her employment with the Embassy; her salary and benefits; her duties, responsibilities and performance; her allegations; her claimed damages; and her mitigation of her claimed damages.

- Liv Morch Finborud was Chairwoman of the Steering Group of stakeholders for the Honorary Consulate in Minneapolis and may have knowledge or information regarding the creation, funding, and oversight of the Higher Education and Research Officer and Innovation and Business Development Officer positions and the hiring of individuals for those positions.

- Gary Gandrud, former Honorary Consul and current Honorary Consul General for the Honorary Consulate in Minneapolis likely has information about Plaintiff's employment; her salary and benefits; her complaints; and her duties, responsibilities, and performance.

- Lars Petter Henie, Minister Counselor for Economic Affairs, likely has information about Plaintiff's employment with the Embassy; her salary and benefits; and her duties, responsibilities, complaints, and performance.

- Berit Johne, former Science Counselor, likely has information about the creation of the concept of the Higher Education and Research Officer and Innovation and Business Development Officer positions; the purpose of and funding for the positions; the hiring of Plaintiff and Anders Davidson for the positions; Plaintiff's employment; Plaintiff's performance; and communications with Plaintiff.

- Aud Kolberg, former Deputy Chief of Mission at the Royal Norwegian Embassy in Washington, D.C., likely has information about Plaintiff's employment.

- Jan Aage Larsen, former Administrative Officer, likely has information about Plaintiff's benefits and Plaintiff's complaints about her benefits.

- Gaute Lenvik represented stakeholder Ministry of Agriculture and Food on the Steering Group for the Honorary Consulate in Minneapolis and may have knowledge or information regarding the creation, funding, and oversight of the Higher Education and Research Officer and Innovation and Business Development Officer positions.

- Pat Manalo, former Human Resources Director, Faegre & Benson LLP, may have knowledge or information regarding market research regarding salaries.

- Terje Mikalsen likely has information about Plaintiff's allegations, Plaintiff's duties, responsibilities, and performance; his health insurance coverage; and Plaintiff's past and present job duties and compensation.

- Walter Mondale, former Honorary Consul General for the Honorary Consulate in Minneapolis likely has information regarding hiring for the Higher Education and Research Officer and Innovation and Business Development Officer positions; Plaintiff's employment; her salary and benefits; and her duties, responsibilities, and performance.

- Elin Bergithe Rognlie, former Minister Counselor for Economic Affairs, likely has information about the creation of the concept of the Higher Education and research Officer and Innovation and Business Development Officer positions; the purpose of and funding for the positions; the hiring of Plaintiff and Anders Davidson for the positions; Plaintiff's employment; Plaintiff's performance; and communications with Plaintiff.

- Judd Sheridan, University of Minnesota College of Biological Sciences, may have knowledge or information regarding Plaintiff's work.

- Ragnhild Skålid represented stakeholder Ministry of Education and Research on the Steering Group for the Honorary Consulate in Minneapolis and may have knowledge or information regarding the creation, funding, and oversight of the Higher Education and Research Officer and Innovation and Business Development Officer positions.

- Ola Stava represented stakeholder Norwegian Association of Higher Education Institutions on the Steering Group for the Honorary Consulate in Minneapolis and may have knowledge or information regarding the creation, funding, and

oversight of the Higher Education and Research Officer and Innovation and Business Development Officer positions.

- Wegger Strømmen, Norway's Ambassador to the United States, likely has information about Plaintiff's hiring, compensation and benefits; Plaintiff's complaints; and related communications.

- Johan Vibe, former Deputy Chief of Mission and Norway's current Ambassador to Spain, likely has information about Plaintiff's employment with the Embassy; her salary and benefits; her complaints; and her duties, responsibilities, and performance.

- Elisabeth Wemberg, Counselor, Head of Administration for the Royal Norwegian Embassy, likely has knowledge regarding complaints made by Plaintiff.

**INTERROGATORY NO. 3:** State the names, addresses, and employment of all persons with whom you have had conversations or communications regarding any of the matters or issues raised or alleged in your answer to any claim in this action as well as any counterclaims, and describe in detail the dates, places, and substance of all such conversations or communications.

**OBJECTION:**    The Embassy objects to this interrogatory as overbroad and unduly burdensome to the extent it seeks recitation of every discussion related to Plaintiff's employment over the three-year term of her employment, discussions related to the employment of Anders Davidson, discussions related to the creation of the new positions at the Honorary Consulate in Minneapolis, and all discussions related to the hiring of the Innovation and Business Development Officer and Higher Education and Research Officer. The Embassy further objects to this interrogatory because it improperly inquires into the mental impressions, conclusions, and legal theories of counsel and because it seeks information protected by the attorney-client privilege or the work-product doctrine.

**INTERROGATORY NO. 4:** Identify each expert whom you have retained, during the pendency or in anticipation of this litigation, to render an opinion on your behalf, and for each such expert, provide the individual's full name, title, current business address and telephone number, the area of his or her expertise, a detailed description of his or her background (e.g., education, experience, professional affiliations, certifications, publications), the subject matter on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each such opinion.

**OBJECTION:**   The Embassy objects to this interrogatory as vague and overbroad. The Embassy further objects to this interrogatory because it improperly inquires into the mental impressions, conclusions, opinions, and legal theories of counsel and because it seeks information protected by the attorney-client privilege or the work product doctrine.

**ANSWER:**   Subject to and without waiving its objections, The Embassy states that it has not yet determined which persons it will call to testify as experts, if any, and will do so in the time, manner, and to the extent required by the Federal Rules of Civil Procedure, or in accordance with the Scheduling Order in this matter.

**INTERROGATORY NO. 5:**  Identify all other witnesses expected to be called at trial and state the substance of facts to which each witness is expected to testify.

**OBJECTION:**   The Embassy objects to this interrogatory as vague, overbroad, and because it improperly inquires into the mental impressions, conclusions, opinions, and legal theories of counsel. The Embassy further objects to this interrogatory to the extent it seeks information protected by the attorney-client privilege or the work-product doctrine.

**ANSWER:**  Subject to and without waiving its objections, The Embassy has not yet determined which persons it may call as a witness at trial and will provide a list of trial

witnesses in the time, manner, and to the extent required, if at all, by the Federal Rules of

Civil Procedure, or in accordance with the Scheduling Order in this matter.

**INTERROGATORY NO. 6:** Identify and describe in detail all statements which were made by Defendant, or any of Defendant's personnel, to any other person regarding the recruitment, hiring and/or termination of Plaintiff's employment, and by whom and to whom these statements were made.

**OBJECTION:**      The Embassy objects to this interrogatory as vague, overbroad,

and because it improperly inquires into the mental impressions, conclusions, opinions, and

legal theories of counsel. The Embassy further objects to this interrogatory to the extent it

seeks information protected by the attorney-client privilege or the work-product doctrine.

**ANSWER:**   Subject to and without waiving its objections, The Embassy states that

it has not obtained any statements as defined by Rule 26(b)(3)(C) of the Federal Rules of

Civil Procedure.

**INTERROGATORY NO. 7:** Describe in detail all representations made by Defendant to Plaintiff concerning the terms and/or conditions of her employment.

**OBJECTION:**      The Embassy objects to this interrogatory as vague, including

with regard to the terms "representations" and "terms and/or conditions," and overbroad

because it seeks recitation of every communication ever made to Plaintiff regarding the

terms and conditions of her employment.

**ANSWER:**   Subject to and without waiving its objections, The Embassy states that

it indicated to Plaintiff that the salary range for the Higher Education and Research Officer

position would be between $50,000 and $70,000 per year; that Plaintiff was subsequently

offered the position of Higher Education and Research Officer at a salary of $70,000—the

top of that range; that the Plaintiff accepted the Embassy's offer; and that the terms and

conditions of Plaintiff's employment were subsequently confirmed and memorialized in a

written employment agreement that Plaintiff agreed to and signed.

**INTERROGATORY NO. 8:**  Identify and describe, including the salary or other
compensation paid by Defendant, for health, dental, retirement, disability insurance, life
insurance, 401K plan, or other benefits that Plaintiff received in connection with her
employment, for the duration of Plaintiff's employment.

    **OBJECTION:**    The Embassy objects to this interrogatory as vague and

overbroad.

    **ANSWER:**    Subject to and without waiving its objections, the Embassy refers to

documents that will be produced in response to Plaintiff's document requests including

Plaintiff's Employment Agreement, payroll records, and other documents and records

reflecting, among other things, the additional payments Plaintiff received for tax

obligations and for reimbursement for the cost of health care coverage for Plaintiff's

family.

**INTERROGATORY NO. 9:**  Identify and describe, including the payments or other
compensation paid by Defendant, for salary, health, dental, retirement, disability insurance,
life insurance, 401K plan, or other benefits provided by Defendant and/or made available
to officers and employees at all the Norwegian Consulates and Embassies in the United
States from 2007 to the present.

    **OBJECTION:**    The Embassy objects to this interrogatory because it is vague,

overbroad, unduly burdensome, and seeks information that is not relevant or reasonably

calculated to lead to the discovery of admissible evidence. The Embassy also objects to

this interrogatory because it seeks personal, private, confidential, and protected information

about third parties not similarly situated to Plaintiff. The Embassy further objects to this

interrogatory because it infringes upon the inviolability of the Embassy's archives and

documents, and disclosure is not permitted pursuant to international treaty (including

Articles 33 and 61 of the Vienna Convention on Consular Relations and Articles 24 and 27

of the Vienna Convention on Diplomatic Relations).

**INTERROGATORY NO. 10:** Identify each person who participated in any way in the decision on the amount of salary and benefits paid to Anders Davidson and Ellen Ewald, and describe in detail how the decision was made and each and every factor considered in the decision making process. Provide documentation, if any, for each communication.

　　**OBJECTION:**　　The Embassy objects to this interrogatory as vague and

overbroad.

　　**ANSWER:**　Subject to and without waiving its objections, the Embassy states that

the Honorary Consulate in Minneapolis was a new model of consular post for Norway.

The Higher Education and Research Officer and Innovation and Business Development

Officer positions were created for the Honorary Consulate in Minneapolis and had not

previously existed—and do not currently exist—elsewhere in Norway's foreign service.

The funds to pay for the two positions were contributed by various stakeholders who hoped

that the positions could provide valuable assistance in achieving their goals and missions.

　　Finding the right people to fill the Higher Education and Research Officer and

Innovation and Business Development Officer positions was believed to be critical to the

success of the new consular model. A selection committee (the "Committee") for the two positions was established consisting at the time of then Honorary Consul General Walter Mondale, then Honorary Consul Gary Gandrud, Elin Bergithe Rognlie, and Berit Johne.

Job descriptions were posted and circulated seeking applicants for the two positions. The Committee reviewed applications for the two positions and selected candidates to interview for each position. During the selection process, it became apparent that in order to hire the preferred candidate it would be necessary to pay a higher salary to the Innovation and Business Development Officer than initially anticipated. The Committee learned that the range of $50,000 to $70,000 was too low to hire the person with the background, experience, and skills that they felt were needed for the Innovation and Business Development position to have the best chance for being successful. Consequently, the Committee requested and received approval from the stakeholders to pay the higher salary required to hire the preferred candidate for the Innovation and Business Development Officer position.

The following individuals participated in discussions regarding compensation for the Higher Education and Research Officer and Innovation and Business Development Officer positions:

- Berit Johne;
- Elin Bergithe Rognlie;
- Gary Gandrud;
- Walter Mondale;
- Ambassador Strømmen;
- Jan Aage Larsen;
- Liv Morch Finborud;
- Ragnhild Skålid;

- Gaute Lenvik;
- Ola Stava;
- Reidar Bye;
- Terje Emblem;
- Svein Berg.

Plaintiff applied for and was selected to be interviewed for the Higher Education and Research Officer position. Anders Davidson applied for and was selected to be interviewed for the Innovation and Business Development Officer position. The Committee unanimously agreed that Plaintiff was the best candidate for the Higher Education and Research Officer position and that Mr. Davidson was the best candidate for the Innovation and Business Development Officer position.

In deciding what salary to pay Mr. Davidson, the Embassy considered:

- his professional experience and salary as a Business Development Manager focusing on International Operations and Strategic Planning for 3M, a large Minnesota-based company;
- other positions Mr. Davidson held at 3M;
- his experience at Microsoft;
- his Masters of Business Administration Degree from the University of Minnesota's Carlson School of Management;
- his extensive network of business contacts in the Midwest, which included contacts in international-based businesses with contacts in Norway; and
- the market for persons in such positions.

Mr. Davidson was initially offered an annual salary of $60.000. Mr. Davidson indicated he would accept $60,000 only if the position was limited to a reduced time commitment. The Embassy wanted the Innovation and Business Development Officer to be a full-time position, and felt that Mr. Davidson was an outstanding candidate. The Committee notified the stakeholders that they would need to offer a higher salary than the amount anticipated for the Higher Education and Research Officer position. The

stakeholders agreed. The Embassy offered and Mr. Davidson accepted an annual salary of $100,000.

In deciding what salary to pay Plaintiff, the Embassy considered:

- her professional and academic experience;
- her educational background including her studies in International Relations and Scandinavian Studies; Foreign Studies; International Politics; Comparative Politics; and Political Science;
- her experience in both U.S. and Norwegian educational institutions; and
- the market for persons in such positions.

Unlike Mr. Davidson, Plaintiff stated no dissatisfaction with the offer of an annual salary of $70,000. In fact, she eagerly accepted the position of Higher Education and Research Officer at the annual salary of $70,000 offered to her. The Embassy also refers to documents produced in response to Plaintiff's document requests.

**INTERROGATORY NO. 11:** Identify each and every document known to you which you know or believe may contain facts or information related to the claims asserted in Plaintiff's Complaint or in Defendant's Answer.

**OBJECTION:**  The Embassy objects to this interrogatory because it is vague, overbroad, and because it improperly inquires into the mental impressions, conclusions, and legal theories of counsel. The Embassy also objects to this interrogatory because it calls for speculation, i.e., by requesting information about what it "believe[s]." The Embassy further objects to this interrogatory because it seeks information protected by the attorney-client privilege or the work product doctrine.

**ANSWER:**  Subject to and without waiving its objections, the Embassy refers to documents produced in response to Plaintiff and Defendant's document requests.

15

**INTERROGATORY NO. 12:** Describe in detail the duties and responsibilities of the two positions of the Higher Education and Research Officer and the Innovation and Business Development officer at the Honorary Consulate General in Minneapolis from 2008 through 2011.

      **OBJECTION:**    The Embassy objects to this interrogatory as vague and

overbroad.

      **ANSWER:**  Subject to and without waiving its objections, the Embassy states:

Higher Education and Research Officer:

      The Higher Education and Research Officer position was focused on student exchanges and high-level collaborative research arrangements between colleges and universities in the Midwest and Norway. The position was meant to work with colleges and universities to strengthen student mobility, but to focus more significantly on professional research mobility. The duties of the Higher Education and Research Officer included expanding existing relationships with colleges and universities in the Midwest and facilitating and planning visits to the Midwest by Norwegian colleges and universities. The primary contact person at the Embassy for the Higher Education and Research Officer was Science Counselor Berit Johne. The stakeholder institutions that the Higher Education and Research Officer position worked with most closely were the Ministry of Education and Research, the Ministry of Agriculture and Food, and the Norwegian Association of Higher Education Institutions.

Innovation and Business Development Officer:

      The Innovation and Business Development Officer position was created to strengthen commercial relations, development, and innovation between the United States and Norway. The position involved networking with business contacts in the Upper Midwest, promoting the business interests of Norwegian companies and assisting them in entering the United States market. The position focused on innovation and technology and served as a link between U.S. and Norwegian businesses. The Innovation and Business Development Officer also prepared market analysis in relevant fields and facilitated technological exchanges and transfers. The primary contact person at the Embassy for the Innovation and Business Development Officer was Minister Counselor for Economic Affairs Elin Bergithe Rognlie. The Innovation and Business Development worked most closely with stakeholders Innovation Norway and SINTEF.

The Embassy also refers to vision statements and reports prepared by Plaintiff and Anders Davidson regarding their duties and responsibilities, as well as communications from Plaintiff, Anders Davidson, the stakeholders, and other interested parties regarding their respective roles and duties. The Embassy also refers to job descriptions for both the Innovation and Business Development Officer and Higher Education and Research Officer Positions in Plaintiff's possession.

**INTERROGATORY NO. 13:** Identify all persons with whom Plaintiff's employment was discussed and the content of each conversation or communication. Provide documentation, if any, for all communications.

**OBJECTION:** The Embassy objects to this interrogatory as vague, overbroad, unduly burdensome to the extent it seeks recitation of every discussion related to Plaintiff's employment over the three-year term of her employment, and because it seeks information that is not relevant or reasonably calculated to lead to the discovery of admissible evidence. The Embassy further objects to this interrogatory because it improperly inquires into the mental impressions, conclusions, and legal theories of counsel and because it seeks information protected by the attorney-client privilege or the work-product doctrine.

**ANSWER:** Subject to and without waiving its objections, the Embassy refers to its answers to Plaintiff's other interrogatories and documents produced in response to Plaintiff's document requests.

**INTERROGATORY NO. 14:** Describe in detail the basis for Defendant telling Plaintiff that "there was no professional reason for her to attend Science Week 2010" as admitted in Paragraph 49 of your Answer.

**ANSWER:**   The Embassy states that Science Week 2010 took place from October 18-21, 2010 in Washington, D.C., and was primarily organized by Berit Johne and Sissel Bakken.  There was no official "planning committee" for Science Week 2010.

Embassy staff, including Ms. Bakken and Ms. Johne, contacted Plaintiff months in advance of Science Week 2010 seeking Plaintiff's input, contributions, or suggestions for the program and asking whether Plaintiff planned to attend.  Plaintiff did not respond to these requests and did not have a meaningful role in planning or organizing Science Week 2010.

Despite her failure to respond to the invitation to participate in the work of planning and preparing for Science Week 2010, Plaintiff submitted a request to Elisabeth Wemberg on September 22, 2010 to have her travel costs to Science Week 2010 paid for by the Embassy.  This was the first time Plaintiff expressed to the Embassy a desire to attend.

The budget for Science Week was limited.  Only travel for certain individuals who could not obtain funding from other sources—primarily those who spoke at or organized programs at the event—was paid for from the budgets for the Embassy or Science Week. At the time Plaintiff requested funding for travel to Science Week 2010, she had not communicated to anyone at the Embassy her role there, if any.  At that time, the Embassy was limiting travel by all staff.  As a result, the Embassy believed there was no professional reason, in connection with the execution of the event, for Plaintiff's travel to be funded from the budget for Science Week or the Embassy.  This was especially true considering some individuals who had speaking roles at the event did not receive funding from these sources.  If a stakeholder believed that Plaintiff's attendance at Science Week

2010 was important, it could have funded her travel.  However, no stakeholder chose to

fund Plaintiff's trip, and the Embassy is unaware of any effort by Plaintiff to seek funding

from a stakeholder to cover the cost of her travel to Science Week 2010.

**INTERROGATORY NO. 15:**  Identify each and every person who has participated in any kind of investigation on behalf of Defendant of the inequitable pay and/or incidents complained of by Plaintiff in this case and describe the facts learned through such investigation.

**OBJECTION:**    The Embassy objects to this interrogatory as vague with respect

to the phrases "any kind of investigation," and "incidents complained of."  The Embassy

further objects to this interrogatory because it is overbroad, improperly inquires into the

mental impressions, conclusions, and legal theories of counsel and because it seeks

information protected by the attorney-client privilege or the work-product doctrine.

**ANSWER:**  Subject to and without waiving its objections, the Embassy states that

with regard to her salary, Plaintiff complained at various times during her employment as

Higher Education and Research Officer that she was being paid differently than the

Innovation and Business Development Officer because of her gender.  Many of the

individuals to whom Plaintiff complained knew the reasons why Plaintiff's compensation

was different from the Innovation and Business Development Officer.  Plaintiff was

repeatedly told—including by individuals who were involved in the decision of how much

to pay Plaintiff and the Innovation and Business Development Officer—that her salary had

nothing to do with gender; that her position as Higher Education and Research Officer was

different than the Innovation and Business Development Officer position; that her salary

and the salary for the Innovation and Business Development Officer position were

negotiated separately; and that she and the Innovation and Business Development Officer had different written employment agreements that would be adhered to during their term.

After Plaintiff initially complained about her salary, Gary Gandrud drafted a letter signed by him and Walter Mondale asking that Plaintiff's compensation be increased to a level closer to what the Innovation and Business Development Officer received because of the conflict and distraction that the difference was creating in the workplace. Although the Embassy appreciated Mr. Gandrud and Vice President Mondale's desire to address Plaintiff's dissatisfaction for the benefit of the Honorary Consulate's new staffing model, it declined to accept Mr. Gandrud and Vice President Mondale's suggestion because: (1) Plaintiff had a written employment agreement and it was not the Embassy's practice to renegotiate contracts mid-term; and (2) any increase would require the Embassy to obtain additional funding and the stakeholders had already expressed significant dissatisfaction with Plaintiff's performance.

In September 2010, Johan Vibe, Lars Petter Henie, and Elisabeth Wemberg traveled to Minneapolis and met with Plaintiff regarding her complaints. Plaintiff was again told that her position and the Innovation and Business Development Position were different; that the salaries for the two positions were negotiated separately; and that the Embassy would not renegotiate her contract during the contract period. During this meeting, Plaintiff repeatedly directed the discussion to her criticisms of Mr. Davidson, claiming that his involvement in an outside company (discussed in response to Interrogatory No. 16, below) constituted a conflict of interest, and presented Mr. Vibe, Mr. Henie and Ms.

Wemberg with a letter from her husband criticizing the work of Mr. Davidson as

Innovation and Business Development Officer.

In addition, Plaintiff had multiple communications with individuals at the Embassy,

including Jan Aage Larsen, regarding her complaints about insurance benefits. Plaintiff's

complaints regarding insurance benefits were ultimately resolved in a manner that Plaintiff

expressed was satisfactory. The Embassy also refers to documents produced in response to

Plaintiff's document requests.

**INTERROGATORY NO. 16:** Identify all documents and state all facts that support your
denial of the allegations contained in Paragraph 56 of Plaintiff's Complaint, as reflected in
Paragraph 56 of your Answer.

**OBJECTION:**     The Embassy objects to this interrogatory as vague, overbroad,

and because it seeks information that is not relevant or reasonably calculated to lead to the

discovery of admissible evidence. The Embassy further objects to this interrogatory to the

extent it seeks information protected by the attorney-client privilege or the work-product

doctrine.

**ANSWER:**   Plaintiff brought Mr. Davidson's alleged involvement in a separate

company to the attention of Gary Gandrud and the Embassy. Mr. Gandrud and

representatives from the Embassy, including Lars Petter Henie, spoke with Mr. Davidson

regarding the issue. They learned that the company was a three-person software

development startup founded by Mr. Davidson's brother-in-law and consisting of Mr.

Davidson, his brother-in-law, and his father.

They also learned that Mr. Davidson essentially served in a figurehead position primarily for the purpose of complying with business organization formalities. They learned that Mr. Davidson's involvement consisted of occasionally setting up meetings to assist his brother-in-law and attending occasional coffee or lunch meetings. Mr. Davidson devoted less than fifteen minutes per week on average during the workweek to activities related to the company.

The Embassy concluded that Mr. Davidson's involvement did not constitute a conflict of interest because the company did not compete with any businesses that Mr. Davidson worked with in his role as Innovation and Business Development Officer and because the position involved only a very small time commitment by Mr. Davidson that did not detract from the performance of his duties for the Embassy. In addition, Mr. Davidson received no pay or benefits from the company.

**INTERROGATORY NO. 17:** Identify by date, place, purpose, funding source, and amount expended for travel by Anders Davidson as the Innovation and Business Development Officer of the Honorary Consulate General in Minneapolis.

**OBJECTION:** The Embassy objects to this interrogatory as vague and overbroad.

**ANSWER:** Subject to and without waiving its objections, the Embassy states that the it paid the following for travel-related expenses for Mr. Davidson:

- 10/21/2008 – Washington D.C. - $1832.36
- 1/14/2009 – Boston, MA - $1235.07
- 2/1/2009 – Oslo and Trondheim, Norway - $3711.04
- 4/29/2009 – Grand Forks, ND - $585.09
- 10/10/2009 – Oslo and Bergen, Norway - $1823.35

- 11/16/2009 – Oslo and Trondheim, Norway - $3865.10
- 6/29/2010 – Oslo, Norway - $539.56
- 6/18/2011 – Oslo, Norway - $2952.49

The Embassy further states that other travel by Mr. Davidson was paid for from

other sources, including Innovation Norway.

**INTERROGATORY NO. 18:**  Identify all other claims of inequitable treatment of
females, whether by compensation or otherwise, made to Norwegian Foreign Service since
2002.

**OBJECTION:**     The Embassy objects to this interrogatory because it infringes

upon the inviolability of the Embassy's archives and documents, and disclosure is not

permitted pursuant to international treaty (including Articles 33 and 61 of the Vienna

Convention on Consular Relations and Articles 24 and 27 of the Vienna Convention on

Diplomatic Relations.)  The Embassy further objects to this interrogatory as vague,

overbroad, and because it seeks information that is not relevant or reasonably calculated to

lead to the discovery of admissible evidence.

**INTERROGATORY NO. 19:**  Identify the demographics of salary, position, gender, and
experience for all positions in the Norwegian Foreign Service.

**OBJECTION:**     The Embassy objects to this interrogatory because it infringes

upon the inviolability of the Embassy's archives and documents, and disclosure is not

permitted pursuant to international treaty (including Articles 33 and 61 of the Vienna

Convention on Consular Relations and Articles 24 and 27 of the Vienna Convention on

Diplomatic Relations).  The Embassy further objects to this interrogatory because it is

vague, overbroad, and seeks information that is not relevant and not reasonably calculated

to lead to the discovery of admissible. The Embassy also objects to this interrogatory

because it seeks personal, private, confidential, and protected information about third

parties.

**INTERROGATORY NO. 20:** Identify all studies or analysis prepared which concern
gender equity in the compensation of employees in the Norwegian Foreign Service.

    **OBJECTION:**    The Embassy objects to this interrogatory because it infringes

upon the inviolability of the Embassy's archives and documents, and disclosure is not

permitted pursuant to international treaty (including Articles 33 and 61 of the Vienna

Convention on Consular Relations and Articles 24and 27 of the Vienna Convention on

Diplomatic Relations).  The Embassy objects to this interrogatory to the extent it seeks

information protected by the attorney-client privilege or the work-product doctrine.  The

Embassy further objects to this interrogatory because it seeks information that is not

relevant and not reasonably calculated to lead to the discovery of admissible evidence.

                        FAEGRE BAKER DANIELS LLP

Dated:  October **5** , 2012          By:        _____
                                      Daniel G. Wilczek, #131660
                                      *Daniel.Wilczek@faegreBD.com*
                                      Joel P. Schroeder, #339556
                                      *Joel.Schroeder@faegreBD.com*
                                      Sean R. Somermeyer, #391544
                                        *Sean.Somermeyer@faegreBD.com*

                                      2200 Wells Fargo Center
                                      90 South Seventh Street
                                      Minneapolis, MN  55402
                                      Telephone: (612) 766-7000

                                      Attorneys for Defendant
                                      Royal Norwegian Embassy

fb.us.9195545

**AS TO ANSWERS:**

Lajla Brandt Jakhelln, being first duly sworn, states that she is the Deputy Chief of Mission for the Royal Norwegian Embassy in Washington, D.C.; that she is authorized to sign Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories on behalf of the Royal Norwegian Embassy; that the answers to the foregoing interrogatories have been gathered by knowledgeable persons associated with the Royal Norwegian Embassy; that she does not necessarily have personal knowledge as to the answers to the interrogatories, but is advised and therefore believes that these answers are true and correct.

_____
Lajla Brandt Jakhelln

Subscribed and sworn to before me
this _10_ day of October, 2012.

_____
Notary Public

**Jackie Martin**

| | |
|---|---|
| **From:** | Schroeder, Joel Patrick [Joel.Schroeder@faegrebd.com] |
| **Sent:** | Wednesday, October 10, 2012 11:13 PM |
| **To:** | Tom Marshall; Sheila Engelmeier; Sue Fischer |
| **Cc:** | Wilczek, Daniel G.; Somermeyer, Sean R.; Meehan, Nancy A.; Jackie Martin |
| **Subject:** | Ewald v. RNE - Interrogatory Verification |
| **Attachments:** | RNE - Interrog Verification.pdf |

Counsel:


Attached is a copy of the Embassy's verification to its interrogatory answers served last
Friday, October 5.



Thank you,

Joel


Joel Patrick Schroeder
joel.schroeder@FaegreBD.com<mailto:joel.schroeder@FaegreBD.com>

Direct:  +1 612 766 8860

FaegreBD.com<http://www.faegrebd.com/>    Download
vCard<http://www.faegrebd.com/vcard/joel.schroeder.vcf>

FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901, USA

This e-mail message is confidential, is intended only for the named recipient(s) above, and
may contain information that is privileged, attorney work product, or exempt from disclosure
under applicable law. If you have received this message in error, or are not the named
recipient(s), please immediately notify the sender at (612) 766-8860 and delete this e-mail
message from your computer. Thank you.