UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ellen S. Ewald,<br><br>    Plaintiff,<br><br>vs.<br><br>Royal Norwegian Embassy,<br><br>    Defendant. | Civil No. 11-CV-02116 (SRN/SER)<br><br>**AFFIDAVIT OF<br>SEAN R. SOMERMEYER** |

STATE OF MINNESOTA )
         ) ss.
COUNTY OF HENNEPIN )

**Sean R. Somermeyer**, being duly sworn, states as follows:

1. I am one of the attorneys representing Defendant Royal Norwegian Embassy (the "Embassy") in the above-captioned matter.

2. Plaintiff first sent a demand letter to the Embassy in March 2011, and commenced litigation in July 2011. Upon receipt of the demand letter, the Embassy issued a legal hold and took steps to preserve discoverable information.

3. I attended the parties' Rule 26(f) Conference which took place on June 26, 2012. At the conference, the parties discussed that hard-copy and electronic documents would be produced in discovery. There was no discussion by either party of preserving, collecting, or producing anything other than hard-copy documents, emails, and electronic

documents stored on computers (*i.e.* Microsoft Word documents). Plaintiff's counsel did not say anything about mobile phones, text messages, or voicemail messages.

4.   At the Rule 26(f) conference, Plaintiff's counsel presented a Form of Production Agreement ("FOPA"). The FOPA addressed the manner in which hard-copy and electronic documents would be produced in this litigation. The Embassy reviewed the FOPA and agreed to it without modifying any of its terms.

5.   I was contacted by Anders Davidson after he received a subpoena from Plaintiff. Mr. Davidson told me that he had contacted Plaintiff's counsel to discuss how he would respond to the subpoena. Mr. Davidson told me that he spoke with Susanne Fischer, one of Plaintiff's attorneys, and they agreed that Mr. Davidson would search his emails for certain terms, including "Ellen", transfer the search results to a USB drive, and send the USB drive to Plaintiff's counsel. At no time was I told that Plaintiff's counsel asked Mr. Davidson to search for or produce text messages or voice mails and the materials we received from Plaintiff that Plaintiff represented she received in response to her subpoena to Mr. Davidson did not include any text messages or voice mails.

6.   I have communicated with each of the individuals listed in Plaintiff's Document Request No. 29 regarding Plaintiff's request for text messages. Each one of these individuals searched for text messages relating to Plaintiff. Each one of these individuals informed me that they have no text messages in their possession relating to Plaintiff or the Honorary Consulate General in Minneapolis.

7. All of the individuals listed on page 24 of Plaintiff's Memorandum of Law in Support of her Motion to Compel worked for Norway's Ministry of Foreign Affairs ("MFA") at the time of the communications and held positions with responsibilities related to the Honorary Consulate General in Minneapolis. Specifically, Finborud and Slettevold were responsible for coordinating between the MFA in Oslo, the Embassy in Washington D.C., and the Steering Group of Stakeholders that funded Plaintiff's position. Finborud was the chairwoman of the Steering Group. Thorsheim, Brøther and Berge, were each Department-level managers at the MFA in Oslo. Thorsheim and Brøther ran one of the Departments at the MFA, while Berge was one of the MFA's Deputy Directors General. Larsen, Stokke and Gillesdal, were high-level employees within the MFA who dealt directly with the Foreign Minister, Jonas Gahr Støre.

8. At the time of the communications referenced on page 24 of Plaintiff's memorandum, Tove Karin Hatlo was an advisor at the Embassy in Washington who was responsible for employee administration and dealt with issues regarding Plaintiff's health insurance and travel.

9. RNE 63100 is a communication from Morten Aasland who was, at the time of the communication, the MFA's Coordinator for North America. In RNE 63100, Mr. Aasland wrote, in Norwegian: "Please treat what has been circulated here confidentially . . . Not to be forwarded." His email is sent from high-level employees

within the MFA to the department that deals with North America policy under which the Honorary Consulate General Minneapolis falls.

10. I spoke with Christina Carleton on July 31, 2013. Ms. Carleton informed me that at no time during her employment at the Honorary Consulate was she designated as the "note taker" for meetings or any other events.

This concludes my affidavit consisting of four (4) typewritten pages.

                                                s/ Sean R. Somermeyer
                                                Sean R. Somermeyer

Subscribed and sworn to before me
this 5th day of August, 2013.

s/ Nancy A. Meehan
Notary Public
My Commission Expires January 31, 2015
dms.us.52564982.01

4