## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**Case No.: 11-cv-2116 (SRN/SER)**

Ellen S. Ewald,

                Plaintiff,

v.

                                     **ORDER**

Royal Norwegian Embassy,

                Defendant.

---

      Sheila A. Engelmeier, Susanne J. Fischer, Thomas E. Marshall, Esqs., Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, Minnesota 55402, for Plaintiff.

      John B. Gordon, Daniel G. Wilczek, Joel P. Schroeder, Sean R. Somermeyer, Esqs., Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

      The above-captioned case comes before the undersigned on Plaintiff Ellen S. Ewald's ("Ewald") Motion to Compel Discovery ("Motion to Compel") [Doc. No. 106]. This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Motion is denied.

## I.     BACKGROUND

      The details of this employment discrimination action have been described in detail in various other orders. *See, e.g.*, (Mem. Op. & Order Dated Jan. 26, 2012) [Doc. No. 18 at 2–4]. Only those facts relevant to the resolution of this Motion are described below.

### A.      Relevant Factual History

Defendant Royal Norwegian Embassy (the "Embassy") hired Ewald to work at the Honorary Norwegian Consulate in Minneapolis, Minnesota (the "Consulate") and allegedly paid her $40,000 annually less than Anders Davidson ("Davidson"), a male comparator. (Am. Compl.) [Doc. No. 104 ¶¶ 2, 15, 73]. Ewald's position was one of four positions at the Honorary Consulate. (*Id.* ¶ 11). After complaining about the pay disparity, Ewald's contract was not renewed. (*Id.* ¶ 59). Ewald alleges that before and after the completion of her contract term, she was retaliated against and bullied at work. (*Id.* ¶¶ 53, 59). Ewald asserts that Minnesota, federal, and Norwegian law support her claims. (*Id.* ¶¶ 60–117).

### B.      Relevant Procedural History

To date, this case has required eight hearings. (Minute Entry Dated Dec. 15, 2011) [Doc. No. 15]; (Minute Entry Dated May 15, 2012) [Doc. No. 28]; (Minute Entry Dated July 6, 2012) [Doc. No. 33]; (Minute Entry Dated Aug. 24, 2012) [Doc. No. 40]; (Minute Entry Dated Oct. 12, 2012) [Doc. No. 63]; (Minute Entry Nov. 26, 2012) [Doc. No. 74]; (Minute Entry Dated Feb. 27, 2013, "February Minutes") [Doc. No. 96]; (Minute Entry Dated Aug. 12, 2013, "August Minutes") [Doc. No. 122]. Only the instant Motion and the motion heard in February regarding mental health records involve discovery issues. (February Minutes); (August Minutes). Since the February hearing, the parties have managed the discovery process uneventfully. Indeed, since the hearing last October on Ewald's Motion to Amend the Complaint, thousands of documents have been produced and depositions have been taken in Europe and in North America. (Pl.'s Mem. of Law in Supp. of Mot. to Compel Disc., "Ewald's Mem. in Supp.") [Doc. No. 109 at 2–3]; (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Compel, "Embassy's Mem. in Opp'n") [Doc. No. 116 at 7–9]. Furthermore, Ewald hired a Norwegian law firm to

request documents from the Norwegian government under Norway's Public Disclosure Act. (Embassy's Mem. in Opp'n at 8).

At the Rule 16 Conference, the parties were reminded of their obligations to preserve and retain electronically stored information ("ESI"). (Transcript of Excerpt of the Pretrial Scheduling/Settlement Conference ("Tr.") 4:25–5:13, Ex. 2, Attached to Aff. of Joel P. Schroeder in Opp'n to Pl.'s Mot. to Compel, "Schroeder Aff.") [Doc. No. 117-2]. The Court also directed the parties at the inception of discovery to identify sources and custodians of ESI. (*Id.*).

To that purpose, the parties negotiated the Form of Production Agreement ("FOPA") for ESI. (FOPA, Ex. C, Attached to Aff. of Sheila Engelmeier, "Engelmeier Aff.") [Doc. No. 110-3]. The FOPA specified the technical characteristics for ESI production, memorialized the parties' obligation to preserve relevant information, and specified that the parties would provide scanned paper documents and ESI with optical character recognition ("OCR"). (*Id.* at 1). The FOPA did not identify specific sources of ESI nor did it restrict how ESI would be collected. *See generally* (*id.*).

Ewald served her initial interrogatories and document requests in August 2012. (Pl.'s First Set of Interrogs. to Def. Royal Norwegian Embassy, "Ewald's First Set of Interrogs.," Ex. D, Attached to Engelmeier Aff.) [Doc. No. 110-4]; (Pl.'s First Set of Reqs. for Produc. of Docs., "Ewald's First RFP," Ex. E, Attached to Engelmeier Aff.) [Doc. No. 110-5]. Those requests did not specifically request text messages or voicemails and failed to include text messages in the definition of document. *See generally* (*id.*). The Embassy objected to certain requests for production and other aspects of Ewald's discovery in its written responses served on October 5, 2012. (Ewald's Mem. in Supp. at 2–3).

On December 3, the Embassy wrote a letter to the Court, stating that would abide by the Court's final disposition of the case.  (Letter from Daniel G. Wilczek, Counsel to the Embassy, to the Honorable Susan Richard Nelson (Dec. 3, 2012), "Wilczek Letter," Ex. 4 at 1, Attached to Schroeder Aff.) [Doc. No. 117-4].  The letter also included a Diplomatic Note, in which Norway provided "a limited waiver of the inviolability of the archives and documents on file with the Consulate General in Minnesota and the Embassy in Washington[,] D.C. . . ." in the instant case.  (Diplomatic Note No. 62/2012 at 1, the "Diplomatic Note," Attachment A to Wilczek Letter).  Absent this waiver, the archives and documents of the Consulate General are inviolable under the Vienna Convention.  (*Id.*).  The limited waiver permits the Embassy's attorneys to produce documents related to Ewald, Davidson, and their positions at the Consulate.  (*Id.* at 1–2).  The Diplomatic Note states that "Norway will . . . abide by the final and binding decision and judgment of the relevant courts."  (*Id.* at 2).  Although the letter was sent by email, Ewald's counsel are listed as "cc" recipients and therefore had knowledge of the letter and the Diplomatic Note.  (Wilczek Letter at 2).

Starting in December 2012, the Embassy began producing its documents on a rolling basis.  (Ewald's Mem. in Supp. at 2–3); (Embassy's Mem. in Opp'n at 7–8).  Ewald did not challenge the Embassy's limits on the scope of discovery; in fact, no challenge to those limits or to the responsiveness of the Embassy's discovery was made until the eve of a private mediation scheduled in June 2013.  (Embassy's Mem. in Opp'n at 10).

Ewald's current Motion asks the Court to order the production of documents and information, some of which is ESI.  (Mot. to Compel).  Ewald further complains about the searchability of the ESI produced.  (Ewald's Mem. in Supp. at 10–12).  The scale of discovery and diligence of the parties in pursuing information in this case, when viewed in the light of the

nature of the dispute, is breathtaking.  Both parties reported at the hearing on this Motion that since the case was filed, they each spent in excess of $750,000 in attorneys' fees and costs litigating this single-plaintiff employment dispute.  If ever a case implicated the proportionality principles and provisions of the Federal Rules governing discovery, this case does.  *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(C)(iii).  With that background, the Court will address each element of Ewald's Motion to Compel.

## II.    DISCUSSION

### A.    Legal Standard

The Federal Rules permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  But discovery is not boundless.  The Court must limit discovery if it finds that:

> (i)     the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

> (ii)    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

> (iii)   the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Fed. R. Civ. P. 26(b)(2)(C).  The Court has broad discretion to decide discovery motions.  *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993).

B.      **Analysis**

1.      **Responses to Interrogatory Numbers 3 and 13 and Requests for Production of Documents Numbers 8 and 19**

Ewald argues the Embassy's responses to Interrogatory Numbers 3 and 13 and Requests for Production of Documents Numbers 8 and 19—which were served on the Embassy in August 2012—are insufficient.  (Ewald's Mem. in Supp. at 4–10).  Generally, those discovery requests seek the identification of any communication about Ewald.  (*Id.*).  The requests themselves do not limit the scope or subject matter of any communication concerning Ewald.  *See* (Ewald's First Set of Interrogs. at 5, 7); (Ewald's First RFP at 5, 6).  In October 2012, the Embassy objected to the scope of these requests.  (Def. Royal Norwegian Embassy's Answers & Objections to Pl.'s First Set of Interrogs., "Embassy's Resp. to First Set of Interrogs.," Ex. G, Attached to Engelmeier Aff.) [Doc. No. 110-7 at 8, 17]; (Def. Royal Norwegian Embassy's Objections & Resps. to Pl.'s First Set of Reqs. for Produc. of Docs., "Embassy's Resp. to First RFP," Ex. H, Attached to Engelmeier Aff.) [Doc. No. 110-8 at 8, 13].

Each of the requests together with the Embassy's objections should have compelled Ewald to propose either a narrowing of the scope of the requests to issues concerning Ewald's performance at work or any other issue that would have related to the pay disparity that is central to this case.  Although Ewald attempted to narrow the scope of some of her requests, it was not until seven months later.  *See* (Ewald's Mem. in Supp. at 7–8).  The Embassy cannot now be forced to supplement or respond to discovery requests where Ewald waited seven months to advise the Embassy that she believed its responses were deficient.

2.      **Documents Related to Gender Discrimination and Unequal Pay**

In Interrogatory Number 18 and Request for Production of Documents Number 24, Ewald requested documents related to any complaints of gender discrimination and unequal pay.

(Ewald's First Interrogs. at 7); (Ewald's First RFP at 7). Again, in October 2012, the Embassy objected to those requests. (Embassy's Resp. to First Set of Interrogs. at 23); (Embassy's Resp. to First RFP at 15). In response, Ewald suggests that such a pay disparity might show knowledge of the discrimination and failure to act on that knowledge. (Ewald's Mem. in Supp. at 26). Ewald renewed her request following the deposition of a Norwegian Embassy official. (*Id.* at 27). The Embassy produced some additional notes, but stated that complaints not particular to Ewald are not relevant. (*Id.*).

Generalized requests for worldwide discovery of all complaints of inequitable payment or treatment of women could not possibly lead to the discovery of admissible evidence regarding a claim involving a disparity between a man and a woman working at the Consulate in Minneapolis, Minnesota. *See* Fed. R. Civ. P. 26(b)(1). There is no suggestion that any discovery relating to past claims of inequitable treatment or pay of women would relate to anyone that was similarly situated to Ewald. On that basis alone, the discovery requests are over broad and the Embassy's objections are sustained.

### 3.      Documents Related to Wage Statistics, Studies, and Surveys

After the deposition of a cultural and communications officer for the Embassy, Urd Milbury, Ewald requested that the Embassy produce several additional documents. (Ewald's Mem. in Supp. at 28–30); (Embassy's Mem. in Opp'n at 20). Specifically, Ewald requested documents related to wage statistics, a study of wage disparity issues in Norway's New York mission, a Power Point presentation about wage disparity issues in Norwegian missions, and worldwide working environmental surveys conducted in 2011 and 2013 related to bullying. (Ewald's Mem. in Supp. at 28–30).

These additional requests exceed the scope of the limited waiver the Embassy provided the Court and Ewald in December 2012.  (Diplomatic Note).  Pursuant to international law and treaty, the Diplomatic Note limits the scope of the Embassy's discovery responses to materials relevant to Ewald and Davidson.  (*Id.*).  Ewald became aware of this fact in December 2012 when the Embassy's counsel copied her counsel on its email to Judge Nelson.  (Wilczek Letter at 2).  Additionally, the relevance of these requests to this single-plaintiff case arising out of employment in Minneapolis, Minnesota is attenuated at best.[1]

### 4.    Responses to Interrogatory Numbers 21 and 22 and Request for Production of Document Number 30

In June 2013, Ewald served Interrogatory Numbers 21 and 22 and Request for Production of Documents Number 30.  (Ewald's Mem. in Supp. at 15–17); *see also* (Pl.'s Second Set of Interrogs. to Def., "Ewald's Second Set of Interrogs.," Ex. J., Attached to Engelmeier Aff.) [Doc. No. 110-10 at 5–6]; (Pl.'s Second Set of Reqs. For Produc. of Docs., "Ewald's Second RFP," Ex. K, Attached to Engelmeier Aff.) [Doc. No. 110-11 at 5–6].  These discovery requests all relate to ESI issues and are all issues that the Court directed the parties to address and negotiate in mid-summer of 2012.  *See* (Tr. 4:25–5:13); (Ewald's Mem. in Supp. at 15–17).  Presumably, these were issues that should have been contemplated in the course and scope of negotiating the FOPA.  They were not and Ewald's attempt, at the close of discovery, to ascertain additional information about this fundamental part of any ESI discussion is too late.  Further, it is burdensome and unlikely to lead to any discoverable information at this late juncture in the

---

[1]    With respect to the bullying surveys, Ewald argues that the Court's order permitting her to amend her complaint "was issued after discovery needed to be commenced in time to be completed by July 3, 2013."  (Ewald's Mem. in Supp. at 29).  While Ewald's claim added additional claims, it added few if any additional facts.  (Redline of Am. Compl., Ex. B, Attached to Aff. of Shelia Engelmeier) [Doc. No. 45].  Therefore, the facts at issue—and eligible for discovery—have not changed as a result of the Amended Complaint.

litigation because the Embassy has already produced almost 90,000 documents, the parties have deposed key witnesses, and dispositive motion practice—perhaps even trial—is imminent. *See generally* (Order Dated May 23, 2013) [Doc. No. 102] (modifying scheduling order).

### 5.   ESI Requests Regarding Laptops, Phones, and Associated Electronic Media

Ewald's final ESI issue concerns requests for forensic images of laptops, phones, memory cards, tablets, and text messages. (Ewald's Mem. in Supp. at 17–21). These requests are denied. First, requesting this information so long after the production of tens of thousands of documents and the depositions of nine witnesses is an attempt to amend the FOPA and revisit all of the ESI issues the Court urged the parties to negotiate and address in the FOPA under their obligations in drafting and formulating a Rule 26(f) report. It is not a surprise to any of the parties in this case that there were tablets, text messages, cell phones, and laptops involved. All of these devices were known prior to the initiation of litigation, and it is common knowledge that ESI is contained on all of these devices. Nevertheless, they were not included in any initial discovery discussions. To go back and engage in discovery with respect to those devices at this stage in the litigation and in light of the expenses and costs the parties have already incurred is simply not feasible. Allowing additional discovery would eviscerate Rule 26's concept of proportionality.

### 6.   Designation of Discovery Responses

Ewald argues that the Embassy is required to designate which documents are responsive to which requests for production of documents. (Ewald's Mem. in Supp. at 12–15). This attempt to do discovery on the discovery and to impose additional burdens on the Embassy after an agreement to produce documents on a rolling basis and after an identification and imposition of what the parties would and would not produce is not feasible nor is it proportional. It violates

the basic letter of the Federal Rules, which require that documents must be produced in the usual course of business, in the forms in which they are ordinarily maintained, and in only one form unless otherwise stipulated by the parties.  Fed. R. Civ. P. 34(b)(2)(E).  Given that all of the documents are OCR searchable and the parties negotiated the FOPA, requiring this additional step is unquestionably burdensome.

### 7.    Privileged Documents

Finally, Ewald challenges certain documents the Embassy redacted prior to production. (Ewald's Mem. in Supp. at 22–25).  The redactions stem from the Embassy's assertion that the information contained therein is work-product or attorney-client privilege.  (*Id.*).  When a party objects to part of a request for documents or ESI, it must specify to what part of the request it objects and permit inspection of the rest.  Fed. R. Civ. P. 34(b)(2)(C).  A party claiming privilege must make the claim and "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim."  Fed. R. Civ. P. 26(b)(5)(A).  In modern legal practice, parties asserting privilege typically produce a privilege log that satisfies the requirements of the Federal Rules and gives the receiving party sufficient information to assess the claim of privilege.  *Bartholomew v. Avalon Capital Group, Inc.*, 278 F.R.D. 441, 447 (D. Minn. 2011) (MJD/AJB) (privilege log that described "Author/Source, Recipient(s), CC(s), Date, Description, Privilege Asserted, and Beginning of Bates Number of Produced Version[]" complied with the Federal Rules).

The Embassy did not produce a privilege log in connection with producing the redacted documents.  When Ewald raised issues with the redactions, the Embassy responded by letter. *See* (Letter from Joel P. Schroeder, Counsel for the Embassy, to Sheila Engelmeier, Counsel for

Ewald (July 26, 2013), Ex. DD, Attached to Engelmeier Aff.) [Doc. No. 110-34 at 4–5]. The Embassy must articulate, as they would in any privilege log, the reason for and basis of any assertion of privilege in those documents that are redacted.

The Court therefore orders that, within thirty (30) days of this Order, the Embassy must produce a privilege log for those documents where Ewald's Motion challenges the Embassy's privilege claims. The Court encourages the Embassy to provide as much information as it can to permit Ewald to make an assessment on the claim of privilege. Within thirty (30) days of the production of the privilege log, the parties must meet and confer in person or by phone to attempt to resolve their dispute about this issue. Following the meet-and-confer, the parties must notify the Court by joint letter filed via CM/ECF whether the dispute is resolved or whether further Court action is needed. If further Court action is needed, the Embassy must submit the disputed documents and accompanying privilege log to the Court for *in camera* review.

## III.   CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. To the extent Ewald moves this Court to Order the Embassy to remove redacted information, Plaintiff Ellen S. Ewald's Motion to Compel Discovery is [Doc. No. 106] is **DENIED without prejudice** as follows:

    a. Defendant Royal Norwegian Embassy must produce a privilege log to Plaintiff Ellen S. Ewald within thirty (30) days from the date of this Order.

    b. No later than thirty (30) days after the production of the privilege log, the parties must meet and confer in person or by phone.

      c.      Following the meet-and-confer, the parties must submit a joint letter by CM/ECF stating:

          i.      Whether the dispute is resolved, and

          ii.      If the dispute is not resolved, a list of documents that must be reviewed.  The Embassy must submit the unredacted documents and its privilege log for *in camera* review.

2.      Plaintiff Ellen S. Ewald's Motion to Compel Discovery is [Doc. No. 106] is **DENIED** in all other respects.

Dated: October 8, 2013

                                  *s/Steven E. Rau*
                                  STEVEN E. RAU
                                  United States Magistrate Judge