UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Ellen S. Ewald, | Civil No. 11-cv-02116 (SRN/SER) |
| Plaintiff, | **PLAINTIFF'S OBJECTION TO MAGISTRATE JUDGE RAU'S OCTOBER 8, 2013 ORDER DENYING PLAINTIFF'S MOTION TO COMPEL DISCOVERY** |
| vs. | |
| Royal Norwegian Embassy, | |
| Defendant. | |

## INTRODUCTION

Plaintiff Ellen Ewald ("Plaintiff") objects to Magistrate Judge Steven Rau's October 8, 2013 Order denying Plaintiff's Motion to Compel Discovery. (DOC #129). Specifically, Plaintiff objects to the denial of her request to compel Defendant Royal Norwegian Embassy ("Defendant" or the "Embassy") to produce documents related to gender discrimination and unequal pay, wage statistics and surveys of Defendant's employees, produce the mobile phones of key employees of Defendant, Plaintiff's laptop and designate documents to specific interrogatories and document requests produced by Defendant.

## STATEMENT OF FACTS[1]

Plaintiff moved to compel the Embassy to fully respond to Plaintiff's discovery requests. In his October 8, 2013 Order, Magistrate Judge Rau denied Plaintiff's motion

---

[1] For a complete statement of the facts, Plaintiff refers this Court to Doc. No. 109; No. 121. (Documents, including memoranda and affidavits/declarations are identified by their filed document number.)

in all respects, with the exception of her request that the Embassy remove redactions that are not protected by privilege. Magistrate Judge Rau ordered that the Embassy produce a privilege log of the redacted documents, and directed the Parties to engage in subsequent steps to attempt to resolve that issue.[2]

Plaintiff's discovery requests sought information relevant to this lawsuit within the Embassy's care, custody and control. The information and documents requested from Defendant, including communications between Embassy leadership and with others, about Plaintiff, and her complaints about unequal pay, benefits, retaliation, responses to her complaints, mistreatment of her after her complaints, and decisions regarding her continued employment, as well as complaints by others similarly situated go to the heart of her claims. The objection to Magistrate Judge Rau's decision should be granted requiring the Embassy to produce Plaintiff's work cell phone, Plaintiff's laptop that "died" in January 2010, evidence regarding statistics relating to unequal pay, prior gender discrimination complaints and surveys related to bullying at the Embassy. In addition, this Court should allow Plaintiff to subpoena local phones.

## ARGUMENT

Under Rule 72(a) and Local Rule 72.2(a), this Court shall consider the Magistrate Judge's ruling and "shall modify or set aside any portion … found to be clearly erroneous or contrary to law." *Id.*

---

[2] Plaintiff does not object to Magistrate Judge Rau's order regarding redactions of documents.

#25000

**I.   Documents Related to Gender Discrimination and Unequal Pay, and Documents Related to Wage Statistics, Studies, and Surveys.**

In Parts 2 and 3 of his Order on Plaintiff's Motion to Compel, Magistrate Judge Rau denied Plaintiff's request for wage information of other Embassy workers and documents regarding wage statistics, studies, surveys and complaints of pay disparity based on gender. Defendant can easily access this information as it had produced documents regarding wage information for Plaintiff and Anders Davidson but redacted the information for other Embassy employees. Plaintiff only learned through depositions near the close of discovery that responsive documents to her discovery existed. (DOC #109/pp-26-30). Other female Embassy local employees, Urd Milbury for example, were promised one salary in interviews and then paid thousands less than their male co-workers. (DOC #110-39/EX-HH). Even the Minnesota consuls described Plaintiff's gender disparity as "unjust and embarrassing." (DOC #95/Ex-B). The requested pay information will show Defendant's past and continuing practices to pay women less than men in its Embassy. Magistrate Judge Rau's ruling demonstrates clear error.

**A.   The Ruling Defies Eighth Circuit Precedent.**

Magistrate Judge Rau, without citing any legal authority, considered the information irrelevant, and specifically found the inequitable wage treatment of other women working for the Embassy as "attenuated at best." (DOC #129/p-8). The Eighth Circuit considers such information quite relevant to claims such as those brought here.

In *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097 (8th Cir. 1988), *superseded on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104

3

#25000

L.Ed.2d 268 (1989), *as stated in Foster v. University of Ark.*, 938 F.2d 111, 115 (8th Cir. 1991), the Eighth Circuit reversed similar evidentiary exclusions in a race discrimination suit. The Court wrote:

> The effects of blanket evidentiary exclusions can be especially damaging in employment discrimination cases, in which plaintiffs must face the difficult task of persuading the fact-finder to disbelieve an employer's account of its own motives.... Circumstantial proof of discrimination typically includes unflattering testimony about the employer's history and work practices—evidence which in other kinds of cases may well unfairly prejudice the jury against the defendant. In discrimination cases, however, such background evidence may be critical for the jury's assessment of whether a given employer was more likely than not to have acted from an unlawful motive. *Estes*, 856 F.2d at 1103.

"Because an employer's past discriminatory policy and practice may well illustrate that the employer's asserted reasons for disparate treatment are a pretext for intentional discrimination, this evidence should normally be freely admitted at trial." *Hawkins v. Hennepin Technical Center*, 900 F.2d 153. 155-6 (8th Cir. 1990) *cert. denied*, 498 U.S. 854 (1990); s*ee also Phillip v. ANR Freight Systems, Inc.*, 945 F.2d 1054, 1056 (8th Cir. 1991); EEOC Compliance Manual Chapter 10, Compensation Discrimination, Section 10-III (A)(Investigators are expected to acquire information on similarly situated employees "both inside and outside the charging party's protected class" and information about an employer's "general system for compensating its employees" including "job evaluation studies, reports, or other analyses made by or for the employer with respect to its method of compensation and pay rates"). The materials should be produced.

4

#25000

### B. The "Diplomatic Note" Should Not Shield Relevant Discovery.

Magistrate Judge Rau also precluded discovery of this relevant information based upon a September 27, 2012 Diplomatic Note sent by the Embassy to the U.S. State Department. This note was originally provided to the Court on December 3, 2012 to allay the Court's concerns on execution immunity, not Defendant's intention to obstruct relevant discovery. Defendant now asserts that records of wage statistics and studies are inviolable under the Note. The issue was raised during oral argument and, while Plaintiff requested an opportunity to brief the issue, the Magistrate Judge declined. (T. 11).[3] The Magistrate Judge did state that the District Judge would ultimately be deciding this issue. (T. 9-10).

> The Diplomatic Note itself states:
>
> Without prejudice to these immunities, Norway will nevertheless abide by the final and binding decision and judgment of the relevant courts. Without prejudice to the said immunities, it is the duty of all persons enjoying diplomatic or consular immunities to respect the laws and regulations of the receiving state.

As noted above, wage information of other employees and wage statistics and studies are relevant and admissible under the law in this Circuit. Furthermore, in its contract of employment with Plaintiff, Defendant expressly provided for the application of the laws of Minnesota and the United States to apply to her employment.[4] (DOC #133-3/Ex-EE/p-14). "[A]t the very least it is clear that a sovereign party has waived immunity where a contract specifically states that the laws of a jurisdiction within the

---

[3] Reference to the August 12, 2013 hearing transcript on Plaintiff's Motion to Compel Discovery is referenced as (T. __).
[4] Plaintiff's employment contract is not in dispute.

United States are to govern the transaction." *Joseph v. Office of the Consulate General of Nigeria*, 830 F.2d 1018, 1022 (9th Cir. 1987); *see also* EEOC Enforcement Guidance on Application of Title VII and the Americans with Disabilities Act to Conduct Overseas and to Foreign Employers Discriminating in the United States.  Defendant should not be permitted to hide behind a diplomatic note to withhold relevant evidence when it has waived its immunity on these issues.

Moreover, Plaintiff questions whether the court should review the materials as to whether they are truly protected by the Diplomatic Note and the sections of the Vienna Convention recited.  The wage information is not secret and, even in Norway, persons may have access to information on request, such as tax records of individuals.  Defendant surveyed its employees on wage disparity and workplace bullying, issues highly relevant to this lawsuit.  The information should be disclosed.

## II.     Mobile Devices, Laptops and Associated Electronic Media are Relevant and Should be Ordered to be Produced.

Magistrate Judge Rau should have ordered Defendant to produce the mobile phones of key employees of Defendant.  While such request was made after the production of thousands of documents, Magistrate Judge Rau also recognized that "It is not a surprise to any of the parties in this case that there were tablets, text messages, cell phones, and laptops involved."  (DOC #129/p-9).  Therefore, Defendant should have produced that electronic data or searched it for relevant data.  The failure to do so should not be rewarded.

6

#25000

With respect to the timing of the request for text messages, Plaintiff made the general request initially in her discovery requests, and more specifically after analysis of the almost 90,000 pages of documents produced by Defendant.  Defendant advised (for the first time) it did not preserve *any* information from mobile devices (e.g., text messages) in August of 2013.  (T. 46, 57).  Electronic messages were involved from the beginning as Plaintiff reminded Defendant to preserve "**all electronically-stored information** as well as physical information."  (DOC #110-1/Ex-A) (emphasis added).  The initial discovery defines "document" as "communications … notes … electronic mail … voice mail … **electronic records of any sort** … recording of any conversation, and **any information stored on an information storage device**"  (DOC #110-4/Ex-D/p-2; DOC #110-5/Ex-E/p-2) (emphasis added) and "communication" as … **electronic or video mailing**, … **e-mails and other transmissions**, and **all other written or oral conveyances of documents or information between or among persons**.  (*Id.*/Ex-D/p-3) (emphasis added).  Further, Document Request No. 19 seeks "any communications, oral or otherwise" and "notes of any telephone conversations … **cell phone** and/or other telephone records."  (DOC #110-5/Ex-E/p-6) (emphasis added).

Defendant knew mobile devices were relevant because it stored Plaintiff's device with its forensic expert, Stroz.  (DOC #120/¶4).  Significantly, Stroz has "securely stored" Plaintiff's mobile phone and maintains possession of it.  (DOC #120/¶4).  Stroz's normal protocol for mobile devices involves multiple collections …using different tools to ensure extraction of "as much data as possible."  (DOC #120/¶13).

Yet, Defendant extracted <u>no</u> data from mobile devices. There is no excuse for this failure to produce relevant evidence and it should be produced now.

Defendant decided not to preserve mobile device electronic data despite its duty. *See*, *E\*TRADE Securities LLC v. Deutsche Bank AG, et al.*, 230 F.R.D. 582 (D. Minn. 2005). "The duty to preserve evidence arises … before litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Wagoner v. Black & Decker (U.S.), Inc.*, 2006 WL 2289983 at 3 (D. Minn. 2006), *citing Silverstri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001). The preservation duty applies to mobile devices. *See*, *Gilley v. Eli Lilly & Co.*, 2013 WL 1701066 (E.D. Tenn.) (finding a party's duty to preserve digital evidence on mobile device even when no discovery request specifically requested it); *Barette Outdoor Living, Inc. v. Michigan Resin Representatives*, 2013 WL 3983230 (E.D. Mich.) (requiring preservation by party using cell phone to communicate regarding issues relevant to the case).

In addition, Plaintiff requested time to subpoena cell phones from her local co-workers Christina Carleton[5] and Anders Davidson, which was denied by Magistrate Judge Rau.

Magistrate Judge Rau concluded that to conduct discovery of the mobile devices "at this stage in the litigation and in light of the expenses and costs the parties have already incurred is simply not feasible." (DOC #129/p-9). At the very least, Plaintiff requests the Court order the Embassy to produce the cell phone of Plaintiff since the

---

[5] Plaintiff asserted that she and Ms. Carleton texted one another on a number of issues related to this case. (DOC #113; *see also* DOC #109/p-21).

8

#25000

phone is maintained but has not been reviewed. Plaintiff also requests time to subpoena the mobile phones of local employees of the Embassy, including current employee Ms. Carleton and former employee Mr. Davidson. Plaintiff will undertake all costs and expenses to conduct this discovery and there is no burden on Defendant. The proportionality argument does not apply to this request since there is no cost to Defendant.

### III. This Court Should Order Defendant to Produce Plaintiff's Initial Laptop, Which "Died" in Late January, 2010.

Defendant should have preserved both laptops Plaintiff used while working for Defendant. On January 29, 2010, Plaintiff wrote to Embassy leader Johan Vibe about her laptop crashing. The following admitted facts occurring prior to that time demonstrate Defendant should have known that laptop was relevant to potential litigation:

1. Messrs. Mondale and Gandrud wrote to superiors in September 2009 describing gender inequity and Plaintiff's pay compared to Davidson's as unjust and embarrassing. (DOC #95/Ex-B);
2. Plaintiff complained to Strommen about discrimination/illegal treatment by December 30, 2009 letter. (DOC #133-4/Ex-EE/Dep. Ex-45);[6]
3. On December 31, 2009, Gandrud communicated with Strommen about Plaintiff's letter (not written by her, thereby suggesting Plaintiff had counsel). (Gandrud Dep. p. 235, Ex-46);
4. Gandrud stating Plaintiff's concerns relate to matters of Norwegian law on December 30, 2009. (Gandrud Dep. p. 240, Ex-47); and
5. On January 5, 2010, Gandrud had lunch with Plaintiff dissuading her from litigation and he told others in leadership he was successful in dissuading Plaintiff from litigation. (Gandrud Dep. p. 244, Ex-48).

---

[6] The reports contained in this section are not in dispute. They were authored by Plaintiff (Dep. Ex. 45) and Gandrud (Dep. Exs. 41, 46-48).

#25000

Despite the foregoing clear duty to preserve and the undisputed reference to computer evidence in the FOPA (DOC #110-3/Ex-C), Defendant has not produced either Plaintiff's initial laptop or any information therefrom.

## IV.     This Court Should Order Defendant to Designate.

Unless otherwise agreed, Rule 34(b)(2)(E)(i) requires parties either to produce documents as they are kept in the "usual course of business" or designate documents as responsive to particular requests.  Here, Defendant did neither.  Furthermore, Rule 34(a)(1)(A) requires production in a "reasonably useable form."

President and CEO of Shepherd Data, Christine Chalstrom, a 20-year legal technology veteran, submitted a Declaration (DOC #112), addressing both points. Chalstrom described the difficulties using Defendant's documents (e.g., a large number of the Norwegian documents produced by Defendant were not searchable, due to garbage characters) (DOC #112/¶¶12-20).  Importantly, Chalstrom concluded the metadata submitted by Defendant did not match the original source data and, therefore, Defendant's document production did not provide data as it existed "in the usual course of business."  *Id*. at ¶¶32-33.

Defendant inaccurately asserts it followed the parties' stipulated ESI protocol, as set forth in the FOPA.  The parties did not stipulate to producing mixed data encoding. (DOC #119/¶12; DOC #110-3/Ex-C).  The parties <u>did</u> stipulate to a production compatible with Relativity.  *Id.*  The documents, as produced by Defendant, were not compatible with Relativity.  (DOC #112/¶¶13-16).  When Defendant produced

10

#25000

documents with mixed encoding resulting in garbage characters, it chose to produce documents in a way that was not as agreed, without advising Plaintiff it had done so.

Defendant did not rebut Chalstrom's statements in its response to the Motion to Compel. Instead, Defendant merely argued the produced documents complied with the FOPA and the production issues did not impact the "integrity" of the documents. (DOC #116/p-12). These arguments should fail. When the produced document does not match the source document, integrity is an issue.

Defendant also argues the compatibility issues were resolved when, after the Motion to Compel, it produced new load files on August 2nd. (DOC #117/¶15). Providing new load files, months after the issue was first raised by Plaintiff in May 2013, and after providing garbage characters initially, should not absolve Defendant from complying with the requirements of Rule 34 regarding designation. Indeed, the only case cited by Defendant on the designation issue (*Agri Star Meat & Poultry LLC v. Moriah Cap., L.P.* 2011 WL 3471241, *10 (N.D. Iowa Aug. 8, 2011)) is inapposite. In *Agri Star*, it was undisputed that the parties agreed not to designate. This is not the case here. Defendant's production was not "in the usual course," and, therefore, Defendant should designate.

## **CONCLUSION**

Magistrate Judge Rau's denial of Plaintiff's Motion to Compel is clearly erroneous. Plaintiff should have the opportunity to obtain appropriate discovery relevant to her specific claims. Plaintiff asks that her objection be sustained and that Defendant be ordered to produce requested discovery.

#25000

Dated: October 22, 2013.        **ENGELMEIER & UMANAH, PA**

By: *s/Thomas E. Marshall*
   Sheila Engelmeier (#175250)
   Thomas E. Marshall (#155597)
   Susanne J. Fischer (#285353)
   12 South Sixth Street, Suite 1230
   Minneapolis, MN  55402
   Telephone:  (612) 455-7720
   Facsimile:  (612) 455-7740
   E-Mail:  sheilae@e-ulaw.com;
   tomm@e-ulaw.com; suef@e-ulaw.com

**ATTORNEYS FOR PLAINTIFF**

#25000