## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ellen S. Ewald,<br><br>        Plaintiff,<br><br>v.<br><br>Royal Norwegian Embassy,<br><br>        Defendant. | Civil No. 11-CV-2116 (SRN/SER)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Thomas E. Marshall, Sheila A. Engelmeier, and Susanne J. Fischer, Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, Minnesota 55402, for Plaintiff.

Daniel G. Wilczek, Joel P. Schroeder, and Sean R. Somermeyer, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

### I.    INTRODUCTION

This matter is before the Court on Plaintiff Ellen S. Ewald's Objection [Doc. No. 139] to Magistrate Judge Steven E. Rau's October 8, 2013, Order [Doc. No. 129] denying Plaintiff's Motion to Compel Discovery [Doc. No. 106]. After reviewing the Magistrate Judge's Order for clear error, the Court, in large part, affirms the Order. The Court respectfully reverses the Order as it relates to discovery of text messages and voice messages contained on certain mobile devices.

## II.    BACKGROUND

The facts of this employment discrimination case are set forth in this Court's Orders of January 26, 2012 [Doc. No. 18], and October 9, 2012 [Doc. No. 57], which are incorporated by reference.  Briefly stated, Plaintiff Ellen Ewald alleges that in July 2008, she applied for the position of Higher Education and Research Officer with Defendant Royal Norwegian Embassy ("the Embassy") at the Honorary Norwegian Consulate General in Minneapolis.  (Am. Compl. ¶ 7 [Doc. No. 104].)  The Embassy had also posted another Minneapolis position (Innovation and Business Development Officer).  (Id.)  According to Ewald, the Embassy informed her that the two positions offered the same salary and benefits, that the two positions were considered "parallel positions," and that the officers in those positions would work as a team.  (Id. ¶¶ 10–11.)  Based on the Embassy's representations, Ewald alleges that she accepted the offer of employment as Higher Education and Research Officer on October 1, 2008, and relocated from Norway to Minneapolis.  (Id. ¶¶ 12–13.)  The Embassy subsequently hired Anders Davidson as the Innovation and Business Development Officer.  (Id. ¶ 15.)

Ewald contends that the Embassy discriminated against her based on gender, alleging several differences in the Embassy's treatment of her and that of Davidson.  (See id. ¶¶ 18, 25, 41, 43–51.)  When Ewald expressed her frustration about the alleged unequal treatment, she contends that the Embassy retaliated against her by not providing sufficient administrative assistance and by further ostracizing her.  (Id. ¶ 41.)   The Embassy informed Ewald that it would not extend her employment contract beyond its October 2011 expiration date.  (Id. ¶ 59.)  Ewald brought this lawsuit against the Embassy in July 2011.  In her

Amended Complaint [Doc. No. 104], Ewald asserts eight claims against the Embassy: promissory estoppel, false representation, gender discrimination, reprisal, retaliatory harassment, violation of the Equal Pay Act, violation of the Minnesota Whistleblower Act, and violation of the Norway Working Environment Act.

The matter currently before this Court concerns a discovery dispute between the parties. Relevant to this dispute are two documents that purport to address the parties' discovery obligations. The first document is the Form of Production Agreement ("FOPA"), which was attached to the parties' joint Rule 26(f) Report. (Rule 26(f) Report, Ex. A [Doc. No. 32-1].) According to the Rule 26(f) Report, the FOPA is meant to address "the handling [of] any issues relating to the disclosure or discovery of electronically stored information, including the form or forms in which it should be produced." (Rule 26(f) Report at 5 [Doc. No. 32].) The second document is a Diplomatic Note issued by the Royal Norwegian Embassy, which was provided to the Court and Ewald's counsel on December 3, 2012. (See Schroeder Aff., Ex. 4, at 1 [Doc. No. 117-4].) Pursuant to the Diplomatic Note, the Kingdom of Norway provided "a limited waiver of the inviolability of the archives and documents on file with the Consulate General in Minnesota and the Embassy in Washington D.C." for purposes of this litigation. (Id. at 3.)

According to the parties, tens of thousands of pages of documents have been produced in this case, and multiple depositions have been taken in the United States and abroad. (See Pl.'s Mem. of Law in Supp. of Mot. to Compel Disc. ("Pl.'s Supp. Mem."), at 2 [Doc. No. 109]; Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Compel ("Def.'s Opp'n Mem."), at 7–9 [Doc. No. 116].) However, Ewald contends that the Embassy's discovery

responses have been deficient in several respects, and, on July 29, 2013, Ewald brought a Motion to Compel Discovery [Doc. No. 106]. Ewald filed a memorandum [Doc. No. 109] and five affidavits [Doc. Nos. 110–114] in support of her motion. Specifically, Ewald challenged: (1) the Embassy's responses to requests seeking information about communications regarding Ewald's employment and the claims in this litigation (Interrogatory Nos. 3 and 13 and Document Request Nos. 8 and 19); (2) the Embassy's failure to designate the discovery request to which each document in its production corresponds; (3) the Embassy's failure to detail its methods of document preservation, collection, processing, and production (Interrogatory Nos. 21 and 22 and Document Request No. 30); (4) the Embassy's failure to produce certain laptops and mobile phones (Document Request Nos. 27 through 29); (5) the Embassy's failure to produce text messages; (6) the Embassy's redactions of information in its responses; (7) the Embassy's failure to produce information regarding other complaints of discrimination made by females to the Norwegian Foreign Service ("NFS") (Interrogatory No. 18 and Document Request No. 24); and (8) the Embassy's failure to produce information regarding gender equity and bullying at NFS (Interrogatory Nos. 19 and 20 and Document Request No. 25). The Embassy filed a brief [Doc. No. 116] and multiple affidavits [Doc. Nos. 117–120] in opposition to the motion, and Ewald filed a reply brief [Doc. No. 121].

The motion to compel was heard by the Magistrate Judge, who issued an Order on October 8 denying Ewald's motion. (Order dated Oct. 8, 2013 ("Oct. 8 Order"), at 11–12 [Doc. No. 129].) With the exception of the portions of the Magistrate Judge's Order regarding the Embassy's alleged failure to detail its methods of document preservation and

production[1] and the Embassy's redaction of documents,[2] Ewald objects to the Magistrate Judge's ruling.  (See Pl.'s Obj. to Oct. 8, 2013 Order Denying Pl.'s Mot. to Compel Disc. ("Pl.'s Objs."), at 2 [Doc. No. 139].)  In turn, the Embassy argues that Ewald's objections should be overruled.  (See Def.'s Resp. to Pl.'s Objs. ("Def.'s Resp."), at 2 [Doc. No. 140].)

## III.     DISCUSSION

### A.     Standard of Review

Discovery-related motions are nondispositive motions.  D. Minn. LR 7.1(b)(4)(A).  "The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential."  Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).  The Court must affirm the order unless it is "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); accord D. Minn. LR 72.2(a)(3).  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  United States v. U.S. Gypsum Co., 333 U.S. 364, 395 (1948).  If the magistrate judge's account of the evidence is plausible in light of the record viewed in its entirety, the reviewing court may not reverse it even though had it

---

[1]     Ewald does not mention this issue in her objections.  Therefore, the Court affirms the Magistrate Judge's denial of Ewald's motion to compel information relating to the Embassy's document preservation, collection, processing, and production.

[2]     The Magistrate Judge ordered the Embassy to produce a privilege log and the parties to meet and confer and inform the Court whether the dispute has been resolved.  (Oct. 8 Order at 11–12 [Doc. No. 129].)  If the dispute is not resolved, the parties must submit a list of documents to be reviewed in camera.  (Id. at 12.)  Neither party objects to this portion of the Magistrate Judge's Order.  (See Pl.'s Obj. to Oct. 8, 2013 Order Denying Pl.'s Mot. to Compel Disc., at 2 n.2 [Doc. No. 139]; Def.'s Resp. to Pl.'s Objs. at 3 n.1 [Doc. No. 140].)  Therefore, the Court affirms the Magistrate Judge's ruling on this

been sitting as the trier of fact, it would have weighed the evidence differently.  <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 573–74 (1985).

### B. Objections

#### 1. Complaints against the NFS and NFS studies

Ewald objects to the Magistrate Judge's denial of her motion as it relates to requests for information about other complaints of discrimination made by females against the Norwegian Foreign Service and information about gender equity and bullying at NFS.  (<u>See</u> Pl.'s Objs. at 3 [Doc. No. 139]; Oct. 8 Order at 6–8 [Doc. No. 129].)  Specifically, those requests include Interrogatory Nos. 18 through 20:

> **<u>INTERROGATORY NO. 18</u>:**
>
> Identify all other claims of inequitable treatment of females, whether by compensation or otherwise, made to Norwegian Foreign Service since 2002.
>
> **<u>INTERROGATORY NO. 19</u>:**
>
> Identify the demographics of salary, position, gender, and experience for all positions in the Norwegian Foreign Service.
>
> **<u>INTERROGATORY NO. 20</u>:**
>
> Identify all studies or analysis prepared which concern gender equity in the compensation of employees in the Norwegian Foreign Service.

(Engelmeier Aff., Ex. G, at 23–24 [Doc. No. 110-7]; <u>see</u> Pl.'s Supp. Mem. at 26–29 [Doc. No. 109].)  The relevant requests also include Document Request Nos. 24 and 25:

> **<u>REQUEST NO. 24</u>:**
>
> All complaints of inequitable or discriminatory conduct against females by the Norwegian Foreign Service since 2002.

---

issue.

**REQUEST NO. 25:**

All gender equity studies or analysis regarding salary, position, or otherwise prepared at the Norwegian Foreign Service since 2002.

(Engelmeier Aff., Ex. H, at 15 [Doc. No. 110-8]; see Pl.'s Supp. Mem. at 26–29 [Doc. No. 109].)  The Embassy objected to each of these discovery requests on grounds of relevance and "because [the request] infringes upon the inviolability of the Embassy's archives and documents, and disclosure is not permitted pursuant to international treaty (including Articles 33 and 61 of the Vienna Convention on Consular Relations and Articles 24 and 27 of the Vienna Convention on Diplomatic Relations)."  (Engelmeier Aff., Ex. G, at 23–24 [Doc. No. 110-7]; id., Ex. H, at 15–16 [Doc. No. 110-8].)  Plaintiff claims that she is also entitled to information and surveys regarding workplace bullying.  (See Pl.'s Supp. Mem. at 29–30 [Doc. No. 109].)

The Magistrate Judge determined that Ewald's general requests for worldwide discovery of other complaints of discrimination would not lead to the discovery of admissible evidence because there is no suggestion that the complainants are similarly situated to Ewald.  (See Oct. 8 Order at 7 [Doc. No. 129].)  In addition, the Magistrate Judge found that Ewald's requests for documents and studies containing information about wage statistics, wage disparity, and workplace environment, exceed the scope of the Embassy's Diplomatic Note and are of questionable relevance to Ewald's case.  (See id. at 7–8.)

The Magistrate Judge's denial of Ewald's motion was not clearly erroneous.  Assuming, without deciding, that Ewald's requests for discovery of other discrimination complaints, wage statistics, and studies of wage disparity and workplace environment are

relevant to her claims,[3] such discovery exceeds the scope of the Embassy's waiver of

inviolability under international law.[4]  The Foreign Sovereign Immunities Act ("FSIA")

states:

> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided . . . .

28 U.S.C. § 1604.  One exception to jurisdictional immunity occurs when a foreign state

waives its immunity, either explicitly or by implication.  Id. § 1605(a)(1).  Implied waiver

occurs when "a foreign state has agreed that a contract is governed by the law of a

particular country."  Frolova v. U.S.S.R., 761 F.2d 370, 377 (7th Cir. 1985) (citing H.R.

Rep. No. 1487, 94th Cong., 2d Sess. 18, reprinted in 1976 U.S.C.C.A.N. 6604, 6617; S.

Rep. No. 1310, 94th Cong. 2d Sess. 18.)  However, pursuant to the FSIA's express

---

[3]    The Court questions whether much of this information would, in fact, be discoverable.  "[D]iscovery of information related to prior claims of discrimination is properly limited to the employment practices and classes at issue in the particular case, the facility and people implicated in the allegations, and to a reasonable time period around the alleged discriminatory action."  Jensen v. Astrazeneca LP, No. Civ. 02-4844 (JRT/FLN), 2004 WL 2066837, at *2 (D. Minn. Aug. 30, 2004) (citation omitted).  Thus, courts in employment discrimination cases generally "limit[] the discovery of company records to the local facility where plaintiff was employed, where there is no showing of the need for regional or nationwide discovery."  Sallis v. Univ. of Minn., 408 F.3d 470, 478 (8th Cir. 2005) (citation omitted).  This is because "those who make employment decisions vary across divisions."  Carman v. McDonnell Douglas Corp., 114 F.3d 790, 792 (8th Cir. 1997).  While counsel for Ewald indicated at oral argument that Ewald would be amenable to narrowing the scope of the requests, (see Tr. of Aug. 12, 2013, Hr'g on Pl.'s Mot. to Compel Disc. ("Tr."), at 36:9-24 [Doc. No. 125]), the issue is moot based on the inviolability of the Embassy documents discussed herein.

[4]    While Ewald was denied her request during the hearing on the motion to compel to submit additional briefing on this issue, (see Tr. at 11 [Doc. No. 125]), both parties had the opportunity to brief the issue to this Court in their objections to the Magistrate Judge's Order (or responses to those objections).

language, a foreign state's waiver of immunity to the jurisdiction of the U.S. courts under the FSIA is not synonymous with a waiver of the protections provided by the treaties that pre-date the FSIA and to which the United States is a party.  See 28 U.S.C. § 1604; 767 Third Ave. Assocs. v. Permanent Mission of The Republic of Zaire to the United Nations, 988 F.2d 295, 297 (2d Cir. 1993) (citation omitted) (stating that "the diplomatic and consular immunities of foreign states recognized under various treaties remain unaltered by the [FSIA]"); 14A Wright, Miller & Cooper, Fed. Prac. & Proc. § 3662, at 207 (3d ed. 1998) (stating that the FSIA was not intended to alter diplomatic or consular immunity).

The Second Circuit Court of Appeals, in 767 Third Avenue Associates v. Permanent Mission of The Republic of Zaire to the United Nations, determined that one such treaty is the Vienna Convention on Diplomatic Relations, which was opened for signature in 1961 and was enforceable with respect to the United States in 1972.  See 988 F.2d at 297; see also Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95.  In that case, the Zaire mission to the United States fell into arrears on its rent and was sued by its landlord.  988 F.2d at 296.  The mission asserted diplomatic immunity as a defense to eviction, but the district court rejected that defense and awarded possession of the premises to the landlord.  Id.  The Second Circuit reversed that portion of the district court's order, finding that the plain language of Article 22 of the Vienna Convention on Diplomatic Relations, which states that "'[t]he premises of the mission shall be inviolable'" and contains no relevant exceptions, along with the history and purpose of the treaty, prevented enforcement of the landlord's right to possession.  Id. at 298 (quoting Vienna Convention on Diplomatic Relations, art. 22,

Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95). In support of its holding, the Second

Circuit stated:

> Enforcement of an owner's common law right to obtain possession of its premises upon the tenant's non-payment of rent may not override an established rule of international law. Nor under the guise of local concepts of fairness may a court upset international treaty provisions to which the United States is a party. The reason for this is not a blind adherence to a rule of law in an international treaty, uncaring of justice at home, but that by upsetting existing treaty relationships American diplomats abroad may well be denied lawful protection of their lives and property to which they would otherwise be entitled.

Id. at 296.

In this case, it is true, as Ewald argues, that the Embassy did waive immunity from

the jurisdiction of the U.S. courts by agreeing in Ewald's employment contract that their

"employment relationship shall be governed by the laws of the country in which the

Employee is employed." (Somermeyer Aff., Ex. EE, at 14 [Doc. No. 133-3].) However,

this waiver of immunity under the FSIA does not waive the protections afforded to the

Embassy under treaties that pre-date the FSIA. Here, the Embassy asserted objections to

Interrogatory Nos. 18 through 20 and Document Request Nos. 24 and 25, which seek

information and documents belonging to the NFS, based on Article 24 of the Vienna

Convention on Diplomatic Relations and Article 33 of the Vienna Convention on Consular

Relations.[5] As noted by the Second Circuit, the Vienna Convention on Diplomatic

---

[5] As noted above, the Embassy also asserts objections to these discovery requests based on Article 27 of the Vienna Convention on Diplomatic Relations and Article 61 of the Vienna Convention on Consular Relations. The former treaty provision states that "[t]he official correspondence of the mission shall be inviolable." Vienna Convention on Diplomatic Relations, art. 27, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. The latter provides:

Relations pre-dates the FSIA. Article 24 of that treaty states that "[t]he archives and documents of the mission shall be inviolable at any time and wherever they may be." Vienna Convention on Diplomatic Relations, art. 24, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. Similarly, the Vienna Convention on Consular Relations, which was opened for signature in 1963 and was enforceable with respect to the United States in 1969, pre-dates the FSIA. See Vienna Convention on Consular Relations, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. Article 33 of that treaty states that "[t]he consular archives and documents shall be inviolable at all times and wherever they may be." Id., art. 33. There are no relevant exceptions to this inviolability in either Convention. Therefore, according to the Second Circuit's analysis of identical "inviolability" language found in Article 22 of the Vienna Convention on Diplomatic Relations, compelling the Embassy to produce the requested information would contravene international law.

While the Kingdom of Norway's Diplomatic Note provides "a limited waiver of the inviolability of the archives and documents on file with the Consulate General in Minnesota and the Embassy," the requests at issue exceed the scope of the waiver. (Schroeder Aff., Ex. 4, at 3 [Doc. No. 117-4].) The waiver pertains specifically to documents related to

---

The consular archives and documents of a consular post headed by an honorary consular officer shall be inviolable at all times and wherever they may be, provided that they are kept separate from other papers and documents and, in particular, from the private correspondence of the head of a consular post and of any person working with him, and from the materials, books or documents relating to their profession or trade.

Vienna Convention on Consular Relations, art. 61, Apr. 24, 1963, 21 U.S.T. 77, 596 U.N.T.S. 261. These provisions further support the inviolability of the requested

Ewald and Davidson or to the creation of the Higher Education and Research Officer and

Innovation and Business Development Officer positions:

> (1) documents and other materials contained in the personnel files of former Royal Norwegian Embassy employees Ellen Ewald and Anders Davidson;
>
> (2) any additional e-mail correspondence, either between employees of the Royal Norwegian Embassy and third parties or among Royal Norwegian Embassy personnel, regarding Ellen Ewald and Anders Davidson;
>
> (3) financial and payment records regarding the compensation and benefits of Ellen Ewald and Anders Davidson;
>
> (4) employee handbooks, manuals, benefits information, or policies, both archived and current, applicable to Ellen Ewald and Anders Davidson during the course of their employment;
>
> (5) documents related to the work performed by Ellen Ewald and Anders Davidson as Higher Education and Research Officer and Innovation and Business Development Officer; and
>
> (6) documents related to the creation of the Higher Education and Research Officer and Innovation and Business Development Officer positions.

(Id. at 3–4.)  The discovery requests at issue, however, seek information and documents

related to individuals other than Ewald and Davidson and positions other than that of Higher

Education and Research Officer and Innovation and Business Development Officer.

Accordingly, this Court affirms the Magistrate Judge's denial of Ewald's motion to

compel as it relates to Interrogatory Nos. 18 through 20 and Document Request Nos. 24

and 25.

---

information discussed above.

## 2.    Designations

Ewald also objects to the Magistrate Judge's denial of her motion as it relates to the Embassy's failure to designate the discovery request to which each document in its production corresponds.  (See Pl.'s Objs. at 10–11 [Doc. No. 139].)  According to Rule 34 of the Federal Rules of Civil Procedure:

> Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i)    A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request . . . .

Fed. R. Civ. P. 34(b)(2)(E) (emphasis added).  The Magistrate Judge found that, because the documents are searchable and the parties are operating under the negotiated FOPA, requiring the Embassy to designate its documents would violate Rule 34.  (See Oct. 8 Order at 9–10 [Doc. No. 129].)

The Magistrate Judge's decision is not clearly erroneous.  The parties submitted a Form of Production Agreement in which they agreed to produce "scanned/paper documents and electronically stored information" in a particular manner.  (Rule 26(f) Report, Ex. A, at 1 [Doc. No. 32-1].)  The FOPA does not address designation of documents.  However, because the parties stipulated to a particular form of production, neither party was required to comply with Rule 34.

Moreover, Ewald explicitly states that she is not alleging that the Embassy is intentionally withholding relevant electronically stored information (other than the mobile device data discussed below).  (See Pl.'s Reply Mem. in Supp. of Mot. to Compel Disc.

("Pl.'s Reply Mem."), at 5 [Doc. No. 121].)  Rather, she asserts that there are technical

issues with the Embassy's production, which make it difficult to search the documents.

(See id. at 5–6; Pl.'s Objs. at 10–11 [Doc. No. 139].)  However, the parties met in July to

discuss the issues, and the Embassy provided Ewald with updated files on August 2.  (See,

e.g., Buntain Aff. ¶¶ 13–14 [Doc. No. 119]; Gleason Aff. ¶ 8 [Doc. No. 120].)  Ewald

acknowledges receipt of the updated files, and she does not indicate that she had any

problems searching them.[6]  (See Pl.'s Reply Mem. at 6 [Doc. No. 121]; Pl.'s Objs. at 11

[Doc. No. 139].)  Instead, she merely asserts that "[p]roviding new load files, months after

the issue was first raised . . . and after providing garbage characters initially, should not

absolve Defendant from complying with the requirements of Rule 34 regarding

designation."  (Pl.'s Objs. at 11 [Doc. No. 139].)  Because neither party was obligated to

designate their documents, and because it appears that the Embassy has addressed the

technical issues with its production, the Court affirms the Magistrate Judge's denial of

Ewald's motion to compel regarding designation of documents.

### 3.    Laptops, mobile phones, and messages

In addition, Ewald objects to the Magistrate Judge's denial of her motion as it relates

to the production of certain laptops and mobile phones, as requested in Document

---

[6]    In fact, Ewald implied in her reply brief in support of her motion to compel that
the new files are fully searchable:  "Plaintiff first received the required metadata on
August 2, 2013 . . . .  Accordingly, the documents produced by Defendant were not fully
searchable until August 2 . . . ."  (Pl.'s Reply Mem. at 6 [Doc. No. 121].)  And, in neither
that document nor her objections to the Magistrate Judge's Order, which were filed over
two and a half months after receiving the updated files, does Ewald state that she was
unable to search the files.

Request Nos. 27 through 29, and text and voice messages.  (See Pl.'s Objs. at 6–10 [Doc. No. 139]; Pl.'s Supp. Mem. at 17–21 [Doc. No. 109].)  The Magistrate Judge determined that the devices and associated electronic media were not part of the initial discovery discussions and that to allow discovery with respect to those devices at this stage of the litigation, and in light of the costs already incurred, would be contrary to Rule 26's concept of proportionality.  (Oct. 8 Order at 9 [Doc. No. 129].)

While this Court agrees in large part with the Magistrate Judge's ruling on this issue, it finds that Ewald is entitled to some of the requested discovery.  Under Rule 26 of the Federal Rules of Civil Procedure, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).  However, the court must limit discovery if it finds that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(C)(iii).  Because Ewald has demonstrated the relevance of certain devices and information and that the burden of production does not outweigh the likely benefit, the Court respectfully reverses the Magistrate Judge's Order in part.  As detailed below, Ewald is entitled to discovery of relevant and responsive text and voice messages from her work-provided mobile phone, as well as relevant and responsive text and voice messages from Gary Gandrud's work-provided mobile phone.

### a. Laptops

In Document Request Nos. 27 and 28, Ewald requests access to her work laptops

and production of the computer forensic images and backup copies of those laptops:

**REQUEST NO. 27:**

Plaintiff requests that you present for review, examination, and analysis the laptop computers used by Plaintiff while employed by Defendant.

. . . .

**REQUEST NO. 28:**

Plaintiff requests that Defendant present the computer forensic images and/or backup copies of the laptop computers used by Plaintiff for analysis of the following:

      a.  E-mail evidence- live/active/nondeleted, deleted, unallocated.
      b.  Applications- installed and uninstalled.
      c.  Software agents and/or scripts used for evidence preservation.

(Engelmeier Aff., Ex. M, at 5–6 [Doc. No. 110-13].)  As to each of these requests, the

Embassy asserted objections based on, among other things, overbreadth, burden,

duplication, and relevance, and then stated:

[I]n October 2012, Plaintiff consented to the Embassy's review of the laptop computer she used during her employment with the Embassy for the purpose of responding to Plaintiff's discovery requests.  The Embassy already conducted that review and produced responsive documents in accordance with the Form of Production Agreement drafted by Plaintiff's counsel and agreed to by the parties.  The Embassy has produced 56,625 pages of documents from Plaintiff's laptop computer.  In addition, Plaintiff has not identified any legitimate basis for a forensic examination.

(Id.)

Ewald contends that the forensic examination is necessary in light of the issues with

the electronic documents produced by the Embassy.  (Pl.'s Supp. Mem. at 18 [Doc. No.

109].)  In addition, she has indicated that she used one laptop through January 2010 and a second laptop for her remaining time at the Embassy, but that the Embassy has produced no information from the first laptop.  (See Pl.'s Objs. at 9–10 [Doc. No. 139].)  The Embassy argues that Ewald first raised the issue of her initial work laptop in her oral argument on this motion and that the Embassy was under no obligation to preserve that laptop in 2010 when it crashed.  (See Def.'s Resp. at 7–9 [Doc. No. 140].)

The Court affirms the Magistrate Judge's Order with respect to these laptops.  As for the more recently-used laptop, the Embassy stated in its responses to Document Request Nos. 27 and 28 that it reviewed that laptop and produced 56,625 pages of documents from that laptop.  Moreover, as discussed above, the issues with the electronic information produced by the Embassy have been addressed, rendering the forensic examination unnecessary.  As for the initial laptop, Ewald has not asserted even a belief that relevant information existed on that computer that has not been produced from other sources.  Therefore, the Court finds that the burden and expense of the requested discovery relating to Ewald's work laptops outweigh its likely benefit.

### b. Mobile phones, text messages, and voice messages

Ewald also seeks access to the mobile phones, memory cards, and tablets used by twelve individuals:

**REQUEST NO. 29:**

Plaintiff requests that you present for review, examination, and analysis the cellular/smart or other phones, memory cards and tablets currently in use and those used by the following individuals between November 1, 2008 and November 1, 2011:  [listing Ellen Ewald, Gary Gandrud, Anders Davidson, Christina Carleton, and eight other individuals].

(Engelmeier Aff., Ex. M, at 6 [Doc. No. 110-13].)  The Embassy asserted the following

objection:

**OBJECTION:**

> The Embassy objects to this request because it is overbroad, unduly
> burdensome, and seeks information that is not relevant or reasonably
> calculated to lead to the discovery of admissible evidence.  The Embassy
> further objects to this request because it seeks confidential diplomatic,
> personal, and/or private information about third parties and matters the
> disclosure of which is not permitted pursuant to applicable law and
> international treaties and conventions.  The Embassy also objects to this
> request to the extent it seeks information protected by the attorney-client
> privilege or the work-product doctrine.  In addition, Plaintiff has not
> identified any legitimate basis for a forensic examination.

(Id. at 7.)  Closely related to this request is Ewald's contention that the Embassy has

neglected to produce text and voice messages responsive to her discovery requests, despite

the broad definition of "document" contained in her document requests:

> The term "document" has the broadest meaning that can be ascribed to it
> pursuant to the Federal Rules of Civil Procedure. . . . Without limiting the
> generality of the foregoing, the term "document includes books, papers,
> letters, telegrams, memoranda, communications, minutes, notes, e-mail,
> electronic mail, voice mail, electronic bulletin board postings, electronic
> records of any sort including metadata concerning such records . . . and any
> kind of transcript, transcription or recording of any conversation, discussion
> or oral presentation of any kind, and any information stored on, and
> reproducible in documentary form from a computer or other electronic,
> magnetic, optical or laser based information storage device . . . .

(Engelmeier Aff., Ex. E, at 2 [Doc. No. 110-5]; id., Ex. K, at 2–3 [Doc. No. 110-11]; see

Pl.'s Supp. Mem. at 19 [Doc. No. 109]; Pl.'s Objs. at 6–9 [Doc. No. 139].)  In particular,

Ewald contests the Embassy's failure to provide this information in response to Document

Request No. 19, which, along with the Embassy's objections, states:

**REQUEST NO. 19:**

All documents that relate to, bear upon or provide evidence of any communications, oral or otherwise, Defendant has had at any time with any current or former agents or employees of Defendant relating to the subject matter of this litigation or the allegations contained in Plaintiff's complaint. This Request includes, but is not limited to, notes of any telephone conversations Defendant or its personnel might have had with such individuals, cell phone and/or other telephone records.

**OBJECTIONS:**

The Embassy objects to this request to the extent it seeks information protected by the attorney-client privilege or the work-product doctrine. The Embassy objects to this request because it is vague, overly broad, and unduly burdensome.

(Engelmeier Aff., Ex. H, at 13 [Doc. No. 110-8]; see Pl.'s Objs. at 7 [Doc. No. 139].)

In her moving papers, Ewald argues that witness' testimony and other evidence establishes that relevant messages exist. (See Pl.'s Supp. Mem. at 18–19 [Doc. No. 109].) For example, she claims that she and Christina Carleton texted one another about issues related to this case, (see id. at 21), and she identifies an email produced by the Embassy in which Gary Gandrud states: "Sorry for my text 'blast.' On my way home, Christina calls, upset with Ellen, then I text while driving home. Sorry. . . . I apologize [sic] the text in the heat of the moment! In the future, I think I'll stick to e-mails!" (Carney Decl., Ex. A, at 1 [Doc. No. 111-1]; see Pl.'s Supp. Mem. at 21 [Doc. No. 109].) In response to the Magistrate Judge's Order, Ewald argues that the Embassy should have been ordered to produce the mobile phones of key employees, but that she is at least entitled to production of her cell phone and time to subpoena the mobile phones of local Embassy employees and former employees, including Carleton and Davidson. (Pl.'s Objs. at 6, 8–

9 [Doc. No. 139].)  Ewald also asserts that she will incur all costs and expenses necessary to conduct this discovery.  (<u>Id.</u> at 9.)

For its part, the Embassy argues that forensic examination of these devices is unnecessary because the technical issues with its document production have been resolved, proportionality considerations prohibit imposition of this additional cost on the Embassy, forensic examination would be intrusive on individual witnesses, and the Embassy cannot force its employees or former employees to produce their personal devices for analysis. (<u>See</u> Def.'s Opp'n Mem. at 28–29 [Doc. No. 116].)  In addition, the Embassy asserts that it did not collect or produce text messages because there was no indication that they would be relevant in this case and that, in any event, its counsel contacted the individuals listed in Document Request No. 29 and none of them possess text messages related to Ewald.  (<u>See</u> <u>id.</u> at 30; Def.'s Resp. at 5–6 [Doc. No. 140].)

This Court affirms in part, and respectfully reverses in part, the Magistrate Judge's Order on this issue.  The Embassy's argument that it was unaware of its obligation to produce text messages is unavailing.  As noted by the Magistrate Judge:  "It is not a surprise to any of the parties in this case that there were tablets, text messages, cell phones, and laptops involved.  All of these devices were known prior to the initiation of litigation, and it is common knowledge that ESI is contained on all of these devices." (Oct. 8 Order at 9 [Doc. No. 129].)  Thus, to the extent Ewald has demonstrated a likelihood that relevant information is contained on certain Embassy-provided devices, this Court finds that the likely benefit of the proposed discovery outweighs its burden and expense, especially in light of Ewald's willingness to incur the expense herself.

Ewald has demonstrated that the scale tips in her favor in regard to two devices: the mobile phones provided by the Embassy to Ewald and Gandrud for work-related purposes.  Therefore, Ewald is entitled to discovery of relevant text messages and voice messages contained on those devices.  While Ewald has asserted that she and Carleton exchanged text messages relating to the allegations in this case, those messages can be obtained from Ewald's phone.  Ewald has made no showing that any relevant information is likely to exist on the work-provided mobile devices of the other individuals listed in Document Request No. 29.  Therefore, the Court will not compel discovery of those devices.  Nor will the Court order production of the personal mobile devices belonging to any witness or allow an extension of time for Ewald to subpoena those devices.  Ewald has not demonstrated her entitlement to such devices, and she has had ample opportunity to conduct that discovery.

Accordingly, within 14 days of the date of this Order, the parties shall meet and confer and agree upon the protocol to be used in conducting a search for responsive text messages and voice messages contained on Ewald's and Gandrud's Embassy-provided mobile phones that were used by those individuals between November 1, 2008, and November 1, 2011.  The search of Ewald's phone, and any related production, shall be conducted at the Embassy's expense.[7]  The search of Gandrud's phone, and any related production, shall be conducted at Ewald's expense.  Both searches must be completed, and relevant documents produced, within 30 days of the date of this Order.

---

[7]     Ewald's work-provided mobile phone has been in the custody of the Embassy's forensic expert since September 30, 2011.  (See Gleason Aff. ¶ 4 [Doc. No. 120].)

### 4. Communications about Ewald's employment and the subject matter of this litigation

Finally, Ewald generally states in her objections that "communications between Embassy leadership and with others, about Plaintiff, and her complaints . . . , responses to her complaints, . . . and decisions regarding her continued employment . . . go to the heart of her claims." (Pl.'s Objs. at 2 [Doc. No. 139].) The Court construes this as a reference to Ewald's Interrogatory Nos. 3 and 13 and Document Request Nos. 8 and 19, which were part of Ewald's motion to compel discovery and which generally seek information about communications regarding Ewald's employment and the claims in this litigation. (See Pl.'s Supp. Mem. at 4 [Doc. No. 109]; Engelmeier Aff., Ex. G, at 8, 17 [Doc. No. 110-7]; id., Ex. H, at 8, 13 [Doc. No. 110-8].) The Magistrate Judge determined that the Embassy's objections to those discovery requests should have compelled Ewald to narrow the scope of her requests at an earlier date and that the Embassy cannot now be forced to supplement its responses. (See Oct. 8 Order at 6 [Doc. No. 129].) Other than the general statement about the relevance of the requested information, Ewald makes no argument that the Magistrate Judge's ruling was clearly erroneous or contrary to law. Therefore, with the exception of the discovery ordered above, this Court affirms the Magistrate Judge's Order as it relates to Ewald's Interrogatory Nos. 3 and 13 and Document Request Nos. 8 and 19.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Objection [Doc. No. 139] to the Magistrate Judge's October 8, 2013, Order [Doc. No. 129] is **OVERRULED IN PART and SUSTAINED IN PART**;

2.      The Magistrate Judge's October 8, 2013, Order [Doc. No. 129] is
        **AFFIRMED IN PART and REVERSED IN PART**, consistent with this
        Order; and

3.      Defendant shall produce relevant text messages and voice messages as
        detailed in this Order.


Dated:  November 20, 2013                    s/Susan Richard Nelson
                                             SUSAN RICHARD NELSON
                                             United States District Judge