# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Ellen S. Ewald,

                Plaintiff,

v.

Royal Norwegian Embassy,

                Defendant.

**Case No.: 11-cv-2116 (SRN/SER)**

**ORDER AND**
**REPORT AND RECOMMENDATION**

---

Sheila A. Engelmeier, Susanne J. Fischer, Thomas E. Marshall, Esqs., Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, Minnesota 55402, for Plaintiff.

John B. Gordon, Daniel G. Wilczek, Joel P. Schroeder, Sean R. Somermeyer, Esqs., Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

---

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Defendant Royal Norwegian Embassy's (the "Embassy") letter dated December 17, 2013, requesting an order regarding the privilege status of two documents (Letter to Mag. Judge Rau, Dec. 17, 2013, the "Privilege Letter," Ex. C, Attached to Aff. of Thomas E. Marshall) [Doc No. 174-1 at 7–8]; the Embassy's Motion to Enforce Compliance with and Provide Sanctions for Violation of Rule 26(b)(5)(B) (the "Embassy's Motion for Rule 26 Sanctions") [Doc. No. 167]; and Plaintiff Ellen S. Ewald's ("Ewald") Motion for Sanctions Due to Spoliation of Evidence ("Ewald's Motion for Spoliation Sanctions") [Doc. No. 184].[1]  This matter has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), (B), and (C), and District of Minnesota

---

[1]    This Court refers to the Embassy's Motion for Rule 26 Sanctions and Ewald's Motion for Spoliation Sanctions collectively as the "Motions for Sanctions."

Local Rule 72.1.  For the reasons set forth below, this Court finds the documents submitted with the Privilege Letter are not privileged, denies the Embassy's Motion for Rule 26 Sanctions, and recommends that Ewald's Motion for Spoliation Sanctions be denied.[2]

## I.   BACKGROUND

The specific details of this employment discrimination action have been described in various other orders.  *See, e.g.*, (Mem. Op. & Order Dated Jan. 26, 2012) [Doc. No. 18 at 2–4].

### A.   Relevant Factual History

The Embassy hired Ewald to work at the Honorary Norwegian Consulate in Minneapolis, Minnesota (the "Consulate") and paid her $40,000 less per year than Anders Davidson ("Davidson"), a male comparator, was paid.  (Am. Compl.) [Doc. No. 104 ¶¶ 2, 15, 73].  Ewald's position was one of four positions at the Consulate.  (*Id.* ¶ 11).  After complaining about the pay disparity, Ewald's contract was not renewed.  (*Id.* ¶ 59).  Ewald alleges that before and after the completion of her contract term, she was retaliated against and bullied at work.  *See, e.g.*, (*id.* ¶¶ 5, 40, 53, 59).  Ewald asserts that Minnesota, federal, and Norwegian law support her claims. (*Id.* ¶¶ 60–117).[3]

### B.   Relevant Procedural History

The matters presently before this Court arise out of this Court's Order on Ewald's Motion to Compel Discovery ("Motion to Compel").  (Mot. to Compel) [Doc. No. 106]; (Order Dated Oct. 8, 2013, "Oct. 2013 Order") [Doc. No. 129].[4]  In that Order, this Court ruled on several

---

[2]   "This Court" refers to the undersigned and matters heard before the undersigned. Because the Honorable Judge Susan Richard Nelson has also heard several matters in this case, this Court specifies those matters that have been before her.

[3]   Ewald's Norwegian claims are no longer a part of this case.  *See* (Mem. Op. & Order Dated Mar. 6, 2014, "Summary J. Order") [Doc. No. 201 at 34–37].

[4]   This Court's most recent Order contains additional procedural history.  (Oct. 2013 Order at 2–5).

discovery issues.  *See* (Oct. 2013 Order).  Two of these discovery matters are relevant to the Privilege Letter and Motions for Sanctions discussed in this Order:[5]  (1) Ewald's challenges to the Embassy's privileged documents, and (2) Ewald's request for production or inspection of mobile phones and laptops.  *See* (Oct. 2013 Order at 9, 10–11).

### 1.      Privilege Issues

In her Motion to Compel, Ewald challenged the Embassy's privilege claim on several documents the Embassy produced during discovery.  *See* (Ewald's Mem. in Supp. of Mot. to Compel Disc., "Ewald's Mem. in Supp. of Mot. to Compel") [Doc. No. 109 at 22–25].  These challenged documents included two emails, Bates numbered RNE 363–64 ("RNE 363") and RNE 63100–03 ("RNE 63100"), that are now the subject of the Privilege Letter.  *See* (*id.*); (Privilege Letter).  In denying Ewald's Motion to Compel, this Court ordered the Embassy to produce a privilege log, required the parties to meet and confer regarding any remaining privilege disputes, and required the Embassy to submit unredacted versions of any remaining documents in dispute for *in camera* review.  (Oct. 2013 Order at 11–12).

Pursuant to this Court's October 2013 Order, the Embassy produced its privilege log on November 7, 2013.  (Embassy's Mem. of Law in Supp. of Mot. to Enforce Compliance with & Provide Sanctions for Violation of Rule 26(b)(5)(B), "Embassy's Mem. in Supp. of Rule 26 Sanctions") [Doc. No. 170  at 3].  The parties met and conferred on December 6, 2013, but were unable to resolve the disputed privilege issues with respect to RNE 363 and RNE 63100.  (Letter to Mag. Judge Dated Dec. 10, 2013) [Doc. No. 166].  The parties then submitted those

---

[5]      This Order also includes a Report and Recommendation regarding Ewald's Motion for Spoliation Sanctions.  *See infra*, page 27.  For ease of reference, this Court refers to this Order simply as an Order.

documents to this Court for *in camera* review and a determination of the privilege issue on December 17, 2013. (Privilege Letter).[6]

In the interim, on November 26, 2013, the Honorable Susan Richard Nelson heard oral argument on the Embassy's Motion for Summary Judgment. (Minute Entry Dated Nov. 26, 2013) [Doc. No. 162]. During the oral argument, Ewald's counsel, Sheila Engelmeier, read a portion of document RNE 88231–35 ("RNE 88231") out loud and into the record. (Tr. of Mot. Hr'g on the Embassy's Mot. for Summary J., "MSJ Tr.") [Doc. No. 164 at 34:3–24].[7] RNE 88231 is nearly identical to RNE 63100, and the Embassy had likewise claimed that part of RNE 88231—the part that Ewald's counsel read into the record during the Motion for Summary Judgment oral argument—was privileged. (Embassy's Mem. in Supp. of Rule 26 Sanctions at 2); (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 5). The Embassy notified Judge Nelson of its claim about the document's privilege status and that the Embassy previously asked Ewald to return the document. (MSJ Tr. at 73:12–74:1). Ewald's use of RNE 88231 at the Motion for Summary Judgment hearing is now the subject of the Embassy's Motion for Rule 26 Sanctions. *See* (Embassy's Mem. in Supp. of Rule 26 Sanctions).

### 2.   Gandrud's Mobile Phone and Ewald's First Laptop

Ewald's Motion to Compel also requested production of the mobile phone of Gary Gandrud ("Gandrud") and the first laptop the Embassy provided to Ewald ("Ewald's First Laptop"), among other items. *See* (Ewald's Mem. in Supp. of Mot. to Compel at 18, 21). When Ewald worked for the Embassy, Gandrud was the Honorary Consul for Norway, and was

---

[6]     Although Ewald objected to portions of this Court's October 2013 Order, neither party objected to the portion of the Order that discussed privilege. *See* (Mem. Op. & Order Dated Nov. 20, 2013, "Nov. 2013 Order") [Doc. No. 161 at 5–6 n.2].

[7]     The parties agree the document referred to in the transcript is RNE 88231. (Embassy's Mem. in Supp. of Rule 26 Sanctions at 3–4); (Ewald's Mem. of Law Opposing Sanction, "Ewald's Mem. in Opp'n to Rule 26 Sanctions") [Doc. No. 173 at 5–6].

employed by the law firm of Faegre & Benson LLP ("Faegre").[8]  (Am. Compl. ¶ 3); (Letter to

District Judge Dated Dec. 23, 2013, "Embassy's Dec. 23, 2013 Letter") [Doc. No. 179 at 2].

This Court denied the Motion to Compel, including denying these specific requests.  (Oct. 2013

Order at 9).  On Ewald's objection, Judge Nelson affirmed this Court with respect to Ewald's

First Laptop.  (Nov. 2013 Order at 16–17).  But Judge Nelson reversed this Court with respect to

mobile phones issued by the Embassy to Gandrud and Ewald.  (*Id.* at 17–21).  Since filing her

Motion to Compel, Ewald has learned that the Embassy did not provide Gandrud with a mobile

phone, that the mobile phone Gandrud used at the time (provided by Faegre) has been recycled,

and that the Embassy does not have Ewald's First Laptop. (Email from Joel Schroeder (the

Embassy), to Sheila Engelmeier (Ewald) (Dec. 1, 2013, 10:02 a.m.), "Schroeder Dec. 1, 2013

Email," Ex. D, Attached to Affidavit of Susanne J. Fischer, "Fischer Aff.") [Doc. No. 187-4 at

1];[9] (Embassy's Dec. 23, 2013 Letter at 1); (Email from Joel Schroeder (the Embassy), to Sheila

Engelmeier (Ewald) (Nov. 17, 2013, 5:21 p.m.) "Schroeder Nov. 17, 2013 Email", Ex. J,

Attached to Fischer Decl.) [Doc. No. 187-10 at 2].[10]  As a result, Ewald now moves for sanctions

against the Embassy for spoliation of Gandrud's mobile phone and Ewald's First Laptop, as well

as documents from Innovation Norway.[11]  (Ewald's Mem. of Law in Supp. of Her Mot. for

---

[8]      Faegre & Benson LLP merged with Baker & Daniels LLP effective January 1, 2012, and is now known as Faegre Baker Daniels LLP.  Press Release, Faegre Baker Daniels Begins Business Operations (no date), *available at* http://www.faegrebd.com/17601 (last visited Mar. 7, 2014).  This Court uses "Faegre" to refer to both entities.

[9]      Given the volume of correspondence between the parties provided as exhibits in connection to the Motions for Sanctions, this Court lists the sending and receiving attorneys and notes the party they represent in a parenthetical when citing correspondence between the parties.

[10]      This page number refers to the pagination assigned by CM/ECF.

[11]      As noted above, this Court did not grant Ewald's request for inspection of Ewald's First Laptop, and Judge Nelson affirmed that portion of this Court's October 2013 Order.  (Oct. 2013 Order at 9); (Nov. 2013 Order at 16–17).  The Innovation Norway documents were not part of Ewald's Motion to Compel.  *See* (Ewald's Mot. to Compel).

Sanctions Due to Spoliation of Evidence, "Ewald's Mem. in Supp. of Spoliation Sanctions")
[Doc. No. 186 at 1].

This Court heard oral argument on the Motions for Sanctions on January 30, 2014.
(Minute Entry Dated Jan. 30, 2014) [Doc. No. 194].

## II.   DISCUSSION

### A.   Privilege Letter

As described above, the Embassy now seeks review of two emails, identified by their respective Bates numbers: RNE 363 and RNE 63100.[12]   (Privilege Letter at 1).  The Embassy submitted each email in its original form in Norwegian, and provided a certified translation of each email.  (*Id.*).  The certified translations were highlighted where the redactions appeared. (*Id.*).

Because the privilege issue was briefed in connection with Ewald's Motion to Compel, this Court relies on the parties' arguments in that Motion.  The Embassy claims that both documents are legal advice protected by attorney-client privilege.  (Embassy's Mem. of Law in Opp'n to Pl.'s Mot. to Compel, "Embassy's Mem. in Opp'n to Mot. to Compel") [Doc. No. 116 at 37]; *see also* (Privilege Log, Ex. E, Attached to the Aff. of Sean R. Somermeyer, "Somermeyer Aff.-171") [Doc. No. 171-5 at 1–2].

Ewald argues that the Embassy's mere assertion that the documents contain "a discussion of legal advice" does not provide sufficient information to allow the Embassy to claim the redacted portion is privileged.  (Ewald's Mem. in Supp. of Mot. to Compel at 24).[13]   Ewald also

---

[12]     This Court's use of "RNE 636" and "RNE 63100" is intended to refer the English versions of each document in its entirety.  The reference to the Bates number on the first page of these multi-page documents is for the sake of readability only.

[13]     The only information the Embassy provided to Ewald at the time of her Motion to Compel regarding RNE 363 and RNE 63100 was this statement: "The redacted portion includes

argues that, even if the documents contain privileged information, the Embassy waived the privilege by sending the emails to people who are not attorneys and do not need to know the information.  (*Id.*).  According to the Embassy, the redacted portions report that the Embassy sought legal advice, and explain its counsel's "assessment and advice."  (Embassy's Mem. in Opp'n to Mot. to Compel at 37).[14]  The Embassy argues that documents need not be sent or created by an attorney to be protected by attorney-client privilege, and that there was no waiver of the privilege because the documents were shared with high-level officials in the Ministry of Foreign Affairs ("MFA") in Oslo, Norway.  (*Id.* at 37–38, 39 n.28); *see also* (Privilege Letter at 1).

### 1.    Legal Standard

The Federal Rules of Civil Procedure permit "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense—including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter."  Fed. R. Civ. P. 26(b)(1).  A court has broad discretion to decide discovery motions.  *Pavlik v. Cargill, Inc.*, 9 F.3d 710, 714 (8th Cir. 1993).

When making a privilege determination, a court uses federal common law unless a relevant federal rule, statute, or constitutional provision applies.  Fed. R. Evid. 501.  But where state law determines the decision in a civil case, state law governs the privilege issue.  *Id.*;

---

a discussion of legal advice protected by the attorney/client privilege."  (Letter from Joel Schroeder (the Embassy) to Sheila Engelmeier (Ewald) (July 26, 2013), Ex. DD, Attached to Aff. of Sheila Engelmeier, "Engelmeier Aff.") [Doc. No. 110-34 at 4].

[14]    Although the Embassy is discussing different documents in its Memorandum opposing the Motion to Compel, the Embassy clarifies that one of the emails at issue now, RNE 63100, contains a different iteration of the same redaction discussed in its Memorandum.  (Embassy's Mem. in Opp'n to Mot. to Compel at 37 n.27).  The other document at issue now, RNE 363, contains "similarly protected statements."  (*Id.*).

*Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992) (FLN). Ewald's claims allegedly arise under both federal and state law. *See* (Am. Compl. ¶¶ 60–106). Because federal and Minnesota claims survived summary judgment, this Court will analyze the privilege issue under both federal common law and Minnesota law. *See*, *e.g.*, (Summary J. Order at 19, 25).

Under both federal and Minnesota law, confidential communications between an attorney and his or her client "are absolutely privileged from disclosure against the will of the client." *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 601 (8th Cir. 1977) (*reversed in part on other grounds*, 572 F.2d at 606 (en banc));[15] *see also Nat'l Texture Corp. v. Hymes*, 282 N.W.2d 890, 895 (Minn. 1979). A party invoking privilege bears the burden of proving the factual basis for the assertion. *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985); *Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998) (citations omitted).

In the Eighth Circuit, attorney-client privilege applies when a communication is: (1) confidential; (2) between an attorney and client; and (3) for the purposes of obtaining legal services or advice. *United States v. Horvath*, 731 F.2d 557, 561 (8th Cir. 1984); *Diversified Indus.*, 572 F.2d at 602, *reversed in part on other grounds*, 572 F.2d at 606 (en banc). In Minnesota, the privilege applies:

> (1) [w]here legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

---

[15]     The cite for *Diversified*, 752 F.2d 596, contains multiple Eight Circuit opinions, including its initial opinion (at page 598), Judge Heaney's concurrence and dissent (at page 604), the Eighth Circuit's opinion on hearing en banc (at 606), and Judge Henley's concurrence and dissent from the en banc opinion (at page 611). Thus, this Court uses parentheticals to explain from which opinion it is citing for the sake of clarity.

*Kobluk*, 574 N.W.2d at 440 (internal citations omitted); *see also* Minn. Stat. § 595.02, subdiv. 1(b) ("An attorney cannot, without the consent of the attorney's client, be examined as to any communication made by the client to the attorney or the attorney's advice given thereon in the course of professional duty; nor can any employee of the attorney be examined as to the communication or advice, without the client's consent.").

In both jurisdictions, "'[t]he privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney.'" *PaineWebber Grp. Inc. v. Zinsmeyer Trusts P'ship*, 187 F.3d 988, 994 (8th Cir. 1999) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981)); *see also Kobluk*, 574 N.W.2d at 443. Whether an attorney-client relationship exists, and for what purpose, is not considered privileged under either federal common law or Minnesota law.  *See Diversified Indus.*, 572 F.3d at 603 (finding that a memorandum establishing the relationship between a law firm and client, the purpose of the relationship, and the steps the law firm would take to discharge its obligation did not contain confidential information), *aff'd in relevant part on reh'g en banc*, 572 F.3d at 606; *Burris v. Versa Prods., Inc.*, Civil No. 07-3938 (JRT/JJK), 2013 WL 608742, at *4 (Feb. 19, 2013) (citing *Baskerville v. Baskerville*, 75 N.W.2d 762, 767 (Minn. 1956); *Henderson v. Eckern*, 132 N.W. 715, 716 (Minn. 1911)) ("The mere fact that a client has requested an attorney to act as counsel or consulted with counsel is not protected by the privilege.").

Although Minnesota has not established a separate test for corporations, the attorney-client privilege is maintained in an employee's communication within the corporation in the Eighth Circuit if:

> (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of

the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents.

*Diversified Indus*, 572 F.2d at 609 (en banc); *see also Leer v. Chicago, Milwaukee, St. Paul & Pac. Ry. Co.*, 308 N.W.2d 305, 308–09 (Minn. 1981) (reviewing attorney-client privilege tests in the context of corporations but not adopting any of those reviewed).   The corporation has the burden to show that these requirements apply to the communication.   *Diversified Indus.*, 572 F.2d at 609 (en banc).

Waiver of privilege occurs when the communication is voluntarily disclosed to a third party.   *United States v. Hyles*, 479 F.3d 958, 971 (8th Cir. 2007) (citation omitted); *Kobluk*, 574 N.W.3d at 443.   Under federal law, waiver is governed by the Federal Rules of Evidence.   *See* Fed. R. Evid. 502(a), (b).   The scope of any waiver depends on whether the party intentionally waived privilege, or whether the disclosure of privileged information was inadvertent.   *Id.*; *see also U.S. SEC v. Welliver*, Civil No. 11-cv-3076 (RHK/SER), 2012 WL 8015672, at *4 (D. Minn. Oct. 26, 2012).   If the waiver is intentional, the subject-matter waiver doctrine provides that the privilege may be extinguished as to the entire subject matter of the disclosed information.   Fed. R. Civ. P. 502(a); *Shukh v. Seagate Tech., LLC*, 848 F. Supp. 2d 987, 990 (D. Minn. 2011) (JRT/JJK).   The subject-matter waiver doctrine exists "to prevent a party from using the advice he received as both a sword, by waiving privilege to favorable advice, and a shield, by asserting privilege to unfavorable advice.'"   *Shukh*, 848 F. Supp. 2d at 990 (quoting *In re EchoStar Commc'ns Corp.*, 448 F.3d 1294, 1303 (Fed. Cir. 2006)) (other citations omitted).

If, however, a party has inadvertently disclosed privileged information, courts in this District analyze whether an inadvertent disclosure constitutes a waiver of privilege using the five factors first announced in *Hydraflow*:

> (1) the reasonableness of the precautions taken to prevent inadvertent disclosure in light of the extent of document production, (2) the number of inadvertent disclosures, (3) the extent of the disclosures, (4) the promptness of measures taken to remedy the problem, and (5) whether justice is served by relieving the party of its error.

*Starway v. Indep. Sch. Dist. No. 625*, 187 F.R.D. 595, 597 (D. Minn.1999) (ADM/AJB) (citing *Gray v. Bicknell*, 86 F.3d 1472, 1484 (8th Cir. 1996); *Hydraflow, Inc. v. Enidine Inc.*, 145 F.R.D. 626, 637 (W.D.N.Y. 1993) (adopting the *Hydraflow* test).  If a court finds that a party waived privilege by inadvertently disclosing privileged information, the waiver is limited to the disclosed information and does not extend to the entire subject matter of the disclosed information.  Fed. R. Evid. 502(b); *Welliver*, 2012 WL 8015672, at *5.

Finally, a court may find that a party waived privilege by implication after examining the following elements: (1) implied intention and (2) fairness and consistency.  *Sedco Int'l, S.A. v. Cory*, 683 F.2d 1201, 1206 (8th Cir. 1982).  Examples of implied waiver include a client's testimony about an attorney-client communication, the client placing the attorney-client relationship at issue, and the client's reliance on an attorney's advice as an element of a claim or defense.  *Id.* (citing cases).

Under Minnesota law, a party's words or conduct may waive attorney-client privilege. *State ex rel. Schuler v. Tahash*, 154 N.W.2d 200, 205 (Minn. 1967) (citations omitted).  Privilege may be waived when the party claiming privilege allows an opposing party to use a privileged document without objection.  *Driscoll v. Standard Hardware, Inc.*, 785 N.W.2d 805, 818–19 (Minn. Ct. App. 2010).  But where a party inadvertently disclosed privileged information, a Minnesota court may find there is no waiver of privilege.  *Lundman v. McKown*, 530 N.W.2d 807, 830 (Minn. Ct. App. 1995).

2.      **Analysis**

i.      **RNE 363**

RNE 363 is an email from Johan Christopher Vibe ("Vibe"), Deputy Chief of Mission at the Embassy, to Liv Mørch Finborud ("Finborud"), who was responsible for coordinating between the MFA in Oslo, the Embassy, and the Steering Committee that funded Ewald's position.  (RNE 363 at 1);[16] (Aff. of Sean R. Somermeyer, "Somermeyer Aff.-118") [Doc. No. 118 ¶ 7].  Finborud was also chairwoman of the Steering Committee.[17]  (*Id.*); (Ewald's Mem. in Supp. of Mot. to Compel at 9 n.4).  The following individuals appear on the "Cc" line: Morten Aasland ("Aasland"), Coordinator for North America for the MFA; Aud Kolberg ("Kolberg"), Director General of the Human and Financial Resources Department at the MFA; Espen Larsen, Head of Personnel at the MFA; Lars Petter Henie ("Henie"), Minister Counselor for Economic Affairs at the Embassy; Elisabeth Wemberg ("Wemberg"), Head of Administration at the Embassy; Kari Rød Ventrone ("Ventrone"), Archivist at the Embassy; and Wegger Chr. Strømmen ("Ambassador Strømmen"), Norway's Ambassador to the United States. (Somermeyer Aff.-118 ¶ 9); (Privilege Letter).  The email states that it was "[w]ritten by Henie, Vibe, and Wemberg[,]" and approved by Ambassador Strømmen.  (RNE 363 at 2).  RNE 363 contains two redacted portions.  (*Id.* at 1–2).

The first redaction in RNE 363 is a heading and one sentence that states that the Embassy spoke to an attorney to resolve a specific issue.  (RNE 363 at 1).  The fact that an entity engaged an attorney and the purpose for the engagement is not privileged under either federal common

---

[16]      Page 1 refers to the page numbers provided in the translated version of the document.

[17]      All titles and positions are those held at the time RNE 363 was sent.  *See* (Privilege Letter).

The Steering Committee is also called the "Steering Group" at times.  *See, e.g.*, (Somermeyer Aff.-118 ¶ 7).  This Court refers to it as the Steering Committee throughout this Order and Report and Recommendation for the sake of consistency.

law or Minnesota law.  *See Diversified Indus.*, 572 F.3d at 603, *aff'd in relevant part on reh'g en banc*, 572 F.3d at 606; *Burris*, 2013 WL 608742, at *4 (citing *Baskerville*, 75 N.W.2d at 767; *Henderson*, 132 N.W. at 716).  Thus, the privilege does not apply to the first redaction.

The second redaction in RNE 363 is a phrase (the "Redacted Phrase") located in the second bullet point listed under the heading titled "Recommendations."  The Redacted Phrase refers to what the Embassy recommends.  (RNE 363 at 2).  The first redaction, based on an attorney-client privilege claim in RNE 363, immediately precedes the Recommendations heading.  (*Id.* at 1).  Thus, it is not clear from the text that the Recommendations are recommendations from legal counsel, Vibe's recommendations, or some mix of both. *See* (*id.* at 1–2).  But the Embassy did not redact **any** of the other four bullet points, which suggests that the Embassy does not see the Recommendations as advice from counsel.  *See* (*id.* at 2).  Even more telling is the fact that the first part of the sentence that contains the Redacted Phrase is not redacted.  (*Id.*).  It states, "The [E]mbassy will keep a running log of conversations and other contact with the employees at the [C]onsulate, . . . ."  (*Id.*).  If anything, this part of the sentence, describing a plan to preserve evidence of conversations with employees, appears to be typical legal advice given to an entity that may be threatened with litigation.  Yet, the Embassy did not redact this part of the sentence, which suggests that it does not consider it legal advice.  *See* (*id.*).

Instead, the Embassy singles out an individual phrase that includes the words "legal steps" and claims that it is covered by the attorney-client privilege.  (*Id.*).  Nothing about the Redacted Phrase indicates it is a communication between an attorney and client, or that the recommendation is based on advice from counsel. *See Horvath*, 731 F.2d at 561; *Kobluk*, 574 N.W.2d at 440.  Instead, it appears to be a statement about what the Embassy, the client, will

recommend, presumably to the recipients of the email.  Thus, it does not qualify for protection under the attorney-client privilege.

Finally, even if both redactions are privileged—a proposition with which this Court does not agree—the Embassy has waived the privilege under federal common law and Minnesota law. With respect to federal law, the Embassy has the burden to show privilege, but has not shown that each recipient had a need to know the so-called privileged information.  *See Diversified Indus.*, 572 F.3d at 609 (en banc).  The Embassy argues that each recipient needed to know the information based on their position.  (Embassy's Mem. in Opp'n to Mot. to Compel at 38–39). Although the Embassy's argument is not focused on RNE 363 specifically, it categorizes recipients who have "need to know" access into three groups: (1) those that are involved in coordinating the MFA, the Embassy, and the Steering Group; (2) department-level management at the MFA; and (3) those who represent "the link to high-level MFA officials, specifically to the Foreign Minister, Jonas Gahr Støre."  (*Id.* at 38); *see also* (Sommermeyer Aff.-118 ¶ 7).

But the Embassy does not explain why these individuals, or even these groups, needed to know the purported legal information.  This Court can presume that an ambassador and the deputy chief of mission (Ambassador Strømmen and Vibe, respectively) needed to know about purported legal matters concerning their employees at the Embassy, and by extension, the Consulate in Minneapolis.  And this would likely involve some senior MFA officials such as Kolberg and Espen Larsen who hold personnel-related positions at the MFA.  *See* (Privilege Letter).  But the Embassy fails to explain why so many people might need access to a so-called legal communication.  For example, Henie is responsible for economic affairs at the Embassy, and Ventrone's title is "archivist."  (*Id.*).  Henie and Ventrone's involvement in legal affairs is not apparent from their titles.  Additionally, the Embassy does not explain why the broad groups

it describes in its memorandum needed to know about legal advice. *See* (Embassy's Mem. in Opp'n to Mot. to Compel at 38). Although some people in positions of authority likely needed to know legal advice provided to the Embassy, no specific information regarding why these broad groups of people needed access to legal advice is offered. Without this information, this Court cannot determine whether these groups needed to know legal advice. Therefore, under the federal common law, the Embassy has failed to show that the attorney-client privilege attaches to communications between employees, and has failed to meet its burden to show that the privilege was not waived when RNE 363 was distributed to third parties.

Under Minnesota law, there appears to be no similar protection for employees of corporations. *See Leer*, 308 N.W.2d at 308–09 (reviewing tests, but not adopting a test). The Minnesota Supreme Court considered three tests in *Leer*: (1) the "control group" test, (2) the "subject matter" test, and (3) the Eighth Circuit's test in *Diversified*. *Id.* at 308–09 (citations omitted). But under any of these three tests, the Embassy has waived its privilege claim by disclosing the communication to third parties.

In the "control group" test, privilege is determined by whether "the employee [is] in a position to control or take substantial part in a decision about any action to be taken upon the advice of the attorney[,] or that the employee [is] a member of a group having such authority." *Id.* at 308 (citing *City of Philadelphia v. Westinghouse Elec. Corp.*, 210 F. Supp. 483, 485 (E.D. Pa. 1962)). Even if the Embassy had established that the authors of the document—Henie, Vibe, and Wemberg—were in a position to control legal decisions, the Embassy has not established the same for the remaining five recipients. *See* (RNE 363). Therefore, under the "control group" test, the Embassy waived any privilege it had.

Under the "subject matter" test, the attorney-client privilege can be extended to a corporation's employee "where the employee made the communication at the direction of his supervisor and where the subject matter upon which the lawyer's advice was sought by the corporation and dealt with in the communication was within the performance of the employee's duties." *Leer*, 308 N.W.2d at 308 (citing *Harper & Row Publishers, Inc. v. Decker*, 423 F.3d 487, 491–92 (7th Cir. 1970)). Under this test, the Embassy waived any privilege it might have had when it sent RNE 363 to employees which it has not established had responsibilities involving the privilege-claimed information.

The third test discussed in *Leer* was the test established by the Eighth Circuit in *Diversified. Id.* at 308–09 (citing *Diversified Indus.*, 572 F.3d at 609 (en banc)). As stated above, the Embassy also waived any privilege it might have had under this test. *See supra* at 14–15.

In conclusion, the substance of the redactions in RNE 363 are not privileged under federal common law or Minnesota. Even if they were, the Embassy waived the privilege by sending RNE 363 to individuals who are not included with the scope of the attorney-client privilege here.[18] RNE 363 must be produced to Ewald without redactions.

### ii.    RNE 63100

RNE 63100 is an email that was initially sent from Finborud to Torgeir Larsen; Øyvind Stokke;  Juliette  Bernard  Gillesdal  ("Gillesdal"),  and  Ove  Thorsheim  ("Thorsheim").

---

[18] The parties do not address whether any disclosure to third parties intentionally waived the privilege, or whether the disclosure was inadvertent. This Court presumes any disclosure was inadvertent because there is no affirmative statement of intent to disclose. *See* Fed. R. Civ. P. 502(a); *State ex rel. Schuler*, 154 N.W.2d at 205. The Embassy does not argue that any inadvertent disclosure should not be held to constitute a waiver. Therefore, this Court finds that to the extent the redacted portions of RNE 363 were inadvertently disclosed, the Embassy waived the privilege.

(RNE 63100 at 2).[19] Mona Elisabeth Brøther ("Brøther"), Sten Anders Berge ("Berge"), and Margaret Slettevold ("Slettevold") were on the "Cc" line. (*Id.*). The email was then forwarded to Aasland, who in turn forwarded it to Unni Kløvstad ("Kløvstad"); Anne Kjersti Amundsen Shaw ("Shaw"); Rune Jensen ("Jensen"); Anne Kjersti Frøholm; Annlaug Rønneberg; Gundersen; Eilif;[20] Mariann Murvoll; Brit Løvseth; Mathias Rongved; Lars Nordrum; Aasland; Torleiv Opland ("Opland"); Saria Basit; and Kyrre Holm. (*Id.*). The Embassy identifies Finborud and Slettevold as "responsible for coordinating between the MFA in Oslo, the Embassy in Washington, D.C., and the Steering Group . . . that funded [Ewald]'s position." (Sommermeyer Aff.-118 ¶ 7). Thorsheim, Brøther, Berge, Torgeir Larsen, Stokke, and Gillesdal were all high-level employees within the MFA. (*Id.*). RNE 63100 has only one redacted portion, which consists of three sentences. (RNE 63100 at 3).

The first sentence, like the first redaction in RNE 363, states that the Embassy sought legal advice. (RNE 63100 at 3). As stated above, whether a person or entity engaged an attorney, and for what purpose, is not privileged under federal common law or Minnesota law. *See Diversified Indus.*, 572 F.3d at 603, *aff'd in relevant part on reh'g*, 572 F.3d at 606 (en banc); *Burris*, 2013 WL 608742, at *4 (citations omitted). Therefore, the first sentence is not privileged.

The second and third sentences, like the second redaction in RNE 363, are statements about the Embassy's future actions. (RNE 63100 at 3). These sentences clearly state that they are from the point of view of the Embassy; nothing in them suggests that they convey anything communicated by an attorney, or that any legal advice prompted the Embassy's actions. (*Id.*).

---

[19]     The translated version of RNE 63100 does not have page numbers. This Court refers to the first page as page 1, the second page as page 2, etc., for ease of reference.
[20]     There is no further information regarding recipients Gundersen and Eilif.

Therefore, the second and third sentences do not constitute communications protected by the attorney-client privilege.

Finally, even if the redacted portion was privileged—although this Court does not agree—the Embassy waived privilege when it disclosed the purportedly privileged information to third parties for the reasons discussed above. *See Diversified Indus.*, 572 F.3d at 609 (en banc); *Leer*, 308 N.W.2d at 309.

### B.      Embassy's Motion for Rule 26 Sanctions

The Embassy moves for sanctions under Rule 26 because the redacted portion of a document, RNE 88231, was read out loud by Ewald's counsel during the hearing on the Motion for Summary Judgment. (Embassy's Mem. in Supp. of Rule 26 Sanctions at 3–4). RNE 88231 is a similar, unredacted version of RNE 63100. The redacted language from RNE 63100 is the same as the language in RNE 88231 that Ewald's counsel read out loud at the Motion for Summary Judgment Hearing.[21] (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 5). As discussed above, at the time of the Summary Judgment hearing, the Embassy had already notified Ewald that it claimed RNE 88231 contained privileged information, and repeatedly had asked for its return. (Embassy's Mem. in Supp. of Rule 26 Sanctions at 2). Ewald disputed this privilege claim, and the parties had not reached an agreement about how to handle RNE 88231.

---

[21]      This Court agrees with Ewald's assertion that the documents are substantially similar and contain the same language that the Embassy claims is privileged. (Ewald's Mem. in Opp'n to Sanctions at 5). Ewald submitted a Google translation of RNE 88231. (Ex. A, "(RNE 88231-E," Attached to Suppl. Aff. of Sheila Engelmeier) [Doc. No. 114 at 82–88].

The primary email from Finborud, in which the Embassy's redaction is located, was sent on April 20, 2010 at 2:12 p.m. (RNE 63100). This date/time stamp is consistent in both RNE 63100 and RNE 88231, and in both their English and Norwegian versions. *See* (RNE 63100); (RNE 88231); (RNE 88231-E). But there is a difference between the documents. In RNE 88231, Finborud's email was forwarded to a different group of recipients with what appear to be administrative comments when compared with the recipients in RNE 63100. *See* (RNE 88231-E). This Court does not find this difference material in terms of the claimed privilege.

(*Id.* at 2–3).  This Court will first address the factual and procedural background of RNE 88231 in the litigation before addressing the legal analysis.

### 1.    Factual and Procedural Background

The Embassy produced RNE 88231 on February 18, 2013.  (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 2); *see also* (Embassy's Mem. in Opp'n to Mot. to Compel at 8) (stating that the Embassy produced documents with Bates numbers RNE 87890–88985 on February 18, 2013).  The Embassy first asked Ewald to destroy RNE 88231 on June 3, 2013.  (Embassy's Mem. in Supp. of Rule 26 Sanctions at 2).  Ewald did not destroy the document, and instead argued, on July 16, 2013, its privilege protection should be removed.  (*Id.* at 2).  Ewald brought her Motion to Compel on July 29, 2013, which challenged several of the Embassy's privilege designations.  (Mot. to Compel); (Embassy's Mem. in Supp. of Rule 26 Sanctions at 2).  Although Ewald did not specifically address RNE 88231 in her Motion to Compel, she submitted the document to this Court in its original Norwegian version as an exhibit, and read part of the privileged portion into the record during the hearing on the Motion to Compel.[22]  (RNE 88231 Ex. BB, Attached Engelmeier Aff.) [Doc. No. 110-32 at 55–59]; (Tr. of Hr'g on Mot. to Compel) [Doc. No. 125 at 39:2–20].[23]  The Embassy produced a privilege log on November 7, 2013, pursuant to this Court's October 2013 Order.  (Embassy's Mem. in Supp. of Rule 26 Sanctions at 3); *see also* (Oct. 2013 Order at 11).  The privilege log again advised Ewald that RNE 88231 was produced inadvertently, requested its destruction, and attached a properly redacted version of RNE 88231.  (Embassy's Mem. in Supp. of Rule 26 Sanctions at 3); (Privilege Log at 5–6).

---

[22]      Ewald submitted the Google translation of RNE 88231 the day after she filed her Motion to Compel.  *See* (RNE 88231-E).

[23]      The parties agree that the document is misidentified in the transcript as RNE 88022.  *See* (Embassy's Mem. in Supp. of Rule 26 Sanctions at 3 n.1); (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 3).

According to the Court's October 2013 Order, the parties were to meet and confer regarding any documents where the privilege issue was still disputed.  (October 2013 Order at 11).

But before the parties began that process, Judge Nelson heard oral argument on the Embassy's Motion for Summary Judgment on November 26, 2013.  (Minute Entry Dated Nov. 26, 2013).  During the hearing, Ewald's counsel read a translated portion of RNE 88231 that was subject to the Embassy's claim of privilege into the record. (MSJ Tr. at 34:3–24); (Embassy's Mem. in Supp. of Sanctions at 3).  At the time of that hearing, the Embassy: (1) had already asked that RNE 88231 be destroyed, (2) had notified Ewald again through its privilege log that it had been inadvertently produced and asked for it to be destroyed, and (3) had also claimed privilege for RNE 63100, which contained the same information.  (Embassy's Mem. in Supp. of Rule 26 Sanctions at 3); (Privilege Log at 5–6).  The parties had not yet engaged in the meet-and-confer process ordered by this Court, and therefore had not submitted the privilege issue to this Court.  *See* (Letter to Mag. Judge Dated Dec. 6, 2013); (Privilege Letter); (Oct. 2013 Order at 11).  Thus, there was a claim of privilege for RNE 88231 and a challenge to that claim, but no final determination as to whether that document, or RNE 63100, was privileged.  During the hearing on the Motion for Summary Judgment, the Embassy notified Judge Nelson of the document's privilege claim and that the Embassy had asked Ewald to return the document.  (MSJ Tr. at 73:12–74:1).

On December 6, 2013, the Embassy then asked Ewald to confirm that it had destroyed RNE 88231, and again Ewald argued again that it was not privileged.  (Embassy's Mem. in Supp. of Rule 26 Sanctions at 4).  The Embassy filed its Motion for Sanctions on December 11, 2013.  (Embassy's Mot. for Rule 26 Sanctions).

### 2.   Legal Standard

The Federal Rules of Civil Procedure provide that:

> [i]f information produced in discovery is subject to a claim of privilege or of protection as trial-preparation material, the party making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, **a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved**; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information to the court under seal for a determination of the claim.   The producing party must preserve the information until the claim is resolved.

Fed. R. Civ. P. 26(b)(5)(B) (emphasis added).  When a privilege claim is challenged, a court ultimately decides if the privilege applies.  Fed. R. Civ. P. 26 advisory committee's notes (1993 Amendments).  "No receiving party may use or disclose the information pending resolution of the privilege claim."  Fed. R. Civ. P. 26 advisory committee's notes (2006 Amendment).

### 3.   Analysis

#### a.   Violation of Rule 26

The Embassy argues that Ewald violated the Federal Rules by ignoring Rule 26's procedures for inadvertently-produced documents, refusing the Embassy's requests for return or destruction of the document, and reading information subject to a privilege claim into the record in open court.  *See* (Embassy's Mem. in Supp. of Rule 26 Sanctions at 1).  The Embassy now seeks an order that "(1) requir[es] Ewald to destroy all copies of the document and provide written confirmation she has done so; (2) strik[es] all references to the privileged information from the record; and (3) bar[s] Ewald from using the information in the future."  (*Id.* at 6).  The Embassy also seeks attorneys' fees for bringing the sanctions motion.  (*Id.* at 6–7).  Ewald argues the Motion for Rule 26 Sanctions is untimely, the Embassy has not acted timely, the Embassy did not properly assert its rights, the Embassy did not engage in the meet-and-confer process

required by the Local Rules, the Embassy's Motion is unnecessary, the Embassy has not demonstrated that RNE 88231 is privileged, and the Embassy has no right to sanctions.  *See generally* (Ewald's Mem. in Opp'n to Sanctions).

As an initial matter, this Court does not consider the Embassy's Motion for Rule 26 Sanctions untimely.  The deadline for nondispositive motions was August 15, 2013.  (Order Dated May 23, 2013) [Doc. No. 102 at 1].  Although privilege issues had been timely raised by Ewald, the complained-of conduct, that Ewald had used a document subject to a privilege claim during the hearing on the Embassy's Motion for Summary Judgment, had not occurred at the expiration of the nondispositive motion deadline.  (Minute Entry Dated Nov. 26, 2013).  Instead, the complained-of conduct took place on November 26, 2013.  (*Id.*).  The Embassy attempted to resolve the dispute with Ewald by letter dated December 6, 2013, ten days later.  *See* (Letter from Sean Sommermeyer (the Embassy) to Sheila Engelmeier, Thomas Marshall, and Suzanne Fischer (Ewald) (Dec. 6, 2013) ("Embassy's Dec. 6, 2013 Letter"), Ex. F., Attached to Sommermeyer Aff.-171) [Doc. No. 171-6].[24]  Ewald responded on December 10, and again disputed that RNE 88231 was privileged.  (Letter from Thomas Marshall (Ewald), to Sean Sommermeyer (the Embassy) (Dec. 10, 2013) ("Ewald's Dec. 10, 2013 Letter"), Ex. G, Attached to Sommermeyer Aff.-171) [Doc. No. 171-7].  The Embassy filed its Motion for Sanctions the day after Ewald's letter.  (Embassy's Mot. for Rule 26 Sanctions).  Given that these actions took place during a fifteen-day time period—which included the Thanksgiving holiday—this Court

---

[24]     The Embassy stated that it intended to seek a remedy from this Court, and requested the Embassy destroy RNE 88231 in an attempt to satisfy its "obligation under Local Rule 7.1 to meet and confer before filing a motion . . . ." (Embassy's Dec. 6, 2013 Letter).  Thus, contrary to Ewald's assertion, there was a meet-and-confer process.  *See* (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 9–10).  That Ewald expected a response to her counsel's December 10 letter is not relevant.  *See* (*id.* at 9).  Ewald's counsel disputed that the document was privileged, and thus it appeared clear to the Embassy that the parties could not resolve their dispute and a motion was appropriate.

finds the Embassy had good cause to bring its Motion for Rule 26 Sanctions after the nondispositive motion deadline.  *See* Fed. R. Civ. P. 16(b)(4).  Therefore, this Court is not persuaded by Ewald's arguments that the Motion for Rule 26 Sanctions was untimely, that the Embassy acted in an untimely manner, that the Embassy did not properly assert its rights, or that the Embassy did not engage in the meet-and-confer process.

As to the substance of the Embassy's Motion, this Court finds Ewald violated Federal Rule of Civil Procedure 26(b)(5)(B).  Under this Rule, Ewald was obligated to "return, sequester, or destroy" RNE 88231 after the Embassy notified Ewald that the document was produced inadvertently, and that the Embassy claimed part of it was privileged.  Fed. R. Civ. P. 26(b)(5)(B).  Ewald notes that the Embassy waited four months before asserting its privilege and did not object to Ewald's use of RNE 88231 during the Motion to Compel briefing and oral argument.  (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 7–8).  This Court does not find the timing issues dispositive of whether Ewald and her attorneys complied with the Federal Rules.  Arguably, using a document where privilege was claimed has the potential to be much more prejudicial during a Motion for Summary Judgment in comparison to a Motion to Compel.  In Ewald's Motion to Compel, privilege was one of many issues before this Court.  *See* (Mot. to Compel).  But when the parties argued the Motion for Summary Judgment, the privilege issue had not yet been determined, and therefore, RNE 88231 should not have been used.  *See* Fed. R. Civ. P. 26(b)(5)(B).

Ewald's argument that it "sequestered" the document by "only" reading it to Judge Nelson is also unpersuasive at best, and disingenuous at worst.  (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 16); *see also* (Tr. of Mots. Hr'g Jan. 30, 2014) [Doc. No. 196 at 10:4–19].  Ewald's argument in this regard eviscerates Rule 26's prohibition against "use" of a document

claimed to be privileged by any standard of measure.  The hearing on the Embassy's Motion for Summary Judgment was a public hearing, meaning anyone, including members of the press, could attend.  Ewald's counsel's reading of the privileged portion of RNE 88231 during a public hearing does not meet Ewald's burden to sequester the document under the federal rules—nor can it be said to fairly comply with the prohibition against use of such a document.  *See* Fed. R. Civ. P. 26(b)(5)(B).  The portion of a document claimed to be privileged may not be used until the privilege claim is decided.  *See* Fed. R. Civ. P. 26 advisory committee's notes (2006 Amendment).  When privilege is challenged, the final determination rests with this Court.  Fed. R. Civ. P. 26 advisory committee's notes (1993 Amendments).  This Court finds the reading of the document during a public hearing constitutes "use" of the document.  That Ewald disagreed with the Embassy's assertion of privilege did not give her or her counsel permission to ignore what Rule 26 requires.  *See* Fed. R. Civ. P. 26(b)(5)(B).

### b.       Whether RNE 88231 is Privileged

The Embassy requests that this Court order Ewald to destroy RNE 88231, strike all references to RNE 88231, and bar Ewald from using RNE 88231.  (Embassy's Mem. in Supp. of Rule 26 Sanctions at 6).  Thus, a determination regarding whether RNE 88231 is privileged is necessary.

As stated above, RNE 88231 is an unredacted version of RNE 63100.  *See* (Embassy's Mem. in Supp. of Rule 26 Sanctions at 2); (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 5).  Based on this Court's analysis of the privilege claim in RNE 63100 above, RNE 88231 is likewise not privileged.[25]  Therefore, the Embassy's proposed remedies of destruction of RNE

---

[25]       The primary difference between RNE 63100 and RNE 88231 is that they were sent to different recipients.  The record reflects no explanation of the roles of the recipients of RNE 88231.  Therefore, even if the redacted information was privileged, which this Court finds it is

88231, striking references to it, and barring Ewald from using it are inapplicable.   *See* (Embassy's Mem. in Supp. of Sanctions at 6).

The Embassy requests sanctions and both the Embassy and Ewald request attorneys' fees for their participation in motion practice related to RNE 88231.   *See* (*id.* at 6–7); (Ewald's Mem. in Opp'n to Rule 26 Sanctions at 7, 17).   Although this Court finds that Ewald violated Rule 26, it finds that sanctions are not appropriate in this particular instance, and addresses the effectiveness of sanctions in a separate section of this Order.   *See infra*, page 40–41.

### C.      Ewald's Motion for Spoliation Sanctions

Ewald moves this Court for sanctions against the Embassy for spoliation of three items: (1) Gandrud's mobile phone; (2) Ewald's First Laptop; and (3) documents from Innovation Norway.   (Ewald's Mem. in Supp. of Spoliation Sanctions at 1).   Ewald proposes the following sanctions: striking the Embassy's Answer, an evidentiary presumption that Gandrud's mobile phone and Innovation Norway's documents are detrimental to the Embassy's defense and support Ewald's claims; and a monetary sanction "for the expense and time she spent engaged in [this] discovery dispute . . . ."   (*Id.* at 20).   This Court will first define the legal standard, then discuss each allegedly spoliated item.

### 1.      Legal Standard

"'Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *Nicollet Cattle Co., Inc. v. United Food Grp., LLC*, No. 08-5899 (JRT/FLN), 2010 WL 3546784, at *4 (D. Minn. Sept. 7, 2010) (quoting *Zubulake v. UBS Warburg LLC*, 220 F.R.D. 212, 216

---

not, the Embassy waived the privilege by forwarding the email to those who do not have a need to know the information, just as it did with RNE 63100.   *See supra* at 16–18 (discussion of privilege claim with respect to RNE 63100).

(S.D.N.Y. 2003)).   Initially, a court must determine when the duty to preserve evidence was triggered.  *E\*Trade Sec. LLC v. Deutsche Bank AG*, 230 F.R.D. 582, 587 (D. Minn. 2005) (RHK/AJB) (citation omitted).  "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation."  *Id.* at 588 (citing *Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 746 (8th Cir. 2004); *Zubulake*, 220 F.R.D. at 216).  A court may order sanctions "when a party (1) destroys (2) discoverable material (3) which the party knew or should have known (4) was relevant to pending, imminent, or reasonably foreseeable litigation."  *Lexis–Nexis v. Beer*, 41 F. Supp. 2d 950, 954 (D. Minn. 1999) (DSD/JMM) (citation omitted).  In addition, a court must find that the moving party was prejudiced before a sanction can be imposed for spoliation.  *Stevenson*, 354 F.3d at 748 (citation omitted).

Once spoliation is established, a court has broad discretion in choosing the appropriate sanction.  *Dillon v. Nissan Motor Co.*, 986 F.2d 263, 268 (8th Cir. 1993); *Nicollet Cattle Co., Inc.*, 2010 WL 3546784, at *4 (citing *Zubulake*, 220 F.R.D. at 216).  A finding of bad faith is not necessary for a court to impose sanctions under its inherent power.  *Stevenson*, 354 F.3d at 745, 750 (citations omitted).  Striking a pleading "is a severe sanction that may ineluctably lead to judgment for the other side.  This sanction thus should be applied only where there is an order compelling discovery, a willful violation of that order, and prejudice to the other party."  *St. Louis Produce Mkt. v. Hughes*, 735 F.3d 829, 832 (8th Cir. 2013).  To impose an adverse-inference instruction, a court must find that (1) the nonmoving party intentionally destroyed evidence with a desire to suppress the truth, and (2) the moving party was prejudiced.  *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 460 (8th Cir. 2013) (citing *Stevenson*, 354 F.3d at 746, 748).  Although imposing attorney's fees is one of the least-severe forms of sanctions, the Eighth

Circuit requires a showing of bad faith before such a sanction can be imposed for spoliation. *Stevenson*, 354 F.3d at 751.  Examples of bad faith include fraud on the court, the delay or disruption of litigation, or hampering the "enforcement of a court order."  *Chambers v. NASCO, Inc.*, 501 U.S. 33, 46 (1991).

Judge Nelson instructed the parties to bring this Motion before the undersigned.  (Order Dated Jan. 13, 2014) [Doc. No. 181 at 2].  Because Ewald asks for sanctions that are potentially dispositive (striking the Answer), and affect trial (the adverse inference instruction), this Court writes this portion as a report and recommendation.  *See St. Louis Produce Mkt.*, 735 F.3d at 832 (stating that striking a pleading may lead to judgment for the opposing party); *Hallmark Cards*, 703 F.3d at 460–61 (discussing adverse inference instructions); *Zubulake*, 220 F.R.D. at 216 (stating that "the determination of an appropriate sanction for spoliation, if any, is confined to the sound discretion of the trial judge, and is assessed on a case-by-case basis[]" (citations omitted)).

### 2.    Gandrud's Mobile Phone

#### a.    Additional Background

Ewald named Gandrud as a defendant in her initial complaint, which was removed to federal court on July 27, 2011.  (Notice of Removal) [Doc. No. 1]; (Compl., Ex. A, Attached to Notice of Removal) [Doc. No. 1-1 at ¶ 3].[26]  At the time, Gandrud worked for Faegre.  *See* (Schroeder Dec. 1, 2013 Email).[27]  Gandrud moved to dismiss on August 15, 2011.  (Gandrud's Mot. to Dismiss) [Doc. No. 4].  Judge Nelson heard oral argument on December 15, 2011. (Minute Entry Dated Dec. 15, 2011) [Doc. No. 15].  Sometime during December 2011, Gandrud retired from Faegre.  (Schroeder Dec. 1 2013 Email at 2).  Upon his retirement, and in

---

[26]    This citation refers to paragraph 3 of the Complaint.  The summons was also submitted as part of Exhibit A.

[27]    This page number refers to the pagination assigned by CM/ECF to Document Number 187-4.

accordance with firm policies, Gandrud returned his BlackBerry to Faegre.  (*Id.*).  Faegre

"wiped" the BlackBerry, and the data that was on it at the time "no longer exists."  (*Id.*).

Judge Nelson granted Gandrud's Motion to Dismiss in January 2012.  (Mem. Op. &

Order Dated Jan. 26, 2012, "Gandrud Dismissal Order") [Doc. No. 18].  The undersigned held a

Settlement/Pretrial Conference on July 6, 2012, where this Court reminded the parties of their

obligation to preserve electronically stored information ("ESI"), and directed the parties to

identify sources and custodians of ESI.  (Tr. of Excerpt of the Pretrial Scheduling/Settlement

Conference, "Pretrial Tr.") [Doc. No. 51 at 4:25–5:13].  Although the parties subsequently

negotiated a Form of Production Agreement, they did not specify ESI sources or how ESI would

be collected.  *See* (Oct. 2013 Order at 3).  Written discovery began in August 2012.  *See* (*id.*).

On December 3, 2012, the Embassy sent Judge Nelson a letter, which included Diplomatic Note

Number 62/2012 from Norway.  *See* (*id.* at 4); *see also* (Diplomatic Note No. 62/2012, the

"Diplomatic Note," Attachment A to Letter to District Judge (Dec. 3, 2012), Ex. 4, Attached to

Schroeder Aff.) [Doc. No. 117-4 at 4–6].[28]  The Diplomatic Note provided a limited waiver of

the otherwise-inviolable archives and documents of the Embassy and the Consulate in

Minneapolis.  (Diplomatic Note at 5).  The Diplomatic Note permitted attorneys for the Embassy

to produce documents related to Ewald, Davidson, and the Consulate, and stated that Norway

would "abide by the final and binding decision and judgment of the relevant courts."  (*Id.*).

Ewald filed her Motion to Compel on July 29, 2013.  (Mot. to Compel).  In it, she argued

that the Embassy must be forced to turn over, *inter alia*, Gandrud's mobile phone.  (Ewald's

Mem. in Supp. of Mot. to Compel at 18, 21).  This Court denied this portion of Ewald's Motion

to Compel.  (Oct. 2013 Order at 9).  Following Ewald's objections, Judge Nelson reversed in

---

[28]      The page numbers refer to pagination assigned by CM/ECF.

part, and found Ewald was entitled to discovery of text and voice messages from the mobile phones the Embassy provided to Ewald and Gandrud. (Nov. 2013 Order at 20–21). Judge Nelson ordered the parties to meet and confer to establish a protocol for searching for responsive text and voice messages. (*Id.* at 21). During the meet-and-confer process, the Embassy advised Ewald, and later, Judge Nelson, that it did not issue a mobile phone to Gandrud. *See* (Schroeder Dec. 1 2013 Email at 2); (Embassy's Dec. 23, 2013 Letter at 1). The Embassy attempted to recover text messages from Gandrud's Faegre-issued BlackBerry, but was unable to do so. (Aff. of Joel P. Schroeder in Opp'n to Pl.'s Ewald's Mot. for Sanctions, "Schroeder Aff.") [Doc. No. 192 ¶ 11].

### b.     Spoliation

Ewald now argues that the Embassy engaged in spoliation of evidence when it failed to preserve Gandrud's Faegre-issued mobile phone, and should be sanctioned. *See, e.g.*, (Ewald's Mem. in Supp. of Spoliation Sanctions at 16–20). The Embassy's counsel, who also represented Gandrud, should have known litigation was imminent when it received a demand letter from Ewald's counsel on March 29, 2011, and affirmatively knew Gandrud was a defendant in this case when a Faegre attorney accepted service on Gandrud's behalf. *See* (Ewald's Mem. in Supp. of Spoliation Sanctions at 3 n.4). Thus, the duty to preserve may have been triggered as early as March 2011, but certainly no later than July 2011, when the Complaint was served.[29] *See* (Compl.).

When the Complaint was served, at minimum, the Embassy's counsel, who also represented Gandrud, should have at least anticipated that Gandrud's mobile phone may have

---

[29]     In April 2011, the Embassy sent a legal hold to individuals identified in Ewald's March 2011 demand letter, and updated it in July 2012, September 2012, and October 2012. (Schroeder Aff. ¶ 2).

contained ESI relevant to the instant case.[30]   As previously noted, and reiterated by Judge

Nelson, the parties knew or should have known that text messages, and any other ESI, stored on

mobile phones may be an issue.  (Oct. 2013 Order at 9); (Nov. 2013 Order at 20).  Although the

Embassy did not issue Gandrud a mobile phone, its attorneys, who are employed by the same

firm as Gandrud was, certainly knew that Gandrud had a Faegre-issued mobile phone.  *See*

(Gandrud's Mot. to Dismiss (signed by Daniel G. Wilczek and Sean R. Somermeyer, both

attorneys at Faegre).  When Gandrud retired from Faegre, he was still awaiting Judge Nelson's

decision on whether he would be dismissed from this case, and was therefore still a defendant in

this litigation.  *Compare* (Minute Entry Dated Dec. 15, 2011) *with* (Gandrud Dismissal Order).

This Court finds that it would have been reasonable and prudent for Gandrud's counsel—the

same as the Embassy's counsel and Gandrud's colleagues at Faegre—to preserve Gandrud's

Faegre-issued mobile phone at the time of his retirement so that the parties retained the ability to

review it for information "reasonably calculated to lead to the discovery of admissible evidence."

*See* Fed. R. Civ. P. 26(b)(1).  Put differently, while it is clear Gandrud may have been a

custodian of ESI, neither party identified the repositories of ESI for custodians as this Court

originally instructed.[31]   (Pretrial Tr. at 4:25–5:13).  Thus, the Embassy spoliated Gandrud's

mobile phone because it failed to preserve it, and the Embassy's counsel knew or should have

known was relevant to pending litigation.  *See Lexis–Nexis v. Beer*, 41 F. Supp. 2d at 954.

---

[30]     Even if the Embassy's counsel was confident that the claims against Gandrud would
dismissed, Ewald's claims against the Embassy certainly should have suggested to the
Embassy's counsel that Gandrud likely had relevant information. *See, e.g.*, (Compl. ¶¶ 34–38).

[31]     Arguably, it may not have mattered with respect to the destruction of Gandrud's mobile
phone because the Pretrial Conference took place after Gandrud retired.  (Minute Entry Dated
July 6, 2012) [Doc. No. 33].  But if the parties had identified custodians of ESI (other than
email), the parties could have resolved this dispute much earlier.

### c.      Prejudice

But this Court must make a finding of prejudice to impose sanctions for spoliation, and there is insufficient evidence to allow this Court to make such a finding.  *See Stevenson*, 354 F.3d at 748 (citation omitted).   Throughout both her Motion to Compel and the instant Motion for Spoliation Sanctions, Ewald refers to only one document that alludes to a potentially relevant text message from Gandrud.  (Ewald's Mem. Supp. of Mot. to Compel at 21); (Ewald's Mem. in Supp. of Spoliation Sanctions at 4 n.3).[32]   That document is an email dated February 23, 2011, from Gandrud to Ambassador Strømmen stating, "Sorry for my text 'blast.'  On my way home, Christina calls, upset with Ellen, then I text while driving home.  Sorry. . . . I apologize [sic] the text in the heat of the moment!  In the future, I think I'll stick to e-mails!"  (Ex. 12 at RNE 835, "RNE 835," Attached to Schroeder Aff.) [Doc. No. 192-12].[33]  The only reference to Ewald is that Christina, which presumably refers to Christina Carleton ("Carleton"),[34] called Gandrud and was upset with Ewald.  (RNE 835).  As a result, Gandrud apologizes for his text "blast."  (*Id.*). While this email may suggest that the text Gandrud references was relevant, or likely to lead to relevant information, it does not show that the text's absence is prejudicial.  And Ewald offers no evidence as to the substance of the text.   Even if Gandrud's email suggests that Ewald was mentioned in the text, there is no evidence that the text referred to in the email, or any other text messages from Gandrud's mobile phone are prejudicial to Ewald's case.  *Contra* (Ewald's Mem.

---

[32]      Ewald also states that "Gandrud used his [mobile] phone to communicate by texts, according to other documents."  (Ewald's Mem. in Supp. of Sanctions at 14).  Elsewhere, Ewald cites to RNE 835 as an example, but provides no citation to these "other documents."  *Compare* (*id.* at 14) *with* (*id.* at 4 n.3).

[33]      As noted by Ewald, RNE 835 was also produced in connection with the Motion to Compel.  *See* (Ewald's Mem. in Supp. of Spoliation Sanctions at 4 n.3).

[34]      Carleton was another employee at the Consulate.  *See* (Am. Comp. ¶ 57).

in Supp. of Spoliation Sanctions at 19) (stating that "the prejudice to Ewald of the loss of communications regarding the positions, salary, and her reputation is obvious.").

The case Ewald cites in support of this proposition, *E*Trade*, is not instructive. *See* (*id.*) (citing *E*Trade*, 230 F.R.D. at 592). In that case, hard drives and recorded telephone conversations were destroyed. *E*Trade*, 230 F.R.D. at 592. The court found that there was a "reasonable probability" that these materials "materially prejudiced the plaintiffs." *Id.* Based on the evidence submitted by Ewald, this Court cannot find that Ewald was prejudiced based on only one email that appears to provide the sole, independent reference to any text messages, and also suggests that text messages on that particular phone after that date—February 23, 2011—will be nonexistent.

Further, Ewald appears to have passed up several opportunities to obtain this information through other methods. Ewald did not question Gandrud about any text messages he sent during his deposition. (Schroeder Aff. ¶ 10). Ewald did not raise the issue during the deposition of Ambassador Strømmen, who appears to have received not only Gandrud's text, but also Gandrud's email about the text. (*Id.*); *see also* (RNE 835); (Embassy's Mem. in Opp'n to Spoliation Sanctions at 13) (noting that Ambassador Strømmen's deposition took place about six weeks after Ewald's counsel raised text messages and RNE 835 in a letter to the Embassy's counsel). Additionally, Ewald did not ask Carleton about text messages, who, according to RNE 835, called Gandrud shortly before he sent the text. (Schroeder Aff. ¶ 10); *see also* (RNE 835). This District has previously held that if the moving party is able to obtain the destroyed evidence from another source, there is no prejudice. *Nicollet Cattle Co.*, 2010 WL 3546784, at *6.[35] This

---

[35]     In *Nicollet* and *Fakhro*, cases from this District where sanctions were not awarded for spoliation, the destroyed evidence was available in other produced materials. *See, e.g.*, *Nicollet Cattle Co.*, 2010 WL 3546784, at *6 (finding that the information in the destroyed vessel books

Court finds that Ewald had several opportunities to question witnesses about the text message or any other text messages to gain the same information, and chose not to take advantage of those opportunities.  Ewald cannot now complain that she was prejudiced, and therefore, this Court recommends that sanctions not be awarded against the Embassy.

### d.   Sanctions

Even if Ewald was prejudiced—a proposition with which this Court does not agree—this Court recommends against imposing sanctions.  Ewald makes two specific arguments in support of sanctions.  First, Ewald accuses the Embassy of concealing the destruction of Gandrud's mobile phone.  (Ewald's Mem. in Supp. of Spoliation Sanctions at 14).  The Embassy clearly stated it did not preserve text messages in its response to Ewald's Motion to Compel, which it filed on August 5, 2013—two months after Ewald first raised its desire to search mobile phones on May 31, 2013.  (Letter from Sheila Engelmeier (Ewald) to Joel Schroeder (the Embassy) (May 31, 2013), "Engelmeier May 31, 2013 Letter," Ex. V., Attached to Engelmeier Aff.) [Doc. No. 110-22 at 13–14]; (Embassy's Mem. in Opp'n to Mot. to Compel at 30); *see also* (Embassy's Mem. in Opp'n to Spoliation Sanctions at 11–12).  This does not demonstrate any

---

was also available in the folders that were produced, and finding that the moving party did not submit evidence showing those folders were altered as it alleged); *Fakhro v. Mayo Clinic Rochester*, Civ. No. 02–626, 2004 WL 909740, at *2–4 (D. Minn. Mar. 31, 2004) (JNE/JGL) (finding that the information rhythm strips from a cardiac procedure that were destroyed in a medical malpractice based on that procedure were available in other produced documents).

In the Eighth Circuit cases cited by *Fakhro*, sanctions were awarded where the evidence was not available through other means, and the evidence was highly relevant to the claims at issue.  *See Stevenson*, 354 F.3d at 748–49 (awarding sanctions due to the "nature of the evidence" in case where plaintiffs sued a railroad for negligence for the injuries they suffered in a train accident and where the defendant railroad destroyed a voice "recording of conversations between the engineer and dispatch contemporaneous with the accident . . ."); *Dillon*, 986 F.2d at 266–68 (affirming exclusion of expert's report as sanction for the expert destroying the car, and affirming magistrate judge's determination that the destruction was prejudicial where destroyed car was the car where the accident took place in lawsuit between a passenger and the car manufacturer and the remaining evidence included grainy, blurry photos that did not "document crucial areas of the vehicle . . .").

prejudice, willful violation of a discovery order, or a desire to suppress the truth.  *See St. Louis Produce Mkt.*, 735 F.3d at 832; *Hallmark Cards*, 703 F.3d at 460 (citation omitted); *Stevenson*, 354 F.3d at 751.

Ewald also argues that sanctions are appropriate because the Embassy preserved her mobile phone, but not Gandrud's mobile phone.  (Ewald's Mem. in Supp. of Spoliation Sanctions at 17, 18).  But this distinction is not relevant for two reasons.  First, Ewald's phone belonged to the Embassy, not a third party.  *See* (Schroeder's Aff. ¶ 11).  Second, the Embassy did not produce any text messages from Ewald's phone, and did not attempt to access it until instructed to do so by Judge Nelson's November 2013 Order.  (Embassy's Mem. in Supp. of Spoliation Sanctions at 11, 20).  Thus, the Embassy did not destroy some evidence while preserving similar evidence.  *See* (Ewald's Mem. in Supp. of Spoliation Sanctions at 18) (citing *Stevenson*, 354 F.3d at 747–78).  This also does not demonstrate any prejudice, willful violation of a discovery order, or a desire to suppress the truth.  *See St. Louis Produce Mkt.*, 735 F.3d at 832; *Hallmark Cards*, 703 F.3d at 460 (citation omitted); *Stevenson*, 354 F.3d at 751.  Therefore, sanctions are not appropriate in this case.

This Court will address the effectiveness of sanctions more broadly in a separate section.  *See infra*, page 40–41.

### e.      Conclusion

In conclusion, this Court finds that because Ewald cannot establish she was prejudiced, sanctions for the spoliation of Gandrud's mobile phone are not appropriate.  Therefore, this Court recommends that the Motion for Spoliation Sanctions be denied with respect to the destruction of Gandrud's mobile phone.

### 3.      Ewald's First Laptop

Ewald also argues that the Embassy spoliated evidence when it failed to preserve Ewald's First Laptop.  (Ewald's Mem. in Supp. of Spoliation Sanctions at 1).  On January 29, 2010, Ewald notified Vibe, who was then the Deputy Chief of Mission, that her first laptop crashed. *See* (Ex. E at RNE 182, Attached to Fischer Decl.) [Doc. No. 187-5 at 2].[36]  The Embassy provided Ewald with a new laptop at some point before February 3, 2010.  *See* (Email from Ewald to Markus Walther (Feb. 3, 2010, 3:15 p.m.), Ex. 10, Attached to Schroeder Aff.) [Doc. No. 192-10].[37]

Ewald argues that documents and conversations regarding her complaints about her pay, which took place in late 2009 or early 2010, should have put the Embassy on notice that Ewald contemplated legal action.  *See* (Ewald's Mem. in Supp. of Spoliation Sanctions at 16).  But these documents and conversations appear to be limited to Ewald's complaints, and cannot be read to imply a threat of litigation.  Thus, this Court does not find that the Embassy had a duty to preserve Ewald's First Laptop.

Even if the Embassy did have a duty to preserve Ewald's First Laptop, Ewald has not shown that the Embassy "knew or should have known [that it] was relevant to pending, imminent, or reasonably foreseeable litigation."  *See Lexis-Nexis*, 41 F. Supp. 2d at 954.  Ewald does not even assert that relevant information from Ewald's First Laptop is absent, much less that it is prejudicial.  *See* (Nov. 2013 Order at 17) ("As for [Ewald's First L]aptop, Ewald has not asserted even a belief that relevant information existed on that computer that has not been produced from other sources.").  Additionally, the Embassy has produced relevant documents

---

[36]      This page number refers to the pagination assigned by CM/ECF.

[37]      The record is not clear what happened to the laptop after it "crashed."  The Embassy affirmatively stated that it no longer has it, and so, for the purposes of this Motion, this Court assumes it was destroyed.  *See* (Schroeder Nov. 17, 2013 Email at 2).

from the laptop Ewald used at the end of her employment in 2011.  (Schroeder Aff. ¶ 6).  Over 5,000 of these documents predate the untimely demise of Ewald's First Laptop around January 2010, reinforcing the lack of prejudice as a result of the destruction of Ewald's First Laptop. (*Id.*).

This Court therefore recommends that Ewald's Motion for Spoliation Sanctions be denied with respect to Ewald's First Laptop because the Embassy did not spoliate the evidence, Ewald fails to show prejudice, and therefore sanctions are not appropriate.

### 4.    Innovation Norway Documents

#### a.    Additional Background

Ewald also argues the Embassy is responsible for Innovation Norway's failure to preserve documents.  (Embassy's Mem. in Supp. of Spoliation Sanctions at 1).  Although Ewald argues Innovation Norway is part of the Norwegian government, it is not a party to this lawsuit. (Ewald's Mem. in Supp. of Spoliation Sanctions at 9–10).  Innovation Norway is one of six Norwegian institutions (the "Stakeholders") that provided funding to Ewald and Davidson's positions.  (Embassy's Mem. in Opp'n to Spoliation Sanctions at 5–6).  Svein Berg ("Berg"), a representative of Innovation Norway, was a member of the Stakeholder Steering Committee (the "Steering Committee").  (*Id.* at 6).  The Embassy argues Innovation Norway was only marginally interested in Ewald's position, and that Berg had very little direct contact with Ewald.  (*Id.*).

In December 2012, Wikborg Rein ("Wikborg"), a Norwegian law firm acting on behalf of Ewald, requested documents from Innovation Norway related to Ewald's employment with the Embassy.  (Ewald's Mem. in Supp. of Spoliation Sanctions at 10).[38]  In January 2013,

---

[38]    The documents Ewald cites, correspondence between Innovation Norway and Wikborg, are in Norwegian, and Ewald did not provide a certified translation of these documents.  *See* (Exs. F, G, H, Attached to Fischer Decl.) [Doc. Nos. 187-6, 187-7, 817-8].  This Court takes the

Innovation Norway responded that it searched its files, and did not find anything relevant. (*Id.*). It also stated that the final minutes of the Steering Committee meetings were deleted. (*Id.*). After additional research, Innovation Norway told Wikborg that it would not search for and retrieve deleted emails because it was too time-consuming and expensive. (*Id.*); (Embassy's Mem. in Opp'n to Spoliation Sanctions at 15). Innovation Norway again stated that it found no emails about Ewald's employment, and stated that it was not responsible for maintaining those documents. (Ewald's Mem. in Supp. of Spoliation Sanctions at 10); (Embassy's Mem. in Opp'n to Spoliation Sanctions at 14–15). Wikborg requested confirmation of its understanding of the status of the data in May 2013, and noted that "it was illegal for officials to discard material that is subject to preservation orders." (Ewald's Mem. in Supp. of Spoliation Sanctions at 10–11). It appears from the record that Ewald first brought the Innovation Norway documents to the Embassy's attention on May 31, 2013, over two years after when Ewald suggests the Embassy— a party to this case—had a duty to preserve and hold its own documents. (Ewald's Mem. in Supp. of Spoliation Sanctions at 11). Additionally, Ewald waited more than five months after the Embassy notified Ewald and Judge Nelson that its production would be limited as described in the Diplomatic Note. *See* (Diplomatic Note).

### b.    Spoliation

As an initial matter, Ewald has failed to show that Innovation Norway had a duty to preserve documents in this case. *See E*Trade Sec.*, 230 F.R.D. at 587. Innovation Norway is not a party to this lawsuit, and it never has been. *Compare* (Compl.) *with* (Am. Compl.). In an August 2013 letter, Ambassador Strømmen stated that the Steering Committee is considered part of the MFA for the purposes of the Norway's Freedom of Information Act. (Letter from Amb.

---

parties' representations about these documents as facts to the extent the representations are consistent with each other.

Strømmen (Aug. 1, 2013), Ex. A). [Doc. No. 183 at 10–11]. Ambassador Strømmen goes on to say that because of this, any correspondence between the MFA and the Steering Committee are considered internal documents. (*Id.* at 11). Thus, the duty to preserve documents related to Ewald's employment rests with either the MFA or the Embassy. Ewald points to no authority that suggests that Innovation Norway had a duty to preserve evidence in this case, nor that the Embassy can be held responsible for any failure to do so. *See Wilson v. Beloit Corp.*, 921 F.2d 765, 767–69 (8th Cir. 1993) (finding no abuse of discretion where district court found a third party was not responsible for preserving evidence for a party absent a special relationship or a specific duty created by the parties).[39]   Because the Embassy had no duty to preserve the documents, it cannot be held responsible for their destruction.

Finally, there is no prejudice to Ewald based on the fact that Innovation Norway has not produced documents. The specific documents Ewald apparently seeks from Innovation Norway are "emails with the final minutes of the meetings of the Steering Committing regarding Ewald's employment . . . ." (Ewald's Mem. in Supp. of Spoliation Sanctions at 10). In December 2012, the Embassy notified Judge Nelson and Ewald of the scope of its discovery responses through the Diplomatic Note, and Ewald raised no objections. (Oct. 2013 Order at 4). The Diplomatic Note states that it will provide documents from "the archives and documents on file with the Consulate General in Minnesota and the Embassy in Washington[,] D.C. . . . ." and does not

---

[39]   Even if Innovation Norway had a duty to preserve documents, the record is not clear regarding whether the documents are destroyed. The parties agree that Innovation Norway stated it was too expensive and time-consuming to search for documents it had deleted. (Ewald's Mem. in Supp. of Spoliation Sanctions at 10); (Embassy's Mem. in Opp'n to Spoliation Sanctions at 15). This suggests that, although documents were deleted, there may be a way to recover them. Whether Innovation Norway can or should be compelled to undertake this task is beyond the scope of this Motion, and this Court will not address it. Thus, for the purposes of this Motion, this Court will assume the documents Ewald seeks from Innovation Norway have been destroyed.

mention Innovation Norway. (Diplomatic Note at 4). Also in December 2012, the parties agreed on search terms and custodians, which did not include Berg or Innovation Norway. (Schroeder Aff. ¶ 3). Finally, when Ewald first raised the Innovation Norway documents with the Embassy in May 2013, the Embassy responded that it had already produced relevant documents. (Engelmeier May 31, 2013 Letter at 12–13); (Letter from Joel Schroeder (Embassy) to Sheila Engelmeier (Ewald) (June 7, 2013), Ex. W, Engelmeier Aff.) [Doc. No. 110-23 at 7]. In his deposition, Berg, the Innovation Norway representative to the Steering Committee, stated that he had very little interaction with Ewald. (Embassy's Mem. in Opp'n to Spoliation Sanctions at 6–7). The Embassy asserts that together, the parties produced hundreds of documents regarding the Steering Committee minutes, including the "final minutes of the meetings of the Steering Committee regarding Ewald's employment . . . ."—the very documents Ewald claims she needs. (Schroeder's Aff. ¶ 7). In addition, the Embassy produced thousands of documents from members of the Steering Committee, including documents from Berg. (Schroeder Aff. ¶ 7). Because Ewald is able to get this destroyed evidence from another source, there is no prejudice.[40] *See Nicollet Cattle*, 2010 WL 3546784, at *6 (citation omitted).

Because Ewald cannot show that Innovation Norway had a duty to preserve documents, and because Ewald cannot show that she was prejudiced by any destruction Innovation Norway may have undertaken of relevant documents, sanctions for spoliation are not warranted. Therefore, this Court recommends that Ewald's Motion for Spoliation Sanctions be denied to the extent it seeks sanctions for Innovation Norway's destruction of documents.

---

[40] In her Reply, Ewald argues that there should be documents regarding the Ministry of Education's representative to the Steering Committee, Trond Fevolden ("Fevolden"). (Ewald's Reply Mem. in Supp. of Mot. for Sanctions Due to Spoliation of Evidence) [Doc. No. 193 at 6 n.11]. Apparently, this is meant to rebut the Embassy's assertion that relevant documents have been produced. But because Fevolden is not related to Innovation Norway, this Court will not address this argument.

5.      **Conclusion**

This Court finds that sanctions are not appropriate for spoliation of Gandrud's mobile phone, Ewald's First Laptop, or Innovation Norway documents.   Therefore, this Court recommends that Ewald's Motion for Spoliation Sanctions be denied.

D.      **General Effectiveness of Sanctions in this Case**

Given that both parties move for sanctions, this Court broadly addresses whether sanctions would be effective in this case. *See* (Embassy's Mot. for Rule 26 Sanctions); (Ewald's Mot. for Spoliation Sanctions).

Each party enjoys excellent and zealous representation, which has, at times, been acrimonious.[41]  Nonetheless, the costs and fees incurred to date exceed one million dollars on a per-party basis in a case that involves an alleged equal-pay disparity of approximately $100,000. (Am. Compl. ¶¶ 12, 25, 59); (Oct. 2013 Order at 5).[42]  As this Court noted in its October 2013 Order, the concept of proportionality that Rule 26 of the Federal Rules of Civil Procedure mandates has been abandoned. *See* (Oct. 2013 Order at 5).  In such an instance, this Court is hard-pressed to discern what value sanctions may bring.  The least-severe sanction either party requests is a monetary sanction.  Even if monetary sanctions were appropriate—and this Court finds that they are not—they would not serve any purpose for this Court or the parties in light of

---

[41]      *See, e.g.*, (Embassy's Mem. in Supp. of Rule 26 Sanctions at 6–7 n.4) (stating that this Court cannot "tolerate attorneys who violate ethical and procedural rules" and citing to the Minnesota Rules of Professional conduct); (Ewald's Mem. in Supp. of Spoliation Sanctions at 14) (accusing the Embassy of concealing the destruction of Gandrud's phone).

[42]      As of August 2013, the parties advised this Court they had each spent more than $750,000 in attorneys' fees. (Tr. of Hr'g on Mot. to Compel at 23:3–18; 48:18–20). This Court extrapolates that number to one million dollars because, since August, the parties have continued to accrue fees through, at minimum, briefing the objection and defense of this Court's October 2013 Order, attempts to resolve the privilege issues, the Motion for Summary Judgment, and the instant Motions for Sanctions.

the disproportionate amount of money the parties have spent to date.[43]  *See Pls.' Baycol Steering Committee v. Bayer Corp.*, 419 F.3d 794, 808 (8th Cir. 2005) (stating that a monetary sanction should be sufficient to "deter future misconduct" (citation omitted)); *Harlan v. Lewis*, 982 F.2d 1255, 1262 (8th Cir. 1993) (finding that the district court did not offend due process when imposing  sanctions when it considered, *inter alia*, the impact of sanctions on "the course of litigation and the ability of the parties . . . to present their case").

Because the parties moved for sanctions against each other, and because sanctions are not likely to have any deterrent effect on this case given its history and procedural posture, this Court finds sanctions are not warranted against either party.

## III.    CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

a.    With respect to Defendant Royal Norwegian Embassy's December 17, 2013 letter regarding privileged documents [Doc. No. 174-1 at 7], Defendant Royal Norwegian Embassy must produce unredacted versions of RNE 363 and RNE 63100 within seven (7) days of this Order; and

---

[43]    The Embassy requests monetary and "appropriate" sanctions for Ewald's violation of Rule 26(b)(5)(B).  (Embassy's Mem. in Supp. of Rule 26 Sanctions at 6–7).  The specific spoliation sanctions Ewald seeks are likewise not appropriate here, where no prejudice has been found.  First, Ewald identifies no willful act on the part of the Embassy that violated Judge Nelson's November 2013 Order compelling a search of Gandrud's Embassy-issued phone because no such phone exists.  *See* (Embassy's Mem. in Opp'n to Spoliation Sanctions at 2).  Therefore, the severe sanction of striking the Embassy's Answer is not appropriate.  *See St. Louis Produce Mkt.*, 735 F.3d at 832.  Additionally, Ewald submits no evidence that the Embassy's counsel destroyed the phone "with a desire to suppress the truth," as required to impose an adverse-inference instruction.  *See Hallmark Cards*, 703 F.3d at 460.  Finally, Ewald offers no evidence that the Embassy destroyed Gandrud's mobile phone in bad faith, which is required to impose a sanction of attorneys' fees for spoliation.  *See Stevenson*, 354 F.3d at 751.  To the contrary, Ewald seems to argue for sanctions absent bad faith.  *See* (Ewald's Mem. in Supp. of Spoliation Sanctions at 16–17).

b.      Defendant Royal Norwegian Embassy's Motion to Enforce Compliance with and Provide Sanctions for Violation of Rule 26(b)(5)(B) [Doc. No. 167] is **DENIED**.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff Ellen S. Ewald's Motion for Sanctions Due to Spoliation of Evidence [Doc. No. 184] be **DENIED**.

Dated: March 7, 2014

*s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by March 21, 2014, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. A party may respond to the objecting party's brief within ten days after service thereof. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.