## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Ellen S. Ewald,<br><br>                    Plaintiff,<br><br>v.<br><br>Royal Norwegian Embassy,<br><br>                    Defendant. | Civil No. 11-CV-2116 (SRN/SER)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Thomas E. Marshall, Sheila A. Engelmeier, and Susanne J. Fischer, Engelmeier & Umanah, P.A., 12 South Sixth Street, Suite 1230, Minneapolis, Minnesota 55402, for Plaintiff.

Daniel G. Wilczek, Joel P. Schroeder, Sean R. Somermeyer, and John B. Gordon, Faegre Baker Daniels LLP, 90 South Seventh Street, Suite 2200, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on Plaintiff's Motion to Strike Defendant's Discrimination Expert [Doc. No. 226].  For the reasons set forth below, the Court denies Plaintiff's motion.

## II.     BACKGROUND

The specific details of this employment discrimination action are documented in other orders and will not be recounted here.  (See, e.g., Jan. 26, 2012, Mem. Op. & Order at 2-4 [Doc. No. 18].)

1

After this litigation began, Defendant retained Benjamin Shippen, Ph.D., as an

expert to review the salary decisions in 2008 for two positions at the Honorary

Norwegian Consulate General: the Higher Education and Research Officer position

("Higher Education position") and the Innovation and Business Development Officer

position ("Innovation position").  (Expert Report by Benjamin S. Shippen, Ph.D., Ex. 3 to

Aff. of Thomas E. Marshall [Doc. No. 227-1].)  Specifically, Dr. Shippen was asked to

determine whether the salary decisions were consistent with the compensation for similar

positions in the general geographic area of Minneapolis, Minnesota, where both positions

were located.  (Id. at 1.)  After reviewing various documents and data,[1] Dr. Shippen

concluded that

> substantially different skills, backgrounds, and experience were required to
> perform these two jobs.  These were qualitatively different jobs, each
> demanding unique qualifications and requiring vastly different sorts of
> professional experience.  A review of the labor market compensation data
> shows that occupations with job requirements and duties most like those of
> the Higher Education position are not similarly compensated compared to
> occupations with job requirements and duties most like those of the
> Innovation position.

---

[1] Dr. Shippen reviewed the following: the Complaint; job descriptions for the Higher
Education position and Innovation position; Summary of "Applications—Innovation and
Business Development Officer" (RNE 05592-RNE 05596, and PL 001013); Summary of
"Applications Higher Education and Research Officer" (RNE 05571-RNE 05578);
"Shortlist edu officer.xls" (RNE 05579); Plaintiff's cover letter and resume (RNE 00293-
RNE 00296); Anders Davidson's cover letter and resume (RNE 00366-RNE 00368);
Plaintiff's answers to Defendant's first set of interrogatories, dated August 30, 2012;
Plaintiff's deposition on February 20, 2013; decisions of the selection committee
regarding the applicants' qualifications; job activities reflected in the Activity Reports
and job goals in the Vision Statements drafted by the selectees; and the market wages for
occupations with duties similar to those of the positions, and requiring experience similar
to that held by those interviewed for the positions.  (Shippen Report at 1-3 [Doc. No.
227-1].)

(Id. at 3.)

Plaintiff moves to strike Dr. Shippen as an expert for Defendant, arguing that the expert opinion is inadmissible at trial because Dr. Shippen: (1) does not consider the facts of the case, and (2) arbitrarily categorizes occupations based on speculation and conjecture.  (Pl.'s Mot. to Strike Def.'s Discrimination Expert at 16-25 [Doc. No. 226].) Defendant responds that Plaintiff's motion is not properly before the Court.  (Def.'s Mem. of Law in Opp'n to Pl.'s Mot. to Strike at 1-2 [Doc. No. 248].)  Defendant also argues that Plaintiff's motion should be denied on the merits because Dr. Shippen's report and testimony are admissible, and Plaintiff's criticisms are unfounded.  (Id. at 2-7.)

## III.    DISCUSSION

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Under Rule 702, proposed expert testimony must satisfy three prerequisites to be admitted.  Lauzon v. Senco Prods. Inc., 270 F.3d 681, 686 (8th Cir. 2001).  First, evidence based on scientific, technical, or specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact.  Id.  Second, the proposed witness must be qualified to assist the finder of fact.  Id.  Third, the proposed evidence must be reliable or trustworthy in the evidentiary sense, so that if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.  Id.  These requirements reflect the Supreme Court's analysis in Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993).  Id.  The district court has a "gatekeeping" obligation to make certain that all testimony admitted under Rule 702 "is not only relevant, but reliable."  Daubert, 509 U.S. at 589.

3

Nonetheless, "Rule 702 reflects an attempt to liberalize the rules governing the admission of expert testimony," and it favors admissibility over exclusion. <u>Lauzon</u>, 270 F.3d at 686. Doubts regarding the usefulness of an expert's testimony should therefore be resolved in favor of admissibility, <u>United States v. Finch</u>, 630 F.3d 1057, 1062 (8th Cir. 2011), and gaps in an expert witness's qualifications or knowledge generally go to the weight of his testimony and not its admissibility. <u>Robinson v. GEICO Gen. Ins. Co.</u>, 447 F.3d 1096, 1100 (8th Cir. 2006). "The exclusion of an expert's opinion is proper only if it is 'so fundamentally unsupported that it can offer no assistance to the jury.'" <u>Wood v. Minn. Mining & Mfg. Co.</u>, 112 F.3d 306, 309 (8th Cir. 1997).

Applying this test to Dr. Shippen's proffered expert opinion, the Court first finds it to be relevant. Plaintiff offers no substantive argument to the contrary. Dr. Shippen's report and proposed testimony are relevant to Defendant's affirmative defense to Plaintiff's Equal Pay Act claim—that there were different salary markets for the Higher Education position and the Innovation position.

Second, the Court finds that Dr. Shippen is qualified to offer his opinion in this case. Plaintiff does not question Dr. Shippen's qualifications. Dr. Shippen is a labor economist with a Ph.D. in economics, and his fields of interest include labor economics, computer analysis of large databases, and applied econometric and statistical analysis. (Shippen Report at 20 [Doc. No. 227-1].) Since 2000, he has worked as an economist at ERS Group, where he is currently a Principal. (<u>Id.</u>) Such qualifications are sufficient.

Third, the Court considers whether Dr. Shippen's opinion is sufficiently reliable. Courts analyze reliability from a flexible, case-specific standpoint. <u>Kumho Tire Co. v.</u>

Carmichael, 526 U.S. 137, 150 (1999).  Because the Higher Education position and the

Innovation position were created in 2008 and had no previous salary history, Dr. Shippen

looked for comparable occupations.  (Shippen Report at 2-3 [Doc. No. 227-1]; Decl. of

Benjamin S. Shippen, Ph.D. ¶ 2 [Doc. No. 249].)  To find comparable occupations, Dr.

Shippen relied on: (1) the job descriptions for the Higher Education position and the

Innovation position; (2) the job histories of the interviewed applicants for each position;

and (3) the self-drafted activity reports of Plaintiff and Davidson.  (Shippen Report at 1-3

[Doc. No. 227-1]; Shippen Decl. ¶ 5 [Doc. No. 249].)  Dr. Shippen then used this

information to compare the Higher Education and Innovation positions with similar

occupations under the United States Bureau of Labor Statistics Standard Occupational

Classification.  (Shippen Report at 14-15 [Doc. No. 227-1]; Shippen Decl. ¶ 5 [Doc. No.

249].)  Defendant represents that this methodology applies accepted labor economic

analysis to this case.  (Def. Royal Norwegian Embassy's Mem. of Law in Opp'n to Pl.'s

Mot. to Strike at 4 [Doc. No. 248].)

Plaintiff challenges Dr. Shippen's alleged failure to consider all relevant facts,

such as the discussions between Gary Gandrud and the Embassy regarding the setting of

the salaries, the directions that the positions collaborate or work as a team, the statement

by Gandrud and Walter Mondale that the pay disparity was "unjust and embarrassing,"

and the depositions of Davidson and Gandrud.  (Pl.'s Mot. to Strike Def.'s

Discrimination Expert at 19 [Doc. No. 226].)  The factual basis of an expert opinion,

however, goes to the credibility of the testimony and not its admissibility, and "it is up to

the opposing party to examine the factual basis for the opinion in cross-examination."

Bonner v. ISP Techs., Inc., 259 F.3d 924, 929 (8th Cir. 2001).  Plaintiff will have ample

opportunity to cross-examine Dr. Shippen.  See Daubert, 509 U.S. at 596 ("Vigorous

cross-examination, presentation of contrary evidence, and careful instruction on the

burden of proof are the traditional and appropriate means of attacking shaky but

admissible evidence.").

Plaintiff also criticizes Dr. Shippen's report for arbitrarily selecting a subgroup of

applicants from the applicant pool for each position, in order to reach a pre-determined

conclusion.  (Pl.'s Mot. to Strike Def.'s Discrimination Expert at 19-23 [Doc. No. 226].)

Defendant, however, represents that Dr. Shippen focused on the candidates who were

interviewed for each position, because the background, skills, and experience of the

candidates chosen for interviews reveal what Defendant viewed as necessary for each

position.  (Shippen Report at 6 [Doc. No. 227-1]; Shippen Decl. ¶ 11 [Doc. No. 249].)

Regardless, the Court views Plaintiff's criticism primarily as a challenge to the factual

basis for Dr. Shippen's analysis—not to the evidentiary reliability of the report.  As

mentioned earlier, Plaintiff can identify any weaknesses in the factual basis of Dr.

Shippen's opinion by cross-examining this expert.  Thus, the Court is satisfied that, for

purposes of the Daubert standard, Dr. Shippen's opinion is sufficiently reliable.

Because the Court finds Dr. Shippen to be a qualified witness whose proffered

opinion is relevant and reliable, it denies Plaintiff's Motion to Strike Defendant's

Discrimination Expert.  Plaintiff will be permitted to challenge Dr. Shippen's conclusion,

as well as the factual basis for his conclusion, through vigorous cross-examination.

IV.     **ORDER**

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY ORDERED** that:

1.      Plaintiff's Motion to Strike Defendant's Discrimination Expert [Doc. No. 226]
        is **DENIED**.

Dated:          April 9, 2014                     s/ Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Court Judge